# EXHIBIT A

Sharan E. Lieberman
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, Suite 1700
Denver, Colorado 80294
(303) 844-1000
liebermans@sec.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>HYZON MOTORS INC., CRAIG M. KNIGHT, and MAX C.B. HOLTHAUSEN,<br><br>    Defendants. | Case No. 23-6553<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff United States Securities and Exchange Commission (the "SEC"), for its

Complaint against Defendants Hyzon Motors Inc. ("Hyzon"), Craig M. Knight, and Max C.B.

Holthausen (collectively, the "Defendants"), alleges as follows:

### **SUMMARY**

1.      Hyzon Motors, Inc., a publicly traded company that assembles hydrogen fuel cell

electric vehicles ("FCEVs"), made false and misleading statements to investors about its

customer and supplier relationships and overstated the number of FCEVs it had completed,

delivered, and sold. For instance:

(a)      From January through July 2021, in advance of two key capital-raising events,

Hyzon exaggerated the status of its business dealings with its potential customers

and suppliers, including well-known companies, to create the false appearance that significant sales transactions were imminent;

(b)     On July 13, 2021, shortly before the capital-raising events, Hyzon falsely claimed that it had delivered its first FCEV – a milk truck to be used by a European dairy company – and posted a misleading video to social media that gave the false impression that it ran on hydrogen when, in fact, it did not; and

(c)     In documents filed with the SEC from November 2021 through March 2022, Hyzon stated that its European and Chinese subsidiaries sold 87 FCEVs in 2021, when, in reality, Hyzon either did not own the vehicles to sell or had not completed them prior to shipment.

2.     Knight, Hyzon's chief executive officer ("CEO"), was responsible for the content of the false statements about Hyzon's customer and supplier relationships alleged in paragraph 1(a) above. Knight also pledged some of his Hyzon stock in order to finance the purchase of additional stock, but hid the pledge from Hyzon because it violated an agreement he signed in connection with the capital-raising events. Knight sought to purchase these additional shares to artificially boost Hyzon's stock price in response to a negative report about the company. Knight should have disclosed this improper stock pledge in response to a questionnaire he completed in connection with Hyzon filing its 2022 proxy statement.

3.     Holthausen, who was the head of Hyzon's European subsidiary and an executive officer and management team member of Hyzon, was responsible for the false statements in July 2021 about Hyzon's supposed delivery of the FCEV milk truck, when he knew that vehicle did not operate on hydrogen power. He was also responsible for Hyzon's misreporting of vehicle

2

sales in 2021 by its European subsidiary, when he knew that the European subsidiary was not selling the vehicles, but merely retrofitting customer-owned trucks to run on hydrogen power.

4. Hyzon later reversed recognition of the 87 FCEV sales in 2021 by its European and Chinese subsidiaries when it filed financial restatements.

5. Ultimately, Defendants' fraud was uncovered and disclosed to the public in a series of announcements from September 2021 through March 2023, causing a dramatic decline in Hyzon's share price and a reduction of approximately 85% in Hyzon's value.

**NATURE OF THE PROCEEDINGS AND REQUESTED RELIEF**

6. The SEC brings this action pursuant to the authority conferred upon it by Section 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. The SEC seeks permanent injunctions against each of the Defendants, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint and from violating, directly or indirectly, the laws and rules alleged in this Complaint; civil penalties pursuant to Securities Act Section 21(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 20(d) [15 U.S.C. § 78u(d)] against all Defendants; against Knight, an officer and director bar pursuant to the Court's inherent equitable authority and Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)]; and, against Holthausen, an officer and director bar pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]. The SEC seeks any other relief the Court may deem appropriate pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Securities Act Sections 20(b), 20(d), 20(e), and 22(a) [15 U.S.C. Sections §§ 77t(b), 77t(d), 77t(e), and 77v(a)] and Exchange Act Sections 21(d), 21(e), and 27 [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8.     The Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

9.     Venue lies in this Court pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Hyzon is headquartered in Honeoye Falls, New York. Venue also lies in this Court pursuant to 28 U.S.C. § 1391(c)(3) because Knight and Holthausen are not residents of the United States.

## DEFENDANTS

10.     **Hyzon Motors Inc.** is a Delaware corporation headquartered in Honeoye Falls, New York. Hyzon builds electric vehicles powered by hydrogen fuel cells acquired from its parent company, a Singapore company that manufactures and sells fuel cells in China and other countries. Hyzon's common stock is registered with the SEC pursuant to Exchange Act Section 12(b) [15 U.S.C. § 78l(b)] and trades on the Nasdaq Capital Market ("NASDAQ"), a national securities exchange. Hyzon also maintained public offering documents filed with the SEC in order to potentially issue and sell additional stock if certain events occurred.

11.     **Craig M. Knight**, age 54, is a citizen and resident of Australia. Knight co-founded Hyzon in January 2020 and became Hyzon's CEO and a member of Hyzon's board of directors in August 2020. Knight remained CEO and a member of the board of directors until he separated from Hyzon in August 2022. Hyzon later retroactively terminated Knight for cause.

