**LIST OF LEAD PLAINTIFF'S [PROPOSED] SUPPLEMENTAL ALLEGATIONS**

The following table lists the allegations Lead Plaintiff intends to add to his complaint. To preserve the paragraph number in the TAC (relied on by Defendants' motions to dismiss and Lead Plaintiff's opposition thereto, Lead Plaintiff demarks these new allegations as ¶ ###A.

| Proposed Compl. ¶ | Proposed Allegations | SEC Compl. ¶ Reference |
|---|---|---|
| 120A | Statements in this and other investor presentations about the status of Hyzon's relationships with certain well-known customers were false and misleading, including specific statements about projected sales to the well-known customers. Although Hyzon had solicited transactions with these companies, none had indicated they would purchase FCEVs from Hyzon. | 19 |
| 120B | Additionally, references to well-known companies and suppliers by name and logo created the false impression that all of the companies authorized Hyzon to use their names and logos, when in fact Hyzon had not obtained all of the companies' consent. | 20 |
| 120C | In February 2021, when certain customers demanded the removal of their names and logos from the investor presentation, Hyzon replaced the names and logos with generic descriptions of each company. However, the false and misleading statements about the status of Hyzon's customer relationships remained in subsequent versions of the investor presentations. | 21 |
| 117A | These statements were false and misleading because Heineken never expressed an intent to purchase FCEVs from Hyzon. In fact, by at least February 4, 2021, Heineken had informed Hyzon that it could not accept an offer for any FCEV deliveries in 2021 because the deliveries were not included in Heineken's annual budget. Hyzon removed Heineken's name and logo from subsequent versions of the investor presentation released in February, April, and July 2021. However, Hyzon continued to state that it was finalizing the purchase order with Heineken, which it then referred to as an anonymous "Global Brewer[.]" This statement was still false and misleading because it mischaracterized the customer relationship as more advanced than it actually was. | 22(a) |

| 118B | Likewise, for Coca-Cola, Hyzon stated it was in "advanced discussions" to deliver FCEVs to Coca Cola in 2021 and projected to deliver "500+" FCEVs to Coca Cola and earn "$200mm+" in revenue over the next five years. These statements were false and misleading because Coca Cola never indicated it intended to purchase FCEVs from Hyzon. In subsequent versions of the investor presentation, Hyzon continued to falsely disclose it was in "advanced discussions" for 2021 or 2022 deliveries of vehicles to a "Beverage Company"—an anonymized reference to Coca Cola—despite having only introductory meetings with Coca Cola and its affiliates. This statement was still false and misleading because it mischaracterized the customer relationship as being in advanced discussions when the discussions were preliminary. | 22(c) |
|---|---|---|
| 118A | These statements were false and misleading because Ikea never indicated it intended to purchase FCEVs from Hyzon. By June 2021, an Ikea transportation provider specifically told Hyzon that it would not be moving forward with the project then under discussion. Yet, in April and July 2021 versions of the investor presentation, Hyzon stated that it was finalizing a contract with a "Leading Retailer" – an anonymized reference to Ikea. This statement was still false and misleading because it created the false impression that Hyzon was close to entering into a contract with Ikea when Ikea's affiliate had ended discussions by at least June 2021. | 22(d) |
| 300A | These statements were false and misleading because Hyzon and these purported suppliers had not reached the point of negotiating any supply relationship. | 23 |
| 446A | Knight was responsible for each of the false and misleading statements about Hyzon's purported customer and supplier relationships set forth in the investor presentation. Knight provided information about customer and supplier relationships to the individuals who drafted the investor presentation. Knight also made edits to, reviewed, and approved the misleading statements before their use in the presentation and filing with the SEC. | 24 |
| 446B | Knight should have known that the statements about the customer and supplier relationships in the investor presentation, described above, were false and misleading. As Hyzon's CEO, Knight's responsibilities included advancing Hyzon's customer and supplier relationships alongside Hyzon's sales and operational employees. In addition, in some instances, Knight had specific information that | 25 |

| | | |
|---|---|---|
| | contradicted statements made in the investor presentation. For example, Knight directly interacted with Coca-Cola, which had not indicated that it intended to purchase FCEVs from Hyzon. Knight's negligence is imputed to Hyzon. | |
| 284A | The false and misleading statements about Hyzon's customer and supplier relationships also communicated to investors that Hyzon was capable of generating revenue, despite lacking significant sales history, because it was purportedly finalizing contract terms with well-known customers. | 26 |
| 438A | On July 13, 2021, Hyzon also posted to social media a video of the FCEV operating with the statement that the FCEV, a "milk truck," was powered by hydrogen. The vehicle did not run on hydrogen. When Hyzon recorded the video of the FCEV milk truck, it was not connected to an operational hydrogen fuel cell and was powered solely by an electric battery that allowed it to travel only a limited distance. Hyzon had not even installed a critical component on the FCEV that was required to power the FCEV with a hydrogen fuel cell. | 29 |
| 188A | In September 2023, it was disclosed that a Hyzon employee arranged to deliver FCEVs to HongYun shortly before the end of 2021 in order to meet Hyzon's public guidance. However, the customers agreed to return the vehicles to Hyzon China's manufacturer after year-end to complete necessary work on the vehicles so that they could run on hydrogen power. | 46 |
| 188B | Hyzon's parent company, which indirectly retained a majority interest in Hyzon after the SPAC merger, oversaw most of Hyzon China's operations, including the accounting and sales functions, pursuant to an agreement with Hyzon China. | 49 |
| 184A | On or about November 18, 2021, Knight secretly pledged part of his Hyzon shares to obtain a loan, buy Hyzon stock on the open market, and inflate Hyzon's stock price. Specifically, on or about November 18, Knight had pledged 226,415 shares of his Hyzon stock to secure a $1.5 million loan he obtained from a Singapore-based entity run by Knight's friend. Knight used the loan proceeds to purchase an additional 166,000 shares of Hyzon stock on the open market on November 22, 2021. Knight purchased the additional stock in an unsuccessful attempt to inflate Hyzon's stock price, which had been in decline since the September 2021 publication of a short-seller report that challenged various claims by Hyzon. | 66 |
| 184B | The November 18, 2021 loan agreement did not reference the stock pledge and, at Knight's request, the pledge was not registered with a brokerage or other third-party. Instead, | 67 |

| | | |
|---|---|---|
| | Knight and his friend's company documented the pledge in a separate agreement that Knight signed on December 8, 2021. Knight did not share the separate pledge agreement with Hyzon. Then, in March 2022, Knight failed to disclose pledging any Hyzon stock in response to a written questionnaire distributed to Hyzon's directors and officers in advance of an April 27, 2022 proxy statement filing. Because Knight hid the stock pledge, Hyzon did not disclose it as required. | |
| 184C | Knight hid the stock pledge because he knew, or reasonably should have known, that the stock pledge violated a February 8, 2021 lock-up agreement he entered into with Hyzon that prohibited him from pledging his shares. Knight also knew, or reasonably should have known, that Hyzon was required to disclose the pledge to investors pursuant to SEC rules. | 68 |