# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |
| --- | --- |
| *IN RE HYZON MOTORS INC, SECURITIES LITIGATION*<br><br>This Document Relates to:<br>　　ALL ACTIONS. | Master File No.: 21-cv-06612-CJS-MWP<br><br>Dated:　　November 22, 2023 |

## THE DCRB DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED AND CONSOLIDATED COMPLAINT

VINSON & ELKINS LLP

Michael C. Holmes (*pro hac vice*)
Jeffrey Crough (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone:  +1.214.220.7700

Marisa Antonelli
1114 Avenue of the Americas
New York, New York 10036-7708
Telephone:  +1.212.237.0000

*Counsel for Peter Haskopoulos, Robert Tichio, Jennifer Aaker, Jane Kearns, Pierre Lapeyre, David Leuschen, Jim McDermott, Jeffrey Tepper, Michael Warren, Riverstone Investment Group LLC, Decarbonization Plus Acquisition Sponsor, LLC, and WRG DCRB Investors, LLC*

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    THE COURT SHOULD DISMISS PLAINTIFF'S SECTION 14(A) CLAIM ................. 2

     A.    The Section 14(a) claim is derivative. .................................................... 2

     B.    Plaintiff did not plead the requisite level of culpability and cannot convert his Section 14(a) claim into a strict liability claim. ................................. 4

          1.    Plaintiff alleges fraud without satisfying Rule 9(b). .................................. 4

          2.    Plaintiff did not and cannot point to any negligent act. ............................. 6

     C.    The claim against WRG should be dismissed........................................... 9

III.   THE OPPOSITION CONFIRMS PLAINTIFF'S FAILURE TO PLEAD A SECTION 10(B) CLAIM AGAINST HASKOPOULOS OR TICHIO ............................ 9

IV.   CONCLUSION................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021)......................................................... 5

*Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) ................................................................... 4

*Greco v. Qudian Inc.*,
2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022)....................................................... 10

*In re Adient plc Sec. Litig.*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) .......................................................... 11

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ................................................................... 9

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
586 F. Supp. 3d 199 (E.D.N.Y. 2022) ................................................................... 5

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................................................................... 5

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................................... 6

*In re MultiPlan Corp. S'holders Litig.*,
268 A.3d 784 (Del. Ch. 2022) ............................................................................... 3

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................... 4

*In re Romeo Power, Inc. Sec. Litig.*,
2022 WL 1806303 (S.D.N.Y. June 2, 2022) ................................................. 1, 2, 3, 4

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
625 F. Supp. 3d 164 (S.D.N.Y. 2022) ................................................................... 10

*Karp v. First Conn. Bancorp, Inc.*,
535 F. Supp. 3d 458 (D. Md. 2021)........................................................................ 8

*Krieger v. Atheros Commc'ns, Inc.*,
2012 WL 1933559 (N.D. Cal. May 29, 2012).......................................................... 7

*Little Gem Life Sciences, LLC v. Orphan Medical, Inc.*,
537 F.3d 913 (8th Cir. 2008) ................................................................................ 6

*Mehedi v. View, Inc.*,
2023 WL 3592098 (N.D. Cal. May 22, 2023).......................................................... 3

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006).................................................................................................. 7

*Paskowitz v. Pac. Cap. Bancorp*,
   2009 WL 4911850 (C.D. Cal. Nov. 6, 2009)..............................................................8

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009) .......................................................................5

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) .....................................................................................5

*Stevelman v. Alias Res., Inc.*,
   174 F.3d 79 (2d Cir. 1999) .......................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................................6

*Tobia v. United Grp. of Cos.*,
   2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016) ........................................................10

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ...................................................................................11

**Statutes**

15 U.S.C. § 78u-4(b)(2) ...............................................................................................7

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................2, 4, 5

## I.  __INTRODUCTION__

Like the Third Amended Complaint ("TAC"), the Opposition[1] defends Plaintiff's newly-minted Section 14(a) claims primarily by relying on and conflating post-Merger developments—including Hyzon's alleged post de-SPAC delivery and compliance issues—even though the DCRB Defendants ceased any involvement with management upon the closing.  The Opposition also relies heavily on allegations made in a Securities Exchange Commission ("SEC") settlement with Hyzon and certain Hyzon officers; but notably, the SEC did not propose action against any DCRB Defendant or make allegations indicating any wrongdoing by them.  Plaintiff simply fails to justify why the DCRB Defendants could be belatedly added to this action based on their *pre-Merger* sponsorship, and why such claims—even if viable—are direct rather than classic derivative claims for the alleged overvaluation of Hyzon.