4

12.      **Max C.B. Holthausen**, age 24, is a citizen and resident of the Netherlands. Holthausen is the CEO of Holthausen Clean Technology B.V. ("HCT"), which he founded with his father. In March 2020, HCT's parent company formed a joint venture with Hyzon called Hyzon Motors Europe B.V. ("Hyzon Europe"). Holthausen served as the managing director of Hyzon Europe from March 2020 until December 2022. In its SEC filings and investor presentations, Hyzon identified Holthausen as a named executive officer and management team member of Hyzon from at least January through July 2021.

## OTHER RELEVANT ENTITIES

13.      **Decarbonization Plus Acquisition Corporation ("DCRB" or the "SPAC")** was a Delaware corporation headquartered in Menlo Park, California. DCRB was a special purpose acquisition company ("SPAC") formed to raise funds in an initial public offering and then acquire an operating company through a merger financed, in part, by the funds it raised from investors. DCRB's common stock was registered with the SEC pursuant to Exchange Act Section 12(b) [15 U.S.C. § 78l(b)]. DCRB announced a proposed merger with Hyzon in February 2021, and DCRB's shareholders ratified the merger in July 2021. After completion of the merger, DCRB became Hyzon.

14.      **Hyzon Motors Europe B.V.** is based and organized in the Netherlands. Hyzon Europe markets FCEVs in Europe. From March 2020 until December 2022, Hyzon Europe was a joint venture between Hyzon and HCT's parent company. Hyzon owned the majority interest in Hyzon Europe. In December 2022, Hyzon purchased the minority interest of Hyzon Europe that HCT's parent company owned. Hyzon Europe is now a wholly owned subsidiary of Hyzon.

15.      **Hyzon Motors Technology (Shanghai) Co., Ltd. ("Hyzon China")** is based and organized in China. Hyzon China is a wholly owned subsidiary of Hyzon. Hyzon China sold its equity interest in the FCEV manufacturing component of its business in December 2022.

## FACTS

**A.      Defendants' Fraud Before the July 2021 Merger with the SPAC.**

16.      In January 2020, Hyzon's parent company separated the FCEV component of its business to form Hyzon. In November 2020, Hyzon began negotiating a merger with the SPAC. In connection with the anticipated merger, Hyzon planned to raise additional capital through a private investment in public equity ("PIPE") offering. In a PIPE offering, investors acquire shares in a publicly traded company through a private offering, which allows the public company to quickly raise funds without conducting a public offering.

17.      By at least January 2021, Hyzon and the SPAC began soliciting potential PIPE investors. On February 9, 2021, Hyzon and the SPAC publicly announced the proposed merger, which valued the combined company at approximately $2.1 billion. The SPAC's investors voted to approve the merger with Hyzon on July 15, 2021, and the merger closed on July 16, 2021. The merger provided Hyzon with access to approximately $600 million in capital – $200 million from money raised by the SPAC and another $400 million from PIPE investors.

**i.      Hyzon and Knight Misrepresented Hyzon's Relationships with Customers and Suppliers.**

18.      Beginning in at least January 2021, Hyzon and the SPAC distributed an investor presentation, prepared by Hyzon, about Hyzon's business. The investor presentation included information about Hyzon's relationships with certain large, well-known customers and suppliers. On February 9, 2021, the SPAC publicly filed a current report with the SEC, attaching the investor presentation as an exhibit, in preparation for the shareholder vote on the proposed merger with Hyzon. The SPAC also filed additional versions of the investor presentation with the SEC in February and April 2021. Hyzon posted a version of the investor presentation on its website in July 2021, and it remained posted until at least the summer of 2022.

6

19.     Statements in the investor presentation about the status of Hyzon's relationships with certain well-known customers were false and misleading, including specific statements about projected sales to the well-known customers. Although Hyzon had solicited transactions with these companies, none had indicated they would purchase FCEVs from Hyzon.

20.     Additionally, certain January and February 2021 versions of the investor presentation identified well-known customers and suppliers by name and logo, creating the false impression that all of the companies authorized Hyzon to use their names and logos, when in fact Hyzon had not obtained all of the companies' consent.

21.     In February 2021, when certain customers demanded the removal of their names and logos from the investor presentation, Hyzon replaced the names and logos with generic descriptions of each company. However, the false and misleading statements about the status of Hyzon's customer relationships remained in subsequent versions of the investor presentations.

22. Hyzon's false and misleading statements about its purported customers included the following:

(a)     Company-1: In the January 2021 investor presentation version provided to potential PIPE investors and the February 9, 2021 version attached to an SEC filing, Hyzon stated that it was "finalizing" a $2 million purchase order for five FCEVs to be delivered to Company-1 in 2021. This statement was false and misleading because Company-1 never expressed an intent to purchase FCEVs from Hyzon. In fact, by at least February 4, 2021, Company-1 had informed Hyzon that it could not accept an offer for any FCEV deliveries in 2021 because the deliveries were not included in Company-1's annual budget. Hyzon removed Company-1's name and logo from subsequent versions of the investor

7

presentation released in February, April, and July 2021. However, Hyzon continued to state that it was finalizing the purchase order with Company-1, which it then referred to as an anonymous "Global Brewer[.]" This statement was still false and misleading because it mischaracterized the customer relationship as more advanced than it actually was.