*First*, the Opposition does not dispute that the new Section 14(a) claim should be dismissed if it is derivative because Plaintiff has not attempted to plead demand futility.  The Opposition instead contends only that the claim is direct by analogizing it to Delaware non-Section 14(a) cases alleging that directors breached their fiduciary duties by impairing class members' right to redeem SPAC shares.  Plaintiff's claim here, by contrast, seeks recovery for a decline in his stock value based on the alleged discovery of Hyzon's "true value" and is thus on all fours with *In re Romeo Power, Inc. Sec. Litig.*, which correctly held that a plaintiff's Section 14(a) theory presented a derivative "overpayment" claim.  2022 WL 1806303 (S.D.N.Y. June 2, 2022).

*Second*, the Opposition does not dispute that the TAC's allegations against the DCRB Defendants sound in fraud; indeed, it doubles down on the TAC's theme that Defendants were incentivized to engage in fraudulent conduct.  By doing so, the Opposition merely underscores that

---

[1] Lead Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss the Third Amended Consolidated Complaint, ECF No. 96 ("Opposition" or "Opp.").

the TAC's self-serving conclusory disclaimers are insufficient to avoid the heightened strictures of Rule 9(b). But the Opposition's "founders shares" theory of deceit makes no sense because those shares converted into the same stock held by public stockholders, and the TAC alleges nothing else of substance about the DCRB Defendants' mental state. These illogical and bare-bones allegations require dismissal under Rule 9(b) for failure to plead scienter with particularity, and indeed even under a notice standard of pleading.

*Third*, the Opposition offers no basis to assert Section 10(b) claims against DCRB Defendants Haskopoulos and Tichio—failing (like the TAC) to proffer a rational theory of scienter or, in the case of Haskopoulos, failing to even attribute a single statement to him.

Given the Hyzon Defendants' ample discussion of why the alleged misstatements rest on misreadings of the relevant documents and meritless attempts to avoid statutory safe harbors, the DCRB Defendants will not burden the Court with repetition here. But as explained further below, there is no occasion to expand this action with a pre-Merger Section 14(a) theory and the additional DCRB Defendants regardless.

## II.      THE COURT SHOULD DISMISS PLAINTIFF'S SECTION 14(A) CLAIM

### A.      The Section 14(a) claim is derivative.

The Opposition fails to demonstrate how the TAC's Section 14(a) overvaluation theory gives rise to direct shareholder claims, rather than derivative claims that should be dismissed for failure to plead demand futility regardless of the issues of scienter and disclosure. *See* DCRB Br. 11-12. To avoid the directly on-point holding of *Romeo Power*—that overvaluation claims like those at issue here were derivative under Section 14(a)—Plaintiff now asserts his claim is actually "based on Defendants' deprivation of investors' redemption rights" in connection with the Merger, analogizing to the claims asserting redemption-impairment theories in *Malork* and other Delaware de-SPAC fiduciary duty cases. Opp. 67; DCRB Br. Ex. C at 20:6-14. But a Section 14(a) claim

arises from federal statutory law that depends on the adequacy of disclosure, rather than impaired redemptions rights. TAC ¶¶518-61. Accordingly, Plaintiff seeks damages based not on the redemption price, but rather on the difference between investors' purchase price and the alleged "true value" of the stock. *Id*. at ¶552. Since such calculation of damages is based on the theory that the SPAC overpaid for the target, the *Romeo Power* court held that Section 14(a) claims seeking such damages were derivative even after Delaware courts had already held that state law claims seeking redemption-impairment damages were direct, *compare* 2022 WL 1806303, at *5, *with In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 805 (Del. Ch. 2022), and even though plaintiffs in *Romeo Power* alleged, like Plaintiff here, that investors would have redeemed but for the alleged Section 14(a) violations. *In re Romeo Power Sec. Inc. Sec. Litig.*, C.A. No. 1:21-cv-03362-LGS, (S.D.N.Y.), ECF No. 82 at ¶¶191-93.