(b)   Company-2: In the January 2021 investor presentation version provided to potential PIPE investors and the February 9, 2021 version attached to an SEC filing, Hyzon stated that it was "finalizing" a $1 million purchase order for three FCEVs to be delivered to Company-2. This statement was false and misleading because Company-2 had never indicated it intended to purchase FCEVs from Hyzon. By March 2021, Company-2 had informed Hyzon that it had selected a different FCEV supplier. Yet, Hyzon continued to disclose that it was engaged in "advanced discussions" for 2022 FCEV deliveries to an "Industrial Gas Company" – an anonymized reference to Company-2 – in April and July 2021 versions of the investor presentation. This statement was still false and misleading because it mischaracterized the customer relationship as in advanced discussions when Company-2 had selected another supplier.

(c)   Company-3: In the January 2021 investor presentation version provided to potential PIPE investors and the February 9, 2021 version attached to an SEC filing, Hyzon stated it was in "advanced discussions" to deliver FCEVs to Company-3 in 2021 and projected to deliver "500+" FCEVs to Company-3 and earn "$200mm+" in revenue over the next five years. These statements were false and misleading because Company-3 never indicated it intended to purchase

8

FCEVs from Hyzon. In subsequent versions of the investor presentation, Hyzon continued to falsely disclose it was in "advanced discussions" for 2021 or 2022 deliveries of vehicles to a "Beverage Company" – an anonymized reference to Company-3 – despite having only introductory meetings with Company-3 and its affiliates. This statement was still false and misleading because it mischaracterized the customer relationship as being in advanced discussions when the discussions were preliminary.

(d)     Company-4: In the January 2021 investor presentation version provided to potential PIPE investors and the February 9, 2021 version attached to an SEC filing, Hyzon stated that it was "finalizing" a $1 million "contract" to deliver two FCEVs to Company-4 in 2021. This statement was false and misleading because Company-4 never indicated it intended to purchase FCEVs from Hyzon. By June 2021, a Company-4 transportation provider specifically told Hyzon that it would not be moving forward with the project then under discussion. Yet, in April and July 2021 versions of the investor presentation, Hyzon stated that it was finalizing a contract with a "Leading Retailer" – an anonymized reference to Company-4. This statement was still false and misleading because it created the false impression that Hyzon was close to entering into a contract with Company-4 when Company-4's affiliate had ended discussions by at least June 2021.

23.     Each version of the investor presentation also included statements about the status of Hyzon's relationships with certain suppliers, including a statement that "key relationships have already been formed" with two suppliers of FCEV chassis. These statements were false and

9

misleading because Hyzon and these purported suppliers had not reached the point of negotiating any supply relationship.

24.     Knight was responsible for each of the false and misleading statements about Hyzon's purported customer and supplier relationships set forth in the investor presentation. Knight provided information about customer and supplier relationships to the individuals who drafted the investor presentation. Knight also made edits to, reviewed, and approved the misleading statements before their use in the presentation and filing with the SEC.

25.     Knight should have known that the statements about the customer and supplier relationships in the investor presentation, described above, were false and misleading. As Hyzon's CEO, Knight's responsibilities included advancing Hyzon's customer and supplier relationships alongside Hyzon's sales and operational employees. In addition, in some instances, Knight had specific information that contradicted statements made in the investor presentation. For example, Knight directly interacted with Company-3, which had not indicated that it intended to purchase FCEVs from Hyzon. Knight's negligence is imputed to Hyzon.

26.     The false and misleading statements about Hyzon's customer and supplier relationships were material to investors, including investors evaluating the SPAC merger and PIPE investments, when making investment decisions about Hyzon. The false and misleading statements communicated to investors that Hyzon was capable of generating revenue, despite lacking significant sales history, because it was purportedly finalizing contract terms with well-known customers. Additionally, the false and misleading statements communicated that, despite lacking significant manufacturing history, Hyzon had established supplier relationships that would enable it to manufacture the FCEVs needed to fulfill the orders purportedly being finalized.

10

27.     Hyzon and Knight obtained money and property by means of the false statements about Hyzon's customer and supplier relationships. Hyzon gained access to the SPAC's investor capital upon completion of the merger, and PIPE investors provided additional capital to Hyzon. Knight received company stock, and options to purchase additional stock, as a result of Hyzon's successful completion of the SPAC merger.

**ii.     Hyzon and Holthausen Misrepresented the Delivery of Hyzon's First FCEV.**

28.     On July 13, 2021, Hyzon issued a press release announcing that it delivered its first FCEV to Company-5, a transportation provider for a European dairy company. On the same day, Hyzon posted to social media a video of the FCEV operating with the statement that the FCEV, a "milk truck," was powered by hydrogen. Holthausen also posted the press release and video about the FCEV to his personal social media.