Plaintiff otherwise attempts to distinguish *Romeo Power* (in a short footnote) only with the conclusory claim that the *Romeo Power* plaintiffs' overarching theory which commanded derivative treatment (i.e., that "the proxy statement overstated the value of Romeo") is "inapposite to Lead Plaintiff's claim here." Opp. 68, n.245.[2] But Plaintiff's footnote trails off before ever explaining *why* such a theory is inapposite. In fact, that theory is the same as Plaintiff's, and the Opposition confirms it. Plaintiff's claim—that Hyzon's stock dropped when the supposed truth emerged that Hyzon was not as valuable as represented—is a textbook overpayment claim. DCRB Br. 11. Just as here, *Romeo Power* concluded that allegations that a proxy overstated the SPAC target's "committed contract revenue and supply chain" presented a derivative overpayment claim.

---

[2] The *Mehedi* case relied on by Plaintiff also does not help him. Opp. 68 & n.245 (citing *Mehedi v. View, Inc.*, 2023 WL 3592098, at *15 (N.D. Cal. May 22, 2023)). In *Mehedi*, the defendants abandoned their derivative arguments on reply and, in any event, the court dismissed the Section 14(a) claims asserted there. *Mehedi*, 2023 WL 3592098, at *15-16.

*Romeo Power*, 2022 WL 1806303, at \*1-2, \*5.  The Court should follow *Romeo Power* and dismiss the Section 14(a) claim for threshold failure to plead demand futility.

> **B.   Plaintiff did not plead the requisite level of culpability and cannot convert his Section 14(a) claim into a strict liability claim.**

> > **1.   *Plaintiff alleges fraud without satisfying Rule 9(b).***

In the face of the TAC's pervasive allegations against the DCRB Defendants sounding in fraud, the Opposition contends that its boilerplate disclaimers and minimal structural separation of the Section 10(b) and Section 14(a) allegations excuse compliance with the exacting standards of Rule 9(b).  But Plaintiff's cases are inapposite because they did not involve allegations sounding in fraud.  In *Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*, the Southern District held that Rule 9(b) did not apply because the allegations of fraud and negligence were so separate that the defendants at issue were "not implicated by any fraud claims."  268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017).  Indeed, that complaint did "not reveal ***any*** allegations that could lead to an inference that the [Section 11 and 14(a)] defendants were complicit in the fraud alleged against the 10(b) defendants."  *Id.* (emphasis added).  Similarly, in *In re Refco, Inc. Sec. Litig.*, the plaintiff "carefully structured [the complaint] so as to draw a clear distinction between negligence and fraud claims," with the "[negligent-misstatement] defendants' intent … couched in the language of negligence."  503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007).  In both cases, "the salutary purposes underlying … Rule 9" did not apply because there were no "claims that sound[ing] in fraud, by their nature, [could] harm a defendant's reputation and … be used as strike suits."  *comScore*, 268 F. Supp. 3d at 558.

Here, by contrast, the Opposition fully embraces the TAC's pervasive allegations sounding in fraud, claiming that "***Defendants had powerful motives to commit fraud. For the DCRB Defendants***, the unique financial structure of DCRB's SPAC structure created a perverse incentive

for the SPAC officers to enter into a losing deal for investors."  Opp. 49 (emphasis added); *see also* TAC ¶¶5, 87-88, 108, 124, 481-82, 486-87, 489.  The issue is not, as Plaintiff puts it, that his allegations under Section 10(b) and Section 14(a) are based "on certain common documents" (Opp. 64), but rather that he imputes a universal bad motive, regardless of legal theory, by flatly alleging that the DCRB Defendants had incentive to engage in fraudulent conduct, thereby triggering Rule 9(b).  *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004).

The Opposition's insistence that a Section 14(a) claim sounding in negligence can avoid triggering Rule 9(b) is beside the point.  Opp. 64.  Plaintiff chose to accuse the DCRB Defendants of fraud, and thus must satisfy the heightened pleading requirements of fraud-based claims.  *See In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F. Supp. 3d 199, 225-26 (E.D.N.Y. 2022); *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *9 (S.D.N.Y. Sept. 27, 2021). The Opposition tellingly fails to address the cases cited in the DCRB Defendants' Opening Brief explaining this point.  *See* DCRB Br. 13-16 (citing *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (dismissing Section 11 negligence claim because it "sound[ed] in fraud" but "failed to plead a strong inference of scienter"); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 239-40 (S.D.N.Y. 2009) ("As … Plaintiffs' Section 14(a) claims are based in fraud, Plaintiffs must … [but] fail to meet that standard" because they did not allege with "specificity the[] [defendants'] knowledge of the allegedly fraudulent [conduct].")).[3]