29.     The July 13, 2021 press release and social media posts about Hyzon's first FCEV delivery were false and misleading because the FCEV purportedly delivered to Company-5, and shown in the social media posts, did not run on hydrogen. When Hyzon recorded the video of the FCEV milk truck, it was not connected to an operational hydrogen fuel cell and was powered solely by an electric battery that allowed it to travel only a limited distance. Hyzon had not even installed a critical component on the FCEV that was required to power the FCEV with a hydrogen fuel cell.

30.     Holthausen was a maker of the false and misleading press release and social media postings and was ultimately responsible for their accuracy. Holthausen helped draft the July 13, 2021 press release, managed the video recording of the FCEV with the Hyzon Europe team he supervised, and posted the video on his personal social media.

31.     Holthausen knew, or was reckless in not knowing, and should have known that the July 13, 2021 press release and social media postings were false and misleading because the

11

FCEV milk truck did not run on hydrogen at the time of the video recording and the press release. Holthausen's scienter is imputed to Hyzon.

32. Holthausen also misled Hyzon's other executives about the operational status of the FCEV. For example, on September 16, 2021, a Hyzon executive asked Holthausen about rumors that the FCEV milk truck did not run on hydrogen. Holthausen denied the rumors.

33. The July 13, 2021 press release and social media postings about the FCEV milk truck were material to investors, including the SPAC's shareholders who voted whether to approve the Hyzon merger two days after the press release was issued. These statements were important because, among other reasons, Hyzon had not previously delivered any FCEVs to a customer.

34. Hyzon and Holthausen obtained money and property by means of the false statements in the July 13, 2021 press release and the social media posts about the first FCEV delivery. Hyzon gained access to the SPAC's investor capital upon completion of the merger, and PIPE investors provided additional capital to Hyzon through the private offering of securities. Holthausen received Hyzon stock, and options to purchase additional stock, as a result of Hyzon's successful completion of the SPAC merger.

**B.      Additional Fraud by Hyzon and Holthausen After the July 2021 Merger with the SPAC.**

35. After the merger, on July 19, 2021, Hyzon's stock began trading on NASDAQ. Hyzon's stock price declined in the weeks after the listing. Hyzon's management thereafter focused on the delivery of vehicles to prove Hyzon's operational ability and maintain its stock price.

36.     Prior to the merger, Hyzon publicly forecast in SEC filings and elsewhere that it would deliver 85 FCEVs before the end of 2021. After the merger, Hyzon publicly reaffirmed this forecast.

37.     Initially, Hyzon management focused on meeting the forecast by selling vehicles to European customers through Hyzon Europe. However, by the fourth quarter of 2021, Hyzon determined it could not meet the forecast through Hyzon Europe. As a result, Hyzon's management shifted its focus to selling vehicles to Chinese customers through Hyzon China.

38.     At the end of 2021, in SEC filings and other public statements, Hyzon falsely reported that it sold 87 FCEVs during the year, five in Europe and 82 in China, when it had not sold any vehicles that year.

i.     **Hyzon and Holthausen Falsely Claimed Hyzon Sold Five FCEVs in Europe, Even Though Hyzon Did Not Own the FCEVs it Purportedly Sold.**

39.     Hyzon reported in its financial statements for the third quarter and year-end 2021, which Hyzon filed with the SEC on November 15, 2021 and March 30, 2022, respectively, that it sold five FCEVs to European customers through Hyzon Europe in the third and fourth quarters of 2021. Specifically, Hyzon reported in its third quarter 2021 income statement and accompanying footnotes that it recorded approximately $1 million in revenue from Hyzon Europe's sales of FCEVs during the quarter. Additionally, Hyzon reported in its year-end 2021 income statement and accompanying footnotes that it recorded approximately $2.2 million in revenue from Hyzon Europe's sales of FCEVs during the year. Hyzon also reported the revenue attributable to the Hyzon Europe sales in press releases attached as exhibits to current reports filed with the SEC on November 12, 2021 and March 23, 2022.

40.     These statements were false and misleading because Hyzon Europe did not own the five FCEVs it claimed to have sold. Instead, these vehicles were owned by Hyzon Europe's

customers. Hyzon filed restated financial statements with the SEC on March 14, 2023, and reversed revenue recognition on the five FCEV sales in 2021 to European customers.

41.     Prior to the formation of Hyzon Europe, HCT contracted with intermediaries for customers in Europe to retrofit five vehicles, which were owned by the customers, with hydrogen fuel cell technology. HCT transferred the retrofit projects to Hyzon Europe prior to Hyzon's July 2021 merger with the SPAC. Even though neither HCT nor Hyzon Europe owned the vehicles, Hyzon Europe reported to Hyzon that it sold the five vehicles during the third and fourth quarters of 2021 for the purpose of including these purported sales in Hyzon's financial statements filed with the SEC and other public announcements. Hyzon Europe reported the purported sales to Hyzon with Holthausen's knowledge and approval. Holthausen had ultimate authority for these statements in Hyzon's financial statements.