Pleading fraud with particularity is required because "[a]llowing [P]laintiff[] to allege fraud over [five]-hundred paragraphs and then withdraw those claims for [ten] paragraphs in order to state a Section [14] claim eviscerates Rule 9(b)'s mandate to safeguard a defendant's reputation

---

[3] Indeed, Plaintiff flagrantly misquotes Rule 9(b)'s last element, which is an "expla[nation of] why the statements were ***fraudulent***," not allegations of a plaintiff's belief as to why certain statements were false.  *Stevelman v. Alias Res., Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (emphasis added).

from improvident charges of wrongdoing." *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006) (dismissing Section 11 strict liability claim sounding in fraud for failure to plead scienter) (citation omitted).  The TAC makes no particularized allegations of scienter as to the DCRB Defendants (and in fact affirmatively, albeit only in a conclusory way, disclaimed such an attempt).  *See* TAC ¶543; DCRB Br. 14-16.  Indeed, the TAC merely alleges the most basic facts about the DCRB Defendants' involvement, and nothing suggesting they received information contradicting their statements.  Moreover, courts consistently reject attempts like Plaintiff's to impute bad motive based on the receipt of shares.  DCRB Br. 14-16.  The Opposition never refutes these points.

### 2.     *Plaintiff did not and cannot point to any negligent act.*

Even if its conclusory disclaimers of fraud were effective, the TAC still falls short of pleading negligence.  As explained in the DCRB Defendants' Opening Brief, the Court should apply the PSLRA's heightened pleading requirements to claims of negligence and require that Plaintiff plead a strong inference of negligence that is "cogent and at least as compelling as any opposing inference."  DCRB Br. 16; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  The Opposition contends the PSLRA's heightened requirements are inapplicable to claims of negligence and that the DCRB Defendants rely on "outlier decisions."  Opp. 63.  But the Eighth Circuit (in addition to the district court cases cited by the DCRB Defendants) has applied the PSLRA's heightened requirements to Section 14(a) claims sounding in negligence, and Plaintiff only cites a few district court cases which suggest the opposite result (one of which was merely in dicta).  *Compare Little Gem Life Sciences, LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 917 (8th Cir. 2008), *with* Opp. 63; DCRB Br. 16.  The Opposition offers no response to the DCRB Defendants' argument that applying the heightened requirements to negligence claims is most consistent with the PSLRA's purpose of subjecting securities law cases to more exacting standards

at the pleading stage.  DCRB Br. 16; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 80-81 (2006).  Instead, Plaintiff attacks a straw-man by claiming that "scienter is not an element of Section 14(a)" while ignoring that the PSLRA imposes heightened requirements for any "required mental state," not just for scienter.  Opp. 63; 15 U.S.C. § 78u-4(b)(2).

Regardless of the applicability of the PSLRA, Plaintiff's claims fail.  Plaintiff acknowledges that he must at least plead "that a defendant 'knew or in the exercise of due diligence should have known that the Proxy … contained false or misleading statements or omissions,'" Opp. 65, and then avers that he met this standard because: (1) the DCRB Defendants "put their reputation in issue" in allowing the Proxy to be distributed, *id.*; (2) the DCRB Defendants' were "involve[d] in the merger process," *id.* at 65-66; and (3) the "Defendants allowed soliciting materials to issue … [with] false and misleading claims," *id.* at 66.  But none of those assertions are based on any factual allegations showing that the DCRB Defendants "in the exercise of due diligence should have known" of the alleged falsehoods in the Proxy.  Instead, Plaintiff summarily concludes that, because of the alleged existence of false and misleading statements in the Proxy, the DCRB Defendants must have "negligently failed to monitor" the Proxy's preparation.  *Id.* at 67.  Such a theory impermissibly collapses the separate elements of falsity and negligence.[4]

Negligence cannot be pleaded merely by alleging a defendant's involvement in some conduct that caused harm; the complaint must contain facts showing that certain conduct was unreasonable.  *Krieger v. Atheros Commc'ns, Inc.*, 2012 WL 1933559, at *8 (N.D. Cal. May 29, 2012) ("Plaintiff has not adequately pled that any specific Defendant breached any duty, a