42.     Holthausen knew, or was reckless in not knowing, and should have known that Hyzon's public statements reflecting the sale of five FCEVs in Europe, including its third quarter and year-end 2021 financial statements, were false and misleading because he knew that HCT, Hyzon Europe, and Hyzon never owned the vehicles Hyzon Europe purportedly sold. Holthausen's scienter is imputed to Hyzon.

43.     In addition, Hyzon should have known that its statements reflecting the sale of five FCEVs in Europe were false and misleading based on the operation of its internal controls. However, Hyzon failed to implement effective internal controls necessary to ensure that Hyzon Europe owned the FCEVs it purported to sell. Hyzon Europe did not employ accounting personnel with knowledge of United States accounting and financial reporting standards. Hyzon's accounting and finance employees in the United States lacked sufficient visibility into

the operations and processes related to the sales of products and services at Hyzon Europe to ensure revenue was recognized in conformance with standards in the United States.

44.     Hyzon's recognition of five FCEV sales in 2021 to European customers through Hyzon Europe was material to investors. These purported sales represented Hyzon's first completed sales of FCEVs and caused Hyzon to overstate its revenue by approximately 91% in the third quarter of 2021 and 35% for the full year 2021.

**ii.      Hyzon Falsely Claimed It Sold 82 FCEVs in China in 2021.**

45.     Hyzon reported in its financial statements for year-end 2021, which Hyzon filed with the SEC on March 30, 2022, that it sold 82 FCEVs to Chinese customers through Hyzon China in the fourth quarter of 2021. Specifically, Hyzon reported in its year-end 2021 income statement and accompanying footnotes that it recorded $3.8 million in revenue from Hyzon China's sales during the year. Hyzon also reported revenue attributable to the Hyzon China sales in a press release attached as an exhibit to a current report filed with the SEC on March 23, 2022.

46.     These statements were false and misleading. Many of the FCEVs were not operational on hydrogen power at the time of delivery and, therefore, Hyzon could not recognize these purported sales. A Hyzon China employee arranged to deliver FCEVs shortly before the end of 2021 in order to meet Hyzon's public guidance. However, the customers agreed to return the vehicles to Hyzon China's manufacturer after year-end to complete necessary work on the vehicles so that they could run on hydrogen power.

47.     As a result of the misconduct described above, Hyzon misstated its 2021 annual financial statements, which Hyzon filed with the SEC on March 30, 2022. Hyzon filed restated financial statements with the SEC on March 14, 2023, and reversed revenue recognition on the 82 FCEV sales in 2021 to Chinese customers.

48.     Hyzon should have known that its statements reflecting the sale of 82 FCEVs in China were false and misleading based on the operation of its internal controls. However, Hyzon failed to implement effective internal controls sufficient to provide reasonable assurance that Hyzon China completed all steps required to recognize the 82 FCEV sales to Chinese customers in 2021.

49.     Hyzon's parent company, which indirectly retained a majority interest in Hyzon after the SPAC merger, oversaw most of Hyzon China's operations, including the accounting and sales functions, pursuant to an agreement with Hyzon China. Hyzon management lacked sufficient control of the operations of Hyzon China to ensure that sales to Chinese customers were reported in conformance with standards in the United States.

50.     Hyzon's recognition of 82 FCEV sales in 2021 to Chinese customers through Hyzon China was material to investors because it significantly inflated Hyzon's revenue for 2021 and allowed it to meet its sales forecasts. Both metrics were important to investors.

51.     Specifically, Hyzon's improper recognition of the 82 Chinese FCEV sales inflated Hyzon's full-year 2021 revenue by approximately 65%. These misstatements also caused Hyzon to understate its first quarter 2022 revenue by approximately $2.5 million – more than 85% – because certain sales recognized in 2021 should have been recognized in that quarter.

52.     Additionally, Hyzon would not have achieved its 85-FCEV sales forecast for 2021 without recognizing the 82 sales to Chinese customers. Achieving the sales forecast was important to investors, who valued Hyzon's ability to deliver a high volume of vehicles as forecast.

**C.**   **Hyzon and Holthausen Employed a Scheme to Defraud, and Engaged in a Course of Business Operating as a Fraud, by Claiming Deliveries and Sales of FCEVs to European Customers.**

53.     Hyzon and Holthausen employed a fraudulent scheme and course of business that exaggerated the operations and sales of Hyzon Europe. For example, shortly before and after the July 2021 SPAC merger, Hyzon and Holthausen published a deceptive video purporting to show its first FCEV milk truck in operation, and also published a press release touting delivery of this FCEV. However, as alleged above, Holthausen knew or was reckless in not knowing, and should have known, that this vehicle did not run on hydrogen at the time of the video recording and press release. Later in 2021, Hyzon falsely reported sales of FCEVs in Europe, when Holthausen knew or was reckless in not knowing, and should have known, that Hyzon Europe never owned the vehicles it claimed to sell. Holthausen also signed a false document used to support sales recognition for the purported sales in Europe. Holthausen's scienter is imputed to Hyzon. Hyzon and Holthausen's deceptive claims about the milk truck and Hyzon's purported later sales in Europe were in furtherance of a scheme to defraud, and represented a course of business that operated as a fraud, upon Hyzon's investors. In March 2023, Hyzon publicly disclosed the misconduct concerning FCEV deliveries and sales by Hyzon Europe.