---

[4] Plaintiff cited caselaw concerning statement attribution—i.e., holding that a statement can be attributed to an individual who puts her reputation at issue in support of such statement. Opp. 67. Those cases do not address the pertinent issue of what facts a claimant must allege to state that an individual negligently issued a proxy.

necessary element of a negligence claim."); *Paskowitz v. Pac. Cap. Bancorp*, 2009 WL 4911850, at \*6 (C.D. Cal. Nov. 6, 2009) ("Plaintiff still fails to allege that these studies were commonly known by Defendants and negligently omitted at the time the proxy statement was distributed."). In the Section 14(a) context, this means pleading an actual defect in the process leading up to the issuance of the proxy.  *Karp v. First Conn. Bancorp, Inc.*, 535 F. Supp. 3d 458, 484 (D. Md. 2021) (granting judgment in defendants' favor on Section 14(a) claim for failure to show process defect).

Here, far from alleging some deficiency in the DCRB Defendants' due diligence, Plaintiff concedes that extensive diligence was performed and does not allege that diligence was defective in any way.  Opp. 5, 8, 43 (citing TAC ¶¶104, 152, 315).  Instead, to support its sweeping charge that all Defendants engaged in a "brazen fraud," the Opposition focuses primarily on *post-Merger* events that cannot be imputed to *pre-Merger* negligence, spending nearly 10 pages of background on Hyzon's supposed "fraud-induced death spiral" post-Merger and leading its falsity arguments by focusing on Hyzon's relationship with HongYun.  Opp. 1, 9-18, 22-26.  But there is no dispute that Hyzon's deal with HongYun occurred after the Merger closed (and long after DCRB's diligence) and that issues related to revenue recognition and the special committee investigation occurred even later.  *See id.* at 10, 11-17.  Finally, while the Opposition relies heavily on the *Malork* decision and the SEC's allegations, it never wrestles with the fact that there was no mental state requirement in *Malork*, DCRB Br. 3, or that the SEC complaint says nothing about the DCRB Defendants or their mental state at all and, if anything, speaks volumes by not naming the DCRB Defendants despite the availability of negligence-based enforcement theories.  Plaintiff thus cannot cure the TAC's deficiencies as to the DCRB Defendants by relying on post-Merger events, *Malork*,

or the SEC's allegations, none of which raise an inference of negligence even under the most Plaintiff-friendly standard.[5]

### C. The claim against WRG should be dismissed.

The Opposition appears to concede that Plaintiff cannot sustain a primary Section 14(a) claim against WRG, the special purpose entity created to house Anderson's DCRB founder shares, given that WRG was not a Section 14(a) solicitor. *See* DCRB Br. 17-18. Instead, the Opposition only contends that WRG has control liability under Section 20(a). Opp. 68-69. But pleading a Section 20(a) claim requires allegations as to how a defendant "exercised *actual* control over the matters at issue," and the TAC alleges nothing about WRG's actions and, indeed, almost nothing about WRG whatsoever. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 669 (S.D.N.Y. 2017); DCRB Br. 17. At most, the Opposition points to *Malork,* where (after a "close call") the court found it adequately alleged that WRG may have been a member of a control group. Opp. 69-70. But that does not help Plaintiff because merely alleging that a defendant is a control person is insufficient to plead a Section 20(a) claim. *Banco Bradesco*, 277 F. Supp. 3d at 669.

### III. THE OPPOSITION CONFIRMS PLAINTIFF'S FAILURE TO PLEAD A SECTION 10(B) CLAIM AGAINST HASKOPOULOS OR TICHIO

While the Section 10(b) claims should be dismissed as to all Defendants for the reasons set forth in the Hyzon Defendants' Opening and Reply Briefs, the Opposition offers no cogent

---

[5] Plaintiff's Section 14(a) claim also fails to allege an actionable misstatement among the subset of statements attributed to the DCRB Defendants. Plaintiff divides his disclosure challenges into four broad categories, two of which (statements regarding (1) HongYun and (2) revenue recognition) do not implicate the DCRB Defendants because they arose post-closing. Opp. 22. And Plaintiff cannot make out falsity with respect to the three discrete sub-topics on which he seeks to sustain a Section 14(a)—statements regarding projected gross margins, Hiringa, and Hyzon's sales pipeline. DCRB Br. 18-21; Hyzon Br. 19-34; Hyzon Reply Br. 4-13. Given space constraints and to avoid burdening the Court with duplicative arguments, the DCRB Defendants incorporate the Hyzon Defendants' arguments by reference rather than repeat them here.

response to the DCRB Defendants' argument that the TAC fails to attribute a single actionable statement to Haskopoulos, and fails to allege that Haskopoulos or Tichio acted with scienter.