**D.**   **Hyzon and Knight Engaged in a Course of Business Operating as a Fraud by Exaggerating Hyzon's Customer and Supplier Relationships.**

54.     Hyzon and Knight also negligently and misleadingly touted Hyzon's purported relationships with well-known customers and suppliers in Hyzon's investor presentation, creating the false appearance that significant sales transactions were imminent. For example, Hyzon and Knight published multiple versions of the investor presentation over several months and provided it on Hyzon's website for more than a year. Knight's negligence is imputed to

17

Hyzon. This use of the false and misleading investor presentation also represented a course of business that operated as a fraud on Hyzon's investors.

**E.      Hyzon's Stock Price and Value Declined Due to Revelations of Fraud.**

55.      When the SPAC announced its proposed merger with Hyzon in February 2021, the SPAC's stock price reached nearly $20 per share on the date of the announcement. The transaction valued the combined company at approximately $2.1 billion. Hyzon's stock price dramatically declined following the merger, including during the September 2021 through March 2023 period in which investors learned about the pre- and post-merger fraud described above. Today, Hyzon's stock trades at just above $1 per share, and its market value is about $300 million – an approximately 85% decline from the SPAC merger valuation.

**F.      Hyzon Made False SEC Filings, and Holthausen Aided and Abetted Hyzon's Misconduct.**

56.      Hyzon filed current, quarterly, and annual reports with the SEC that omitted material information necessary to make the statements therein not misleading. Hyzon filed its third quarter and year-end 2021 financial statements with the SEC on Forms 10-Q and 10-K on November 15, 2021 and March 30, 2022, respectively. The financial statements reported revenue from purported sales by Hyzon Europe and Hyzon China. However, as a result of the misconduct alleged above, Hyzon could not recognize revenue for the reported sales. Additionally, Hyzon improperly reported the revenue associated with these sales in press releases attached as exhibits to current reports Hyzon filed with the SEC on Forms 8-K on November 12, 2021 and March 23, 2022.

57.      Hyzon also failed to accurately report revenue in its first quarter 2022 financial statements, which it filed with the SEC on Form 10-Q on May 13, 2022. Hyzon failed to include revenue from certain Hyzon China sales that Hyzon improperly recognized in 2021. Instead,

18

Hyzon should have recorded this revenue in the first quarter of 2022. Additionally, Hyzon failed to report the associated revenue in a press release attached as an exhibit to a current report Hyzon filed with the SEC on Form 8-K on May 6, 2022.

58.     The improperly reported revenue was material to investors. When corrected by Hyzon as part of a restatement, Hyzon's third quarter and year-end 2021 revenue declined by 91% and 100%, respectively. Furthermore, Hyzon's first quarter 2022 revenue increased by more than 85%.

59.     Holthausen knowingly provided substantial assistance to Hyzon's misconduct with respect to the portion of revenue attributable to Hyzon Europe's falsely reported sales. As alleged above, Holthausen knew that Hyzon Europe did not own the FCEVs it purportedly sold in 2021. Hyzon Europe reported the purported sales to Hyzon with Holthausen's knowledge and approval. Holthausen had ultimate authority for the false revenue reported by Hyzon with respect to these sales.

**G.     Hyzon Maintained False Books and Records, and Holthausen Aided and Abetted Hyzon's Misconduct.**

60.     Hyzon failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets for the third quarter and annual periods of 2021, as well as the first quarter of 2022. In 2021, Hyzon improperly recorded in its books and records the purported sales transactions described above. In the first quarter of 2022, Hyzon failed to record in its books and records certain of the sales transactions that should have been recorded in the first quarter of 2022 but were improperly recorded in 2021.

61.     Holthausen knowingly provided substantial assistance to Hyzon's misconduct with respect to the purported Hyzon Europe sales recorded in Hyzon's books and records in

19

2021. As alleged above, Holthausen knew that Hyzon Europe did not own the FCEVs that Hyzon purported to sell in 2021. Hyzon improperly recorded revenue from these sales in its books and records with Holthausen's knowledge and approval.

**H.      Hyzon Failed to Maintain Internal Accounting Controls.**

62.      Hyzon failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that its sales transactions were recorded as necessary to permit the preparation of its financial statements in conformity with generally accepted accounting principles. As alleged above, Hyzon did not maintain internal accounting controls to ensure that sales by Hyzon Europe and Hyzon China met the criteria for revenue recognition under generally accepted accounting principles.