*Haskopoulos*:  Tellingly, in the 70 pages of the Opposition Brief, Plaintiff: (1) does not attribute any statement to Haskopoulos; and (2) attempts to plead his ***intent to defraud*** merely based on allegations that he indirectly held an ownership interest in DCRB as officer/director of Riverstone, (Opp. 4, 49 n.154), was part of DCRB's "management team," (*id.* at 8), and was "substantially involved in conducting … extensive due diligence," (*id.* at 43).   Plaintiff's arguments make clear that his Section 10(b) claim must be dismissed because: (1) the allegations "do not suffice to support that [Haskopoulos] was the 'maker' of [any] statement." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 204-05 (S.D.N.Y. 2022); *Tobia v. United Grp. of Cos.*, 2016 WL 5417824, at \*11 (N.D.N.Y. Sept. 22, 2016) ("[E]ach party is liable only for their own misstatements…."); (2) merely having some role in "the creation of [an allegedly] false statement that is then disseminated … is not sufficient to create scheme liability," *Turquoise*, 625 F. Supp. 3d at 248; and (3) scienter must be pleaded "for each defendant [as] guilt by association is impermissible."  *Greco v. Qudian Inc.*, 2022 WL 4226022, at \*25 (S.D.N.Y. Sept. 13, 2022) (citation omitted).

*Tichio*:  The allegations as to Tichio fare no better.  While Plaintiff does attribute a few specific statements to Tichio, Plaintiff can only suggest they were made with intent to defraud because Tichio (1) made the statements (Opp. 40); (2) indirectly had an ownership interest in DCRB (*id.* at 4, 49 n.154); (3) was DCRB's director and part of its "management team" (*id.* at 5 n.7, 8); and (4) participated in the "extensive due diligence" (*id.* at 43).  As with Haskopoulos, such allegations of mere involvement and the receipt of founder shares are insufficient to plead scienter.  DCRB Br. 15-16; *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at \*26 (S.D.N.Y. Apr.

2, 2020) (explaining allegations regarding "Founder's Grants" were "the type of 'corporate profit' motive possessed by most corporate directors and officers").

Moreover, Plaintiff does not (and cannot) dispute that Tichio's statements were opinions (Opp. 37), and instead argues that Defendants "waived" such arguments by failing to properly address them, (*id.* at 37 & n.110).  In so arguing, however, Plaintiff cites only the Hyzon Defendants' Brief, and ignores the thorough arguments raised by the DCRB Defendants' Brief (at 23), which explained that Plaintiff cannot meet the high bar necessary to plead falsity with respect to Tichio's statements given the lack of allegations suggesting that Tichio "did not hold the belief[s] [he] professed," or that any "supporting fact[s] [he] supplied were untrue." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).

## IV.    CONCLUSION

For the foregoing reasons, and for the reasons stated in their Opening Brief and the Hyzon Defendants' briefing, the DCRB Defendants respectfully request that the Court grant their motion to dismiss and dismiss Plaintiff's claims against them with prejudice.

Dated: November 22, 2023

Respectfully Submitted,

VINSON & ELKINS LLP

By: */s/ Michael C. Holmes*
Michael C. Holmes

Michael C. Holmes (*pro hac vice*)
Jeffrey Crough (*pro hac vice*)
Eugene Temchenko (*pro hac vice*)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: +1.214.220.7700

Marisa Antonelli
1114 Avenue of the Americas
New York, New York 10036-7708
Telephone: +1.212.237.0000

*Counsel for Peter Haskopoulos, Robert Tichio, Jennifer Aaker, Jane Kearns, Pierre Lapeyre, David Leuschen, Jim McDermott, Jeffrey Tepper, Michael Warren, Riverstone Investment Group LLC, Decarbonization Plus Acquisition Sponsor, LLC, and WRG DCRB Investors, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey Crough, hereby certify that a copy of this the DCRB Defendants' Reply Brief in Support of their Motion to Dismiss the Third Amended and Consolidated Complaint was filed on November 22, 2023 with the Clerk of the District Court using its CM/ECF system, which will send copies to all counsel who have appeared in this action and registered with such system.

By: */s/ Jeffrey Crough*
Jeffrey Crough