**I.      Hyzon Failed to Maintain Disclosure and Financial Reporting Controls.**

63.      Hyzon failed to maintain disclosure controls and procedures, as well as internal controls over financial reporting. As alleged above, Hyzon improperly disclosed purported sales in its current, quarterly, and annual reports filed with the SEC. Hyzon did not have effective disclosure controls in place to ensure the accumulation of accurate information or communication of that information to management responsible for making such disclosures. Hyzon also failed to maintain effective financial reporting controls necessary to ensure the accuracy of its financial reports filed with the SEC. In a March 14, 2023 filing with the SEC, Hyzon acknowledged that there were material weaknesses in its internal controls over financial reporting as of December 31, 2021 and its disclosure controls and procedures were not effective as of December 31, 2021.

**J.      Holthausen Falsified Hyzon's Books, Records, and Accounts Concerning Hyzon Europe Sales.**

64.      Holthausen falsified, or caused to be falsified, Hyzon's books, records, and accounts concerning the five purported FCEV sales made by Hyzon Europe in 2021. As alleged above, Holthausen knew that Hyzon Europe did not own the FCEVs. Hyzon improperly recorded the sales in its accounts and other records with Holthausen's knowledge and approval. Additionally, Holthausen signed the Vehicle Purchase Agreement that purported to transfer the five vehicles from HCT to Hyzon Europe. Holthausen knew that HCT did not own the vehicles it purported to transfer to Hyzon Europe when he signed the Vehicle Purchase Agreement.

**K.      Hyzon and Knight Violated Shareholder Proxy Requirements by Failing to Disclose Knight's Improper Stock Pledge.**

65.      On April 27, 2022, Hyzon filed a proxy statement with the SEC, which it used to solicit shareholder proxies in advance of its annual shareholder meeting. Knight participated in the proxy solicitation, including through his introduction letter to shareholders at the beginning of the proxy statement. The proxy statement omitted reference to an improper pledge of Hyzon stock by Knight. Hyzon was required to disclose Knight's stock pledge pursuant to Item 403(b) of Regulation S-K [17 C.F.R. § 229.403(b)].

66.      Knight had pledged 226,415 shares of his Hyzon stock to secure a $1.5 million loan he obtained from Company-6, a Singapore-based entity run by Knight's friend, on November 18, 2021. Knight used the loan proceeds to purchase an additional 166,000 shares of Hyzon stock on the open market on November 22, 2021. Knight purchased the additional stock in an unsuccessful attempt to inflate Hyzon's stock price, which had been in decline since the September 2021 publication of a short-seller report that challenged various claims by Hyzon.

67.       The November 18, 2021 loan agreement with Company-6 did not reference the stock pledge and, at Knight's request, the pledge was not registered with a brokerage or other

third-party. Instead, Knight and Company-6 documented the pledge in a separate agreement that Knight signed on December 8, 2021. Knight did not share the separate pledge agreement with Hyzon. Then, in March 2022, Knight failed to disclose pledging any Hyzon stock in response to a written questionnaire distributed to Hyzon's directors and officers in advance of the April 27, 2022 proxy statement filing. Because Knight hid the stock pledge, Hyzon did not disclose it as required.

68.    Knight hid the stock pledge from Hyzon because he knew, or reasonably should have known, that the stock pledge violated a February 8, 2021 lock-up agreement he entered into with Hyzon that prohibited him from pledging his shares. Knight also knew, or reasonably should have known, that Hyzon was required to disclose the pledge to investors pursuant to SEC rules. Required disclosures are material to investors.

## FIRST CLAIM FOR RELIEF

**Fraud**
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(Against Hyzon and Holthausen)**

69. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

70. By engaging in the conduct described above, Hyzon and Holthausen, singly or in concert with others, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

(a)    employed devices, schemes or artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

22

(c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

71. By reason of the foregoing, Hyzon and Holthausen, directly and indirectly, violated and unless enjoined will again violate, Exchange Act Section 10(b) [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

**Fraud**
**Violations of Securities Act Section 17(a)(1)**
**(Against Hyzon and Holthausen)**

72. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

73. By engaging in the conduct described above, Hyzon and Holthausen, singly or in concert with others, in connection with the purchase or sale of securities, by use of a means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed a device, scheme, or artifice to defraud.

74. By reason of the foregoing, Hyzon and Holthausen, directly or indirectly, violated, and unless enjoined will again violate, Securities Act Section 17(a)(1) [15 U.S.C. § 77q(a)(1)].

## THIRD CLAIM FOR RELIEF

**Fraud**
**Violations of Securities Act Sections 17(a)(2) and 17(a)(3)**
**(Against All Defendants)**

75. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

76. By engaging in the conduct described above, Defendants, singly or in concert with others, in connection with the purchase or sale of securities, by use of a means or instrumentality of interstate commerce, or of the mails:

23

(a) knowingly, recklessly, or negligently obtained money or property by means of untrue statements of material facts, or omissions of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(b) knowingly, recklessly, or negligently engaged in a transaction, practice or course of business which operated or would operate as a fraud or deceit upon the purchaser.

77. By reason of the foregoing, Defendants, directly or indirectly, violated, and unless enjoined will again violate, Securities Act Sections 17(a)(2) and 17(a)(3) [15 U.S.C. §§ 77q(a)(2), 77q(a)(3)].

## FOURTH CLAIM FOR RELIEF

**False SEC Filings**
**Violations of Exchange Act Section 13(a) and**
**Rules 12b-20, 13a-1, 13a-11, and 13a-13 Thereunder**
**(Against Hyzon as a Primary Violator; Aiding and Abetting as to Holthausen)**

78. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

79. By engaging in the conduct described above, Hyzon failed to file or filed current, quarterly, and annual reports with the SEC which failed to include material information necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

80. Holthausen knowingly provided substantial assistance in violation of Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] to Hyzon's violations of Exchange Act Section 13(a) and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 140.13a-11, 240.13a-13].

81. By reason of the foregoing, Hyzon violated, and Holthausen aided and abetted Hyzon's violations, and unless enjoined Hyzon will again violate and Holthausen will aid and abet violations of, Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 140.13a-11, 240.13a-13].

## FIFTH CLAIM FOR RELIEF

**False Books and Records**
**Violations of Exchange Act Section 13(b)(2)(A)**
**(Against Hyzon as a Primary Violator; Aiding and Abetting as to Holthausen)**

82. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

83. By engaging in the conduct described above, Hyzon failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of the issuer.

84. Holthausen knowingly provided substantial assistance in violation of Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] to Hyzon's violations of Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)].

85. By reason of the foregoing, Hyzon violated, and Holthausen aided and abetted Hyzon's violations, and unless enjoined Hyzon will again violate and Holthausen will aid and abet violations of, Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)].

## SIXTH CLAIM FOR RELIEF

**Internal Accounting Controls**
**Violations of Exchange Act Section 13(b)(2)(B)**
**(Against Hyzon)**

86. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

87. By engaging in the conduct described above, Hyzon failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:

25

(a)     transactions were executed in accordance with management's general or specific authorization;

(b)     transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and maintain accountability for assets;

(c)     access to assets was permitted only in accordance with management's general or specific authorization; and

(d)     the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

88. By reason of the foregoing, Hyzon violated and unless enjoined will again violate, Exchange Act Section 13(b)(2)(B) [15 U.S.C. § 78m(b)(2)(B)].

## SEVENTH CLAIM FOR RELIEF

**Disclosure and Reporting Controls**
**Violations of Exchange Act Rule 13a-15(a)**
**(Against Hyzon)**

89. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

90. By engaging in the conduct described above, Hyzon failed to maintain disclosure controls and procedures and internal controls over financial reporting.

91. By reason of the foregoing, Hyzon violated, and unless enjoined will again violate, Exchange Act Rule13a-15(a) [17 C.F.R. § 240.13a-15(a)].

## EIGHTH CLAIM FOR RELIEF

**Falsified Books, Records, or Accounts
Violations of Exchange Act Section 13(b)(5)
(Against Holthausen)**

92. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

93. By engaging in the conduct described above, Holthausen:

(a)    knowingly circumvented or knowingly failed to implement a system of internal

accounting controls; and

(b)    knowingly falsified, or caused to be falsified, Hyzon's books, records, or

accounts.

94. By reason of the foregoing, Holthausen violated, and unless enjoined will again

violate, Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)].

## NINTH CLAIM FOR RELIEF

**Proxy Disclosures
Violations of Exchange Act Section 14(a) and Rule 14a-9 Thereunder
(Against Hyzon and Knight)**

95. Paragraphs 1 through 68 are re-alleged and incorporated by reference.

96. By engaging in the conduct described above, Hyzon and Knight, by use of the mails,

or the means or instrumentalities of interstate commerce or any facility of a national securities

exchange, solicited proxies without furnishing each person solicited a proxy statement containing

the information specified by the proxy rules, and used proxy statements containing statements

which, at the time and in light of the circumstances under which they are made, were false or

misleading with respect to a material fact, or omitted to state material facts necessary to make the

statement therein not misleading or necessary to correct any statement in any earlier

27

communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

97. By reason of the foregoing, Hyzon and Knight violated, and unless enjoined will again violate, Exchange Act Section 14(a) [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court:

### I.

Find that the Defendants committed the violations alleged in this Complaint;

### II.

Enter an injunction, in a form consistent with Rule 65 of the Federal Rules of Civil Procedure, permanently restraining each of the Defendants from violating, directly or indirectly, the laws and rules they are alleged to have violated in this Complaint;

### III.

Pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], order Defendants to pay civil money penalties;

### IV.

Pursuant to the Court's inherent equitable authority and Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)], bar Knight from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. § 78o(d)];

**V.**

Pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)], bar Holthausen from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. § 78o(d)]; and

**VI.**

Grant such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC demands trial by jury in this action of all issues so triable.

Dated: September 26, 2023

Respectfully submitted,

s/ Sharan E. Lieberman

_____

Sharan E. Lieberman
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, Suite 1700
Denver, Colorado 80294
(303) 844-1000
liebermans@sec.gov