**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                    :

IN RE HYZON MOTORS INC.         :     Case No. 6:21-cv-06612-CJS-MWP
SECURITIES LITIGATION         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**HYZON DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT**

Laura Kabler Oswell (*pro hac vice*)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California  94301
Tel.:    (650) 461-5600
Fax:     (650) 461-5700
oswelll@sullcrom.com

Jacob M. Croke
Christopher A. Graham (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel.:    (212) 558-4000
Fax:     (212) 558-3588
crokej@sullcrom.com
grahamch@sullcrom.com

*Counsel for Defendants Hyzon Motors Inc.,
Erik Anderson, Craig Knight, Mark Gordon,
and George Gu*

November 22, 2023

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT............................................................................................................................2

I.     PLAINTIFF CANNOT ESTABLISH STANDING TO PURSUE SECTION
       10(B) CLAIMS ABOUT LEGACY HYZON, A PRIVATE COMPANY .........................2

II.    PLAINTIFF DOES NOT ALLEGE ANY ACTIONABLE MISSTATEMENTS.............4

       A.     Plaintiff Still Fails to Plead Falsity as to Any of the Four Categories of
              Alleged Misstatements....................................................................................4

              1.     Plaintiff's Conclusory Allegations Regarding HongYun Do Not
                     Demonstrate That Defendants' Statements Were False or
                     Misleading........................................................................................5

              2.     Plaintiff Fails to Plead That Defendants' Statements Regarding
                     Hiringa Were False or Misleading......................................................6

              3.     Plaintiff Fails to Plead Specific Facts Indicating That Defendants'
                     Representations About Binding Orders and Hyzon's Sales Pipeline
                     Were False or Misleading..................................................................8

              4.     Plaintiff Fails to Adequately Plead That Hyzon's Later Financial
                     Statements Support His Allegations of Fraud......................................9

       B.     Plaintiff's Opposition Confirms That Many Alleged Misstatements Are
              Legally Inactionable.....................................................................................10

              1.     Forward-Looking Statements Are Protected by the PSLRA Safe
                     Harbor ............................................................................................10

              2.     Puffery and Opinion Statements Are Not Actionable.............................12

III.   PLAINTIFF FAILS TO PLEAD SPECIFIC FACTS THAT SUPPORT A
       STRONG INFERENCE OF SCIENTER .....................................................................14

       A.     Plaintiff Does Not Meet His Burden to Plead Conscious Misbehavior or
              Recklessness ................................................................................................14

              1.     The Special Committee Report and Accounting Restatements Do
                     Not Support a Strong Inference of Scienter.......................................14

              2.     Plaintiff Fails To Plead That Defendants Knowingly or Recklessly
                     Misrepresented Hyzon's Business Relationships ...................................16

3. Plaintiff Fails to Provide Any Indication That Defendants Knowingly or Recklessly Portrayed Hiringa as an End-User of Vehicles......................................................................................................17

4. Plaintiff Does Not Plead Specific Facts That Defendants Believed or Recklessly Disregarded That HongYun Was a "Sham" Company ...............................................................................................18

5. Management Changes Do Not Support an Inference of Scienter .............19

6. The Government Investigations Do Not Support an Inference of Scienter ...............................................................................................20

B. Plaintiff Has Not Met His Burden of Pleading a Cognizable Motive....................21

IV. PLAINTIFF CANNOT ESTABLISH LOSS CAUSATION ...........................................21

V. PLAINTIFF'S ADDITIONAL CLAIMS FAIL .............................................................22

A. Plaintiff Fails to Plead a "Scheme Liability" Claim ...............................................22

B. Plaintiff Fails to Plead a Section 14(a) Claim.........................................................24

C. Plaintiff Fails to Plead a Section 20(a) Claim.........................................................25

VI. THE TAC SHOULD BE DISMISSED WITH PREJUDICE............................................25

**TABLE OF AUTHORITIES**

*Page(s)*

CASES

*Alpha Cap. Anstalt* v. *Schwell Wimpfheimer & Assocs. LLP*,
  2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018) ..........................................................................23

*In re Arcimoto Inc. Sec. Litig.*,
  2022 WL 16851834 (E.D.N.Y. 2022)......................................................................................21

*In re Astra Space, Inc. Sec. Litig.*,
  2023 WL 4983156 (N.D. Cal. Aug. 2, 2023) ..........................................................................10

*Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010)......................................................................................24

*In re Bausch & Lomb, Inc. Sec. Litig.*,
  2003 WL 23101782 (W.D.N.Y. Mar. 28, 2003).......................................................................7

*In re Bausch & Lomb, Inc. Sec. Litig.*,
  592 F. Supp. 2d 323 (W.D.N.Y. 2008).....................................................................................15

*Bd. of Trustees of City of Ft. Lauderdale Gen. Emps.' Ret. Sys.*
    v. *Mechel OAO*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011).......................................................................................16

*Born* v. *Quad/Graphics, Inc.*,
  521 F. Supp. 3d 469 (S.D.N.Y. 2021)........................................................................................5

*Cap. Growth Funds SICAV* v. *Peloton Interactive, Inc.*,
  2023 WL 2711342 (S.D.N.Y. Mar. 30, 2023) .........................................................................11

*In re CarLotz, Inc. Sec. Litig.*,
  2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ...................................................................2, 3, 4

*CFTC* v. *McDonnell*,
  332 F. Supp. 3d 641 (E.D.N.Y. 2018) ......................................................................................13

*Chevron Corp.* v. *Donziger*,
  325 F. Supp. 3d 371 (S.D.N.Y. 2018).......................................................................................23

*City of Brockton Ret. Sys.* v. *Avon Prod., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)..........................................................................14

*Clark* v. *Kitt*,
  2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014)...........................................................................25

*In re Danimer Sci., Inc. Sec. Litig.*,
2023 WL 6385642 (E.D.N.Y. Sept. 30, 2023) ...............................................................11, 12

*De Vito* v. *Liquid Holdings Grp., Inc.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018)..................................................................................23

*Dempsey* v. *Vieau*,
2016 WL 3351081 (S.D.N.Y. June 15, 2016) ...........................................................................10

*In re DNTW Chartered Accts. Sec. Litig.*,
172 F. Supp. 3d 675 (S.D.N.Y. 2016).................................................................................17, 20

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022).......................................................................................23

*ECA Loc. 134 IBEW* v. *JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)........................................................................................................21

*Ferreira* v. *Funko Inc.*,
2021 WL 880400 (C.D. Cal. Feb. 25, 2021)................................................................................8

*In re Fluor Intercontinental, Inc.*,
803 F. App'x 697 (4th Cir. 2020) ...............................................................................................15

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)........................................................................................24

*In re Gen. Elec. Sec. Litig.*,
2020 WL 2306434 (S.D.N.Y. May 7, 2020) ..............................................................................18

*Gillis* v. *QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016).........................................................................................19

*Glaser* v. *The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011).........................................................................................17

*Glazer Cap. Mgmt., L.P.* v. *Magistri*,
549 F.3d 736 (9th Cir. 2008) ......................................................................................................16

*Gray* v. *Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020).........................................................................................14

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022)...........................................................................15

*Hamilton Exhibition, LLC* v. *Imagine Exhibitions, Inc.*,
2019 WL 2590639 (S.D.N.Y. June 11, 2019) ...........................................................................13

*Harris* v. *AmTrust Fin. Servs., Inc.*,
   135 F. Supp. 3d 155 (S.D.N.Y. 2015).................................................................................22

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
   2019 WL 13164436 (D.N.J. Sept. 30, 2019) .....................................................................20

*In re IMAX Sec. Litig.*,
   587 F. Supp. 2d 471 (S.D.N.Y. 2008)................................................................................19

*In re IPO Sec. Litig.*,
   399 F. Supp. 2d 298 (S.D.N.Y. 2005)................................................................................22

*John Wiley & Sons, Inc*. v. *DRK Photo*,
   998 F. Supp. 2d 262 (S.D.N.Y. 2014)................................................................................15

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005)................................................................................25

*Kipling* v. *Flex Ltd.*,
   2020 WL 2793463 (N.D. Cal. May 29, 2020) ...................................................................12

*Lehmann* v. *Ohr Pharm., Inc.*,
   830 F. App'x 349 (2d Cir. 2020) .......................................................................................21

*Lorenzo* v. *SEC*,
   139 S. Ct. 1094 (2019)........................................................................................................23

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)....................................................................................7

*McIntosh* v. *Katapult Holdings, Inc.*,
   2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023)................................................................11, 24

*Menaldi* v. *Och-Ziff Cap. Mgmt. Grp. LLC*,
   277 F. Supp. 3d 500 (S.D.N.Y. 2017)................................................................................10

*Menora Mivtachim Ins. Ltd.* v. *Frutarom Indus. Ltd.*,
   54 F.4th 82 (2d Cir. 2022) ........................................................................................1, 2, 3, 4

*In re Meta Materials Inc. Sec. Litig.*,
   2023 WL 6385563 (E.D.N.Y. Sept. 29, 2023) .....................................................................7

*In re Nokia Corp. Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006)................................................................................25

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund* v. *Nortel Networks Corp.*,
   369 F.3d 27 (2d Cir. 2004)....................................................................................................3

*Robeco Cap. Growth Funds SICAV* v. *Peloton Interactive, Inc.*,
2023 WL 2711342 (S.D.N.Y. Mar. 30, 2023) ......................................................................11

*Porwal* v. *Ballard Power Sys., Inc.*,
2019 WL 1510707 (S.D.N.Y. Mar. 21, 2019) ......................................................................13

*In re PXRE Grp., Ltd. Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009)..................................................................................14

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ............................................................................................12

*In re Sanofi Sec. Litig.*,
155 F. Supp. 3d 386 (S.D.N.Y. 2016)............................................................................14, 15

*Schiro* v. *Cemex, S.A.B. de C.V.*,
396 F. Supp. 3d 283 (S.D.N.Y. 2019)..................................................................................19

*SEC* v. *Hurgin*,
484 F. Supp. 3d 98 (S.D.N.Y. 2020)....................................................................................24

*SEC* v. *Morgan*,
2019 WL 2385395 (W.D.N.Y. June 5, 2019).......................................................................23

*SEC* v. *Rio Tinto plc*,
41 F.4th 47 (2d Cir. 2022) ..................................................................................................23

*Silverman* v. *3D Total Sols., Inc.*,
2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ......................................................................25

*Sjunde AP-Fonden* v. *Gen. Elec. Co.*,
2021 WL 311003 (S.D.N.Y. Jan. 29, 2021) .........................................................................25

*Sjunde AP-Fonden* v. *Goldman Sachs Grp., Inc.*,
545 F. Supp. 3d 120 (S.D.N.Y. 2021)..................................................................................22

*Skiadas* v. *Acer Therapeutics Inc.*,
2020 WL 3268495 (S.D.N.Y. June 16, 2020) ......................................................................21

*Slayton* v. *Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010)............................................................................................9, 11

*In re Stone & Webster, Inc., Sec. Litig.*,
253 F. Supp. 2d 102 (D. Mass. 2003) ..................................................................................13

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)..................................................................................22

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
   531 F.3d 190 (2d Cir. 2008)..................................................................................17

*Telefonaktiebolaget LM Ericsson Sec. Litig.*,
   2023 WL 3628244 (E.D.N.Y. May 24, 2023) ..........................................................9

*Tongue* v. *Sanofi*,
   816 F.3d 199 (2d Cir. 2016)..................................................................................13

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022)................................................................4, 23

*Weston* v. *DocuSign, Inc.*,
   2023 WL 3000583 (N.D. Cal. Apr. 18, 2023) ........................................................12

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003)....................................................................18

*In re XL Fleet Corp. Sec. Litig.*,
   2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)...........................................................17

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 1382217 (N.D. Cal. Mar. 25, 2015).........................................................12

## STATUTES AND REGULATIONS

Private Securities Litigation Reform Act of 1995 (PSLRA),
   15 U.S.C. §§ 78u-4 and 78u-5 ........................................................................ *passim*

Securities Exchange Act of 1934, Sections 10(b), 14(a), and 20(a),
   15 U.S.C. §§ 78j(b), 78n(a), and 78t(a) ........................................................... *passim*

17 C.F.R. § 240.10b-5...........................................................................................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ........................................................................................1, 24

17A C.J.S. Contracts § 467 (2023) ...........................................................................8

## PRELIMINARY STATEMENT

Plaintiff's claims were fundamentally flawed from the original complaint because they were based on suppositions of short sellers whose entire business relies on driving down the stock price of companies like Hyzon. Rather than address this foundational weakness, Plaintiff has filed three additional complaints—and betraying the weakness of his Opposition seeks leave to file a fifth—none of which come close to the standards of Rule 9(b) and the PSLRA. Indeed, intervening events including a Special Committee investigation and an SEC settlement have confirmed that Plaintiff cannot meet these stringent standards. The Opposition fails to address the fundamental flaws in the TAC and makes clear that the TAC should be dismissed with prejudice.[1]

*First*, there is no basis to depart from the Second Circuit's bright-line rule of standing, which requires a plaintiff to "have bought or sold the security about which a misstatement was made." *Menora Mivtachim Ins. Ltd.* v. *Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022). Plaintiff's proposal that the Court create a SPAC-specific exception based on the purported closeness of the SPAC to its target was already rejected by the Second Circuit in *Frutarom*. *Id.*

*Second*, like the TAC, the Opposition takes a kitchen-sink approach to attempt to substantiate Plaintiff's falsity allegations, leaning heavily on speculation and conclusory assertions—all of which are patently insufficient to plead a claim under the strict pleading standards of the PSLRA. With respect to each of the four categories of alleged misstatements, Plaintiff fails to plead plausible facts that support his theories of wrongdoing or connect them to Defendants' actual statements. Plaintiff cannot meet his pleading burden in this manner.

*Third*, that after an extensive investigation the SEC does not even purport to allege

---

[1] Capitalized terms have the meaning assigned in the Hyzon Defendants' Memorandum of Law in Support of Their Motion to Dismiss. (ECF No. 93 (the "Motion").) References to "Ex." are to the exhibits to the September 13, 2023 and November 22, 2023 Declarations of Laura Kabler Oswell.

scienter with respect to Plaintiff's core allegations indicates that the TAC's flaws go beyond sloppy pleading, and that Plaintiff's allegations are and will continue to be insufficient.  Plaintiff distorts the Special Committee findings and rehashes allegations of falsity, but fails to allege facts sufficient to show that any Defendant made an alleged misstatement knowingly or recklessly.  This is patently insufficient to plead the strong inference of scienter required by the PSLRA.

*Fourth*, Plaintiff continues to fail to link the alleged misstatements to a cognizable loss, in large part because most of the alleged "corrective disclosures" in the TAC related to information that was publicly available or that did not actually correct an alleged misstatement.

*Fifth*, Plaintiff's scheme liability claim is simply a reframing of his misstatement claims and does not include any inherently deceptive acts, which is insufficient under Second Circuit law.  Plaintiff's Section 14(a) and 20(a) claims are likewise derivative and fail.

Plaintiff has now had four chances to plead facts sufficient to state a claim, and cannot do so even after incorporating allegations in Hyzon's SEC settlement in his Opposition. He should not receive a fifth chance.  Plaintiff's claims should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF CANNOT ESTABLISH STANDING TO PURSUE SECTION 10(B) CLAIMS ABOUT LEGACY HYZON, A PRIVATE COMPANY.

Plaintiff attempts to escape the Second Circuit's standing rule, but fails.  That rule is straightforward: a plaintiff must "have bought or sold the security about which a misstatement was made in order to have standing to sue under Section 10(b)." *Frutarom*, 54 F.4th at 86.

Plaintiff asks this Court to create a new exception for SPACs—which Plaintiff refers to as "acquirer-issuers"—by finding that statements about a SPAC's target are statements about both the target and the acquiring SPAC. (Opp. 53-55.)  Plaintiff all but ignores—dedicating one sentence to—directly on-point authority rejecting this argument. (Mot. 19.)  In *In re CarLotz,*

*Inc. Sec. Litig.*, a SPAC, Acamar, acquired a privately held target, CarLotz.  2023 WL 2744064, at *1 (S.D.N.Y. Mar. 31, 2023).  *Carlotz* confirmed that "*Frutarom* foreclose[d] [SPAC investors'] challenge to any statements made by Pre-Merger CarLotz about Pre-Merger CarLotz."  *Id.* at *4.[2]

*CarLotz* correctly applied *Frutarom*, which expressly rejects the argument that an acquirer and target should be treated as one entity for standing purposes.  In *Ontario Public Service Employees Union Pension Trust Fund* v. *Nortel Networks Corp.*, the Second Circuit held that "[s]tockholders do not have standing . . . when the company whose stock they purchased is negatively impacted by the material misstatement of another company."  369 F.3d 27, 34 (2d Cir. 2004).  While *Nortel* questioned whether the close relationship between acquirer and target might result in a different outcome, *Frutarom* "answer[ed] that question" in the negative by holding that "standing does not depend on the significance or directness of the relationship between two companies."  54 F.4th at 88.  Accordingly, "purchasers of a security of an acquiring company do not have standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger."  *Id.*[3]  *Frutarom* also rejected Plaintiff's

---

[2]      Plaintiff claims that in *CarLotz*, "plaintiffs conceded that all of the challenged pre-merger statements were made by pre-merger CarLotz."  (Opp. 56.)  But Plaintiff misconstrues *CarLotz*, which stated that "[a]ll of the challenged pre-merger statements . . . were made by Pre-Merger CarLotz *about* itself, not [*about*] Acamar."  *CarLotz*, 2023 WL 2744064, at *4 (emphasis added).  The crux of the court's finding was that the alleged misstatements were "about" Pre-Merger CarLotz.  *Id.*  As here, the alleged misstatements were filed by the SPAC with the SEC, Reply Mem. at 3-4, *In re CarLotz, Inc. Sec. Litig.*, No. 1:21-cv-05906, ECF No. 74 (S.D.N.Y. Oct. 20, 2022), which did not alter the conclusion that the SPAC shareholders lacked standing.

[3]      Plaintiff notes that *Frutarom* was amended.  (Opp. 53 n.169.)  The original holding applied to "a security of the issuer about which a misstatement was made."  (Ex. 42 at 8.)  Professors subsequently expressed concern that the (i) "of the issuer" and (ii) "about" limitations would preclude Section 10(b) claims by investors in options, SPACs, and other instruments.  (Ex. 43.)  In response, the Second Circuit removed the "of the issuer" requirement, *see Frutarom*, 54 F.4th at 86, which addressed the concern that "options and derivatives . . . are not securities issued by the issuer of the underlying stock" (Ex. 43 at 8).  However, the Second Circuit retained the "about" requirement, having "considered . . . and rejected" the professors' concerns regarding SPACs, *CarLotz*, 2023 WL 2744064, at *5 n.3; *see also* Ex. 43 at 9, contrary to Plaintiff's claim.

argument that statements "about" a target are also "about" the SPAC where the target's statements are incorporated into the SPAC's SEC filings (Opp. 55).   54 F.4th at 84 (statements were "incorporated into [SPAC's] Form S-4 Registration Statement").

*Frutarom*'s "formal and not functional inquiry" avoids an "endless case-by-case erosion" of the purchaser-seller rule in which "standing would be a shifting and highly fact-oriented inquiry . . . whether there [is] a sufficiently direct link between" two companies. *Id.* at 87 (quotation omitted).   Plaintiff's arguments boil down to the same policy concerns about the purchaser-seller rule that *Frutarom* addressed. *See id.* at 94 (Perez, J., concurring); *CarLotz*, 2023 WL 2744064, at \*5.   The Second Circuit has imposed a bright-line rule, and Plaintiff's attempt to carve out an exception is unavailing, as *CarLotz* confirms.[4]

## II.     PLAINTIFF DOES NOT ALLEGE ANY ACTIONABLE MISSTATEMENTS.

### A.     Plaintiff Still Fails to Plead Falsity as to Any of the Four Categories of Alleged Misstatements.

The Opposition fails entirely to explain how the allegations in the TAC satisfy the PSLRA.   Indeed—even with the benefit of the SEC's complaint—Plaintiff cannot explain, let alone with the detail that the PSLRA requires, what specific facts demonstrate that Hyzon's statements relating to (1) HongYun, (2) Hiringa, (3) Hyzon's customer relationships, or (4) the accounting restatements, were false or misleading when made.   Although Plaintiff has had over two years to formulate allegations sufficient to show that the statements parroted from short sellers are false, Plaintiff's theory has proven to be legally flawed and futile.   (Mot. 22-34.)

---

[4]      Plaintiff also attempts to carve out scheme liability from the standing requirement. (Opp. 54.)  But the standing requirement applies to Section 10(b), *Frutarom*, 54 F.4th at 86, and Plaintiff offers no basis to apply the requirement to SEC Rule 10b-5(b) but not to Rule 10b-5(a) and (c), all of which have been promulgated pursuant to Section 10(b). *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164 (S.D.N.Y. 2022), cited by Plaintiff, pre-dated *Frutarom* and does not address standing for scheme liability, and therefore is irrelevant.

### 1.    Plaintiff's Conclusory Allegations Regarding HongYun Do Not Demonstrate That Defendants' Statements Were False or Misleading.

Plaintiff offers a conclusory narrative that HongYun purportedly is a sham. (Opp. 23.)  But the Special Committee's independent consultant found that HongYun's trucks were delivered and operable, and issues were limited to revenue recognition timing.  (Mot. 27; Opp. 24.)  The SEC's complaint notably did not question HongYun's legitimacy as a customer.

Rather than address these obvious deficiencies, Plaintiff pivots, claiming that "Defendants in no way attempt to contest" other allegations relating to HongYun.  (Opp. 24.)  But, Hyzon did address these allegations: HongYun's ability to order the number of trucks projected (Mot. 27-28); its status as a special purpose entity (Mot. 10-11); operational experience (Mot. 33); and counterparty risk (Mot. 28).  Contrary to Plaintiff's claim that Hyzon "cherry-pick[ed]" from Plaintiff's "many alleged theories" (Opp. 24), Hyzon addresses the core of Plaintiff's allegations (Mot. 26-29).  Plaintiff offers no meaningful response, and certainly none that satisfies the PSLRA. (Mot. 23 n.8); *Born* v. *Quad/Graphics, Inc*., 521 F. Supp. 3d 469, 479-80 (S.D.N.Y. 2021).

Moreover, as Hyzon explained (Mot. 27-28), Plaintiff's allegation that Hyzon did not receive binding orders is implausible based on a photograph *in the TAC* of Hyzon deliveries to HongYun.  (TAC ¶ 187.)  Plaintiff now claims the press release was "fraudulently issued" because the pictured vehicles purportedly did not yet operate on hydrogen, which conflates the issue of HongYun's legitimacy with revenue timing.  Plaintiff alternatively refers to the lack of "further installment payments" (Opp. 25), but given "extended payment terms in [HongYun's] contract[]" and participation in "China's national [FCEV] pilot program" (TAC ¶¶ 372, 379), the more plausible inference is that payments have been delayed, not that HongYun is a "sham," and none of Plaintiff's myriad excuses make up for the fundamental inconsistency of the TAC's allegations.

Finally, Plaintiff claims that Hyzon's statements about HongYun orders also were

about revenue, such that Defendants purportedly were obligated to describe the potential impact of counterparty risk and share warrants on revenue. (Opp. 25-26.) But Plaintiff's claim is entirely unconnected to the allegations in the TAC, since the alleged misstatements at issue do not implicate projected revenue. (Statements 19A-20D, 21-22, 24A-24C.) Moreover, Plaintiff ignores that Hyzon disclosed the counterparty risks Plaintiff now claims are the basis for his claim. (Mot. 28.)[5]

### 2. Plaintiff Fails to Plead That Defendants' Statements Regarding Hiringa Were False or Misleading.

The Opposition abandons Plaintiff's allegations related to the planned delivery of up to 1,500 trucks by 2026 under a supply agreement with Hiringa (TAC ¶¶ 350, 353; Mot. 25-26), and instead focuses on certain ancillary statements related to a single 20 vehicle order (Opp. 26). Even the limited allegations relating to Hiringa that Plaintiff seeks to defend still fail.

In asserting that Defendants misleadingly portrayed Hiringa as a vehicle end-user, Plaintiff fails to address the multiple public statements that Hiringa would build a hydrogen fuel supply system for its vehicle "partners." (Mot. 7-8, 25-26.) For example, when describing the February 17, 2021 press release, Plaintiff fails to mention that Hyzon states that Hyzon and Hiringa looked forward to "roll[ing] out over 1,500 heavy FCEVs by 2026[,] *alongside our partners*." (*Id.* at 8.)[6] Plaintiff instead relies on certain slides in investor presentations, which Plaintiff claims misleadingly list Hiringa as a customer. (Opp. 27 (citing TAC ¶¶ 304, 321, 334).) However, those slides state that "[s]ome sales made to 3PL [third-party logistics] customers that are not the end-users depicted [or 'referenced'] here (as is typical for the industry)" (TAC ¶¶ 304, 321, 334),

---

[5]    Plaintiff also does not address the minimal value of the warrants, which had a GAAP valuation of $0.2 million, or attempt to justify Plaintiff's inflated valuation. (Mot. 29 n.12.)

[6]    Plaintiff takes issue with the legibility of customer logos disclosing Hiringa's end-user partners. (Opp. 27.) But even absent those customer logos, multiple other statements indicated that Hiringa was not the truck end-user. (Mot. 7-8; *see also infra* at 17 n.17.)

eliminating any potential for confusion. *In re Meta Materials Inc. Sec. Litig.*, 2023 WL 6385563, at \*13 (E.D.N.Y. Sept. 29, 2023) (slide potentially misleading in isolation was not actionable due to context of overall deck).[7]

Plaintiff also cannot identify any specific factual allegations demonstrating that Hyzon did not have a "binding order" with Hiringa for 20 trucks. (Mot. 26; Opp. 26-27.) Plaintiff asserts the 2021 delivery estimate included in a February 17, 2021 press release was inaccurate based on an updated early 2022 timeline referenced in the Blue Orca report issued seven months later. (Opp. 26 (citing TAC ¶¶ 166-67).) In addition to being protected by the PSLRA safe harbor, as described below, an updated timeline months after the allegedly false timeline is an insufficient basis on which to plead falsity. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("A statement believed to be true when made, but later shown to be false, is insufficient."), *aff'd*, 604 F. App'x 62 (2d Cir. 2015). Moreover, these assertions lack sufficient reliability or corroboration to be credited, as they are based on the Blue Orca's recounting of uncorroborated information from an anonymous "Hiringa executive." (Opp. 7, 51.)[8] Plaintiff's conclusory allegation falls short of pleading specific facts indicating that Hyzon's representation that it had a binding order with Hiringa for 20 trucks was false or misleading.[9] *In re Bausch & Lomb, Inc. Sec.*

---

[7] Plaintiff also refers to the Delaware Chancery Court's bench ruling in *Malork* (Opp. 26), but fails to acknowledge the plaintiff-friendly "reasonable conceivability" standard under which that ruling was made (Mot. 21 n.7).

[8] Plaintiff claims that "Hyzon's own disclosures corroborate the anonymous statements" of the Hiringa employee, including that Hiringa was a "channel partner" and would not take delivery of four validation trucks until early 2022. (Opp. 51.) But Hyzon had repeatedly described Hiringa as a channel partner (Mot. 7-8), and the March 17, 2021 preliminary proxy statement disclosed six months before the Blue Orca Report that shipment of the first four vehicles was expected in Q1 2022 (Ex. 11 at 127). An anonymous source's reliability is not corroborated based on information that is publicly available and widely disclosed.

[9] Plaintiff also claims that "the order had undisclosed preconditions." (Opp. 27.) But even if taken at face value, Plaintiff's allegations do not demonstrate that Hyzon did not have a binding order with Hiringa for 20 trucks. A binding order may still have preconditions, 17A C.J.S.

*Litig.*, 2003 WL 23101782, at *19 (W.D.N.Y. Mar. 28, 2003) (refusing to credit "characterization of" announcement that had "no factual basis").

> ### 3. Plaintiff Fails to Plead Specific Facts Indicating That Defendants' Representations About Binding Orders and Hyzon's Sales Pipeline Were False or Misleading.

Contrary to Plaintiff's assertion, Defendants did not represent that Hyzon's pipeline was entirely compromised of "100% certain or high probability pre-orders," rather than MOUs. (Mot. 23-24.) Plaintiff does not dispute the numerous instances in which Hyzon disclosed that its pipeline included MOUs. (*Id.*) Instead, Plaintiff refers to a single statement by DCRB's Chairman Robert Tichio during a fireside chat (Opp. 28), but the TAC does not even allege that statement was false (*see* TAC ¶ 282). In response to a question regarding "how do[] the contracts look" (Ex. 16 at 16), Tichio described Hyzon's separation of certain versus high probability orders (*id.*), and referred listeners to investor presentations (*id.* at 14) describing Hyzon's pipeline as "under contract or [MOU]" or "high probability" (TAC ¶¶ 297-98, 321). In context, there was nothing false or misleading about Tichio's statement. *Ferreira* v. *Funko Inc.*, 2021 WL 880400, at *23 (C.D. Cal. Feb. 25, 2021) (earnings call not misleading where it referred to separate disclosure).

Plaintiff continues to claim that Hyzon misleadingly omitted reference to orders in China in its February 9, 2021 presentation. (Opp. 29.) But Plaintiff fails to allege that Hyzon had received any orders from China at the time, and Hyzon did not announce its orders from HongYun and Jiushuang until September and December 2021. (TAC ¶¶ 153, 200.) That a majority of Hyzon's 2021 initially reported deliveries were ultimately to Chinese companies does not render Hyzon's earlier statements false or misleading when they were made. *Slayton* v. *Am. Express Co.*,

---

Contracts § 467 (2023) (condition precedent includes a condition "to an obligation to perform an existing agreement"), and indeed Hyzon repeatedly disclosed that its orders "include[d] terms permitting the counterparty to cancel or suspend some or all of their obligations." (Mot. 23, 28 (citing Ex. 17 at 6); Ex. 15A at 162.)

604 F.3d 758, 776 (2d Cir. 2010). Plaintiff points to no facts to substantiate its claim that statements regarding the global scope of Hyzon's business were misleading. (Mot. 24-25; *see also* Ex. 15A at 164-66 (describing Hyzon's global sales, manufacturing, and R&D presence).)

Finally, Plaintiff's attempt to construe DCRB's "projected gross margin" as representative of Hyzon's then-current margin is unavailing. As described in the Motion (at 25), Plaintiff ignores clear statements that the given margins were "financial projections" (Ex. 15A at 106), and that the "projections are not fact and should not be relied upon" (*id.* at 104)." Plaintiff goes through contortions to argue that the projections represent current margins, but particularly given that Hyzon had no revenue (*id.* at 63, 69, 70, 135, 137, F-49, F-61, F-62), no reasonable investor would interpret the margin figures in this manner. *Telefonaktiebolaget LM Ericsson Sec. Litig.*, 2023 WL 3628244, at *6 (E.D.N.Y. May 24, 2023) (emphasizing importance of context).

### 4.    Plaintiff Fails to Adequately Plead That Hyzon's Later Financial Statements Support His Allegations of Fraud.

Work to retrofit five vehicles in Europe does not render Hyzon's statement that its business plan "*focused primarily* on assembling and supplying" vehicles and that it "*focus[ed]* on . . . the North American, European, and Australasian regions" false or misleading. (Statements 23C-D, TAC ¶¶ 396-97; Opp. 31.) Plaintiff does not dispute that 94% of Hyzon's deliveries qualified as traditional "assemb[y] and supply[]," but myopically focuses on Q3 2021, when Hyzon's only recognized revenue came from Europe. (Opp. 31.) Given Hyzon's status as an early stage business, revenue is a poor proxy for its "focus[]," and Plaintiff's formulation would require revising Hyzon's business "focus[]" each quarter (*e.g.*, Europe in Q3, China in Q4). These statements are fully consistent with Hyzon's overall focus. (Mot. 29; Ex. 15A at 164-66.)

Regarding Knight and Gordon's SOX certifications, Plaintiff does not dispute that falsity depends on what the declarant knew at the time. (Mot. 30.) Plaintiff claims that the

certifications were false because Knight and Gordon knew "Hyzon had failed to implement effective internal controls." (Opp. 32.) But as Defendants explained (Mot. 30 n.13), Plaintiff ignores that the corresponding filings specifically disclosed that Hyzon "ha[d] identified a material weakness in [its] internal control over financial reporting" (Ex. 27 at 32, 46-47, 118-19; *see also* Ex. 23 at 37-39). SOX certifications "do not constitute a standalone basis for liability," *Menaldi* v. *Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500 (S.D.N.Y. 2017), and indeed the certification language identified by Plaintiff expressly incorporates "the financial statements, and other financial information included in this report." (Ex. 27 at 32; *id.* at Ex. 31.1 ¶ 3 & 31.2 ¶ 3.) Plaintiff fails to plead specific facts indicating that Hyzon's financial statements—in the context of the disclosed risks—did not "fairly present" Hyzon's financial condition.[10]

**B.    Plaintiff's Opposition Confirms That Many Alleged Misstatements Are Legally Inactionable.**

**1.    Forward-Looking Statements Are Protected by the PSLRA Safe Harbor.**

Plaintiff contends that the PSLRA's safe harbor provisions do not protect Defendants' statements about projected revenues and delivery targets (Opp. 33)—not so.

As an initial matter, Plaintiff claims that the PSLRA safe harbor is inapplicable "because the merger constituted an IPO." (Opp. 33 (citing 15 U.S.C. § 77z-2(b)(2)(D)).) Plaintiff conspicuously cannot cite a single supporting case. (*Id.*) "SPACs . . . bypass the traditional IPO process," *In re Astra Space, Inc. Sec. Litig.*, 2023 WL 4983156, at *1, 6 (N.D. Cal. Aug. 2, 2023),

---

[10]    Plaintiff's allegation that Knight and Gordon "let these oversight problems persist" and "lacked sufficient visibility" are classic "[m]ismanagement" allegations, which are "not actionable under the federal securities laws." *Dempsey* v. *Vieau*, 2016 WL 3351081, at *2 (S.D.N.Y. June 15, 2016). Plaintiff fails to plead any facts to support his remaining allegations that Knight or Gordon knew or disregarded that (i) HongYun's alleged "limited operating history," (ii) alleged oversight of Hyzon's China operations by Horizon, or (iii) "value-added-tax payments" (Opp. 32), did not "fairly present" Hyzon's financial condition.

as Plaintiff has acknowledged (TAC ¶ 87).  The PSLRA's safe harbor is routinely applied to SPAC mergers.  *E.g.*, *In re Danimer Sci., Inc. Sec. Litig.*, 2023 WL 6385642, at *7 (E.D.N.Y. Sept. 30, 2023); *McIntosh* v. *Katapult Holdings, Inc.*, 2023 WL 5049044, at *6-7 (S.D.N.Y. Aug. 8, 2023).[11]

Plaintiff also wrongly suggests that each prong of the safe harbor must be met. (Opp. 33.)  "Because the safe harbor is written in the disjunctive, a forward-looking statement is protected under the safe harbor if any of the [] prongs applies."  *Cap. Growth Funds SICAV* v. *Peloton Interactive, Inc.*, 2023 WL 2711342, at *12 (S.D.N.Y. Mar. 30, 2023) (quotation omitted). Statements 1C, 1E, 2A–C, 3G, 4E, 5E, 12G, 14, 15C, 16, 18B, and 26C–F are protected revenue and order projections because (1) "plaintiff fails to prove that [they] w[ere] made with actual knowledge that [they] w[ere] false or misleading," and (2) they were "identified and accompanied by meaningful cautionary language."  *Slayton*, 604 F.3d at 766.

With respect to *Slayton*'s first prong, Plaintiff argues that the PSLRA safe harbor does not apply because Defendants knew that undisclosed "facts about lost or non-existent customers" rendered Hyzon's projections false.  (Opp. 34.)  In support, Plaintiff reiterates his allegations regarding Hyzon's customer relationships and HongYun.  (*Id.*)  However, as discussed below (*infra* at 18-19), Plaintiff has not adequately alleged that any Defendant knew such statements were false or misleading, as is required.  *Slayton*, 604 F.3d at 766.  Similarly, Plaintiff has not pled facts supporting that any Defendant knew that, when certain deliveries shifted to China, the sales forecast would not be met and could not be filled from other sources.  (Opp. 34.)

With respect to *Slayton*'s second prong, Plaintiff makes the conclusory assertion that Defendants did not provide meaningful cautionary language.  (Opp. 34.)  Plaintiff provides no support for that statement, which is unsurprising, since the projections were accompanied by

---

[11]      Even absent the safe harbor, "bespeaks caution" would apply.  (Mot. 31 n.14.)

warnings regarding forward-looking statements of the same type that have repeatedly been found to confer safe harbor protection.  (Mot. 6-9; Ex. 3 at 2); *e.g.*, *In re Danimer Sci., Inc. Sec. Litig.*, 2023 WL 6385642, at *7 (E.D.N.Y. Sept. 30, 2023).  Plaintiff also claims that Defendants failed to accompany forward-looking statements with "disclosures of material risks" regarding Hyzon's current pipeline.  (Opp. 34-35.)  But omitting historical or current facts, even if misleading, is not a basis for removal of safe harbor protection for forward-looking statements.  *Kipling* v. *Flex Ltd.*, 2020 WL 2793463, at *12 (N.D. Cal. May 29, 2020).  In any event, Plaintiff has not adequately pled that Hyzon's disclosures regarding its pipeline were misleading.  (*Supra* at 8-9.)  In addition, even where forward-looking statements are accompanied by statements of present or historical fact (Opp. 33-34), "the forward-looking aspects c[an] be immunized from liability," as here.  *Weston* v. *DocuSign, Inc.*, 2023 WL 3000583, at *12 (N.D. Cal. Apr. 18, 2023).

### 2.    Puffery and Opinion Statements Are Not Actionable.

Committed Sales Pipeline.  Plaintiff does not contest that statements regarding Hyzon's "committed sales pipeline" ordinarily would qualify as puffery, but argues the statements here purportedly refer to other, more concrete statements about Hyzon's customer base.  (Opp. 36.) Plaintiff cites no authority for this "incorporation by reference" approach (*id.*), and offers no reason why reference to Hyzon's "committed sales pipeline" is different from non-specific references to "strong," "robust," and "very healthy" pipelines, which are inactionable as "business puffery," *In re Zynga Inc. Sec. Litig.*, 2015 WL 1382217, at *5 (N.D. Cal. Mar. 25, 2015).[12]

Geographic Focus.  Plaintiff claims that Hyzon concealed its order backlog with Chinese customers and misleadingly focused on North America, Europe, and Australia.  (Opp. 36;

---

[12]    *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), cited by Plaintiff, is not to the contrary.  That case concerned a series of terms that were not "subjective or emotive" but "provided a concrete description of the past and present state of the pipeline."  *Id.* at 1144.

TAC ¶¶ 285(i), 317.)  But in addition to Plaintiff's failure to plead that Hyzon was not in fact focused on these regions (*see supra* at 9), "focus" is "self directed corporate puffery . . . shield[ed] from liability." *In re Stone & Webster, Inc., Sec. Litig.*, 253 F. Supp. 2d 102, 117 (D. Mass. 2003).

HongYun Experience.  Plaintiff claims that statements regarding HongYun's "solid operation experience" and "rich end user resources" were "verifiable factual representations." (Opp. 36.)  But broad statements about "expertise. . . [and] scale of operations" are "too general to cause a reasonable investor to rely upon them" and therefore "inactionable puffery." *Porwal* v. *Ballard Power Sys., Inc.*, 2019 WL 1510707, at *8 (S.D.N.Y. Mar. 21, 2019).[13]

Embracing Hydrogen.  Plaintiff argues that Gu's statement that "municipalities and Fortune 100 companies are rapidly embracing hydrogen" is not "pure opinion" because it "echoed other statements" regarding Hyzon's pipeline. (Opp. 37.)  Plaintiff cites as support only New York defamation law. (Opp. 37 n.112.)  Applying federal securities law, Plaintiff does not (i) provide a basis to conclude that Gu did not hold the belief he expressed, or (ii) explain that any omission made the statement misleading.  *Tongue* v. *Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).

Revenue Opinions.  The Opposition in no way substantiates Plaintiff's claim that Knight and Gordon did not (i) believe that HongYun's accounting treatment was "strange" or (ii) "anticipate booking more revenues upfront" once HongYun had a longer operating history. (Opp. 38.)  Plaintiff merely states that "Hyzon had determined" not all revenue may be collected, but does not point to any facts regarding Knight and Gordon that would support this claim.  (*Id.*

---

[13]    The cases cited by Plaintiff are not to the contrary, and involved specific statements about defendants' experience developing virtual currencies, when defendant "did not recall being involved in the development of any virtual currencies," as well as a falsified office address. *CFTC* v. *McDonnell*, 332 F. Supp. 3d 641, 661 (E.D.N.Y. 2018); *see also Hamilton Exhibition, LLC* v. *Imagine Exhibitions, Inc.*, 2019 WL 2590639, at *3 (S.D.N.Y. June 11, 2019) ("25 years of experience" was a statement of fact, but general statements about defendants' expertise were not).

(citing TAC ¶ 405)).  That is insufficient.  *Gray* v. *Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 400 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).

### III.     PLAINTIFF FAILS TO PLEAD SPECIFIC FACTS THAT SUPPORT A STRONG INFERENCE OF SCIENTER.

### A.     Plaintiff Does Not Meet His Burden to Plead Conscious Misbehavior or Recklessness.

The Opposition confirms that Plaintiff's allegations fail to rise to a strong inference of scienter.  Plaintiff leans heavily on the argument that, by virtue of Defendants' positions, they must have known about contradictory information.  But courts have repeatedly rejected this type of conclusory assertion based on a defendant's role.  *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016).  Nor can Plaintiff avoid pleading "that *specific* contradictory information was available to the defendants *at the same time* they made their misleading statements" by characterizing his allegations as "holistic."  (Opp. 38); *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009).  Plaintiff cannot justify his failure to plead specific facts that any individual Defendant knew or recklessly disregarded contrary information regarding revenue timing, Hiringa, Hyzon customers, or HongYun—an omission that is fatal to his claims.

### 1.     The Special Committee Report and Accounting Restatements Do Not Support a Strong Inference of Scienter.

Plaintiff contends that the Special Committee's investigation "provide[s] a cogent starting point for [] scienter."  (Opp. 39.)  Plaintiff has it backwards.  "[T]hat [Defendants] commenced an internal investigation tends to undermine any inference of scienter."  *City of Brockton Ret. Sys.* v. *Avon Prod., Inc.*, 2014 WL 4832321, at *24 (S.D.N.Y. Sept. 29, 2014).

Plaintiff incorrectly suggests that the Special Committee's report goes beyond Hyzon's accounting restatements and somehow supports an inference of scienter as to other allegations—it does not.  (Mot. 13-16; Opp. 39-41, 45-46.)  Plaintiff also claims that the "Special

Committee's summary findings concede misconduct." (Opp. 39.) But the Special Committee did not find wrongdoing by any Hyzon director or executive. (Mot. 14-16.)[14] Plaintiff's strained reading of references to "the tenor of" communications and recommendations to strengthen internal controls fall well short of the required strong inference. *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *30 (E.D.N.Y. Nov. 4, 2022) ("remediation efforts . . . do not support" scienter), *report and recommendation adopted*, 2023 WL 6360345 (E.D.N.Y. Sept. 29, 2023). The SEC complaint notably alleges negligence only, and not scienter, with respect to Hyzon's accounting restatements for sales in China.[15] (ECF No. 95-1 ("SEC Compl.") ¶¶ 45-52.)

Plaintiff likewise provides no reason to depart from the well-established principle that "violations of GAAP . . . do not suffice to raise a strong inference of scienter without particularized allegations of fraudulent intent." *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 345 (W.D.N.Y. 2008). Plaintiff asserts that "GAAP violations were part and parcel of Defendants' scheme" (Opp. 45-46), but can point only to the generic circumstance that "they enabled Hyzon to falsely claim it had met" its forecast and that Knight and Gu "were well aware" of GAAP principles. (Opp. 46.) But there is no indication that Defendants knew the underlying

---

[14]    Plaintiff argues that Hyzon should not be allowed to rely on the investigation findings because "Hyzon has never released the full Special Committee report." (Opp. 40.) But Plaintiff cannot himself rely on the investigation findings, then cry foul when Defendants point out Plaintiff's mischaracterizations based on the same summary. Nor can Plaintiff plead scienter based on Hyzon's unwillingness to reveal privileged information. *Sanofi*, 155 F. Supp. 3d at 407 (argument that company was "clutching the results of an investigation" did not support scienter); *see also In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 698 (4th Cir. 2020). Plaintiff cites *John Wiley & Sons, Inc.* v. *DRK Photo*, 998 F. Supp. 2d 262, 269 n.4 (S.D.N.Y. 2014), which did not address privileged information and is inapposite.

[15]    The only non-negligence allegations in the SEC complaint relate to the former head of a joint venture in Europe who is not a defendant in this case, in connection with allegations that revenue recorded as vehicle sales should instead have been recorded as service contracts (SEC Compl. ¶¶ 39-44) and the delivery of a milk truck in the Netherlands (*id.* ¶¶ 28-34). The SEC also alleged that Knight did not disclose a stock pledge that he "knew, or reasonably should have known" Hyzon was required disclose pursuant to SEC rules. (*Id.* ¶¶ 65-68.)

facts to which those accounting principles were applied—indeed, the Special Committee's attribution of responsibility to "third parties" and "the Hyzon China operations team" suggest that they did not. (Ex. 36.) Likewise, it would be surprising if senior executives were familiar with the contractual terms for work on five trucks assumed from a joint venture partner in Europe. *Bd. of Trustees of City of Ft. Lauderdale Gen. Emps.' Ret. Sys.* v. *Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011) (refusing to assume "knowledge of all customer contract terms"), *aff'd*, 475 F. App'x 353 (2d Cir. 2012). Plaintiff's claim that "[t]he only common link" between issues in China and Europe "was Hyzon's management" (Opp. 40-41) could apply to any two events under the umbrella of senior executives and would render the scienter requirement a nullity.

Finally, Plaintiff asserts that "Knight and Gordon controlled and signed Hyzon's financial reports" and that "Anderson and Gu also reviewed, signed, and approved" certain reports. (Opp. 46 & n.146.) But Plaintiff fails to allege any facts to show a concomitant awareness of or recklessness as to the alleged falsity of the included statements. (Mot. 30, 39 n.16); *Glazer Cap. Mgmt., L.P.* v. *Magistri*, 549 F.3d 736, 747 (9th Cir. 2008) (SOX certification alone is insufficient).

### 2. Plaintiff Fails To Plead That Defendants Knowingly or Recklessly Misrepresented Hyzon's Business Relationships.

Rather than identify well-pled allegations demonstrating that any Defendant acted with scienter, Plaintiff reiterates his allegations of falsity, asserting that the "investment presentations were misleading from the start." (Opp. 41-42.) In addition, Plaintiff claims that Knight "was responsible" and the "source" for customer contracts "alongside its limited sales and operational employees." (Opp. 42.) But this vague statement regarding Knight and other "sales and operational employees" does not indicate that Knight possessed contradictory information at the time the drafts were prepared. (*Id.*); *Teamsters Loc. 445 Freight Div. Pension Fund* v. *Dynex Cap. Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (dismissal is proper when "false information fed []

from below"). Plaintiff alleges that Knight engaged directly with customers (Opp. 42), but does not connect these interactions to any misstatement. Notably, while Plaintiff relies on the SEC complaint, the relevant section of the SEC complaint does not allege scienter-based fraud. (SEC Compl. ¶¶ 18-27 ("Knight's negligence")); *In re DNTW Chartered Accts. Sec. Litig.*, 172 F. Supp. 3d 675, 690-91 (S.D.N.Y. 2016) (SEC order asserting negligence did not establish scienter).

Plaintiff's claims that Defendants "had access to Hyzon's limited orders and MOUs" and that "[n]othing in the record indicates Knight kept deal information close" (Opp. 42) are likewise too vague and conclusory to meet Plaintiff's burden. *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011).[16]

### 3. Plaintiff Fails to Provide Any Indication That Defendants Knowingly or Recklessly Portrayed Hiringa as an End-User of Vehicles.

Plaintiff dedicates only two sentences in the Opposition to the absence of scienter allegations concerning Hiringa, asserting that "it is reasonable to assume Hyzon's deal documents" reflected Hiringa's role as a channel partner, order conditions, and delivery schedule. (Opp. 42-43.) But this type of conclusory allegation—that information likely was available to Defendants— cannot meet Plaintiff's burden. *Dynex*, 531 F.3d at 196-97. Plaintiff's near abandonment of his Hiringa allegations confirms that the allegations are meritless.[17] Indeed, the SEC complaint

---

[16]   Recognizing that the TAC's allegation that "DCRB purportedly began undertaking extensive due diligence" (TAC ¶ 104) is likewise too vague, the Opposition rewrites this allegation to claim that "Anderson . . . w[as] substantially involved." (Opp. 43 (citing TAC ¶¶ 104-05).) Plaintiff apparently seeks to align his allegations with language in *In re XL Fleet Corp. Securities Litigation*, 2022 WL 493629, at *6 (S.D.N.Y. Feb. 17, 2022); *see* Opp. 43 n.135. Aside from being an improper attempt to replead the TAC, Plaintiff cannot evade his pleading burden by baselessly attributing to DCRB management the allegations previously group-pled as to DCRB.

[17]   In a footnote, Plaintiff acknowledges that Hyzon's disclosures about Hiringa referred to its "fleet operators," but claims that this reference was "ambiguous." (Opp. 43 n.134.) Plaintiff misses the point. Even if ambiguous, and it was not, the express reference to "fleet operators" renders implausible that Defendants knowingly tried to conceal this information. Similarly, while Plaintiff questions whether a logo of a Hiringa fleet partner was sufficiently

-17-

contains no allegations regarding Hiringa, let alone allegations that would establish scienter.

> **4.      Plaintiff Does Not Plead Specific Facts That Defendants Believed or Recklessly Disregarded That HongYun Was a "Sham" Company.**

Plaintiff relies on a hodgepodge of allegations to try to plead scienter with respect to HongYun, but almost none of these allegations even concern HongYun.  Plaintiff refers to (i) Hyzon's marketing of a milk truck for a separate customer, months before the HongYun order; (ii) Hyzon's recategorization of work on five European vehicles as retrofit services; and (iii) the Special Committee's determination that certain vehicles reported as delivered to HongYun were not operable on hydrogen at the time, although they were later confirmed as delivered and operable on hydrogen.  (Opp. 43.)  Plaintiff also claims that Defendants "create[d] false records," citing SEC allegations concerning a European employee's alleged knowledge of a books and records violation related to Hyzon's European business, and accounting control deficiencies that do not reference knowledge of any Defendant.  (Opp. 44 (citing SEC Compl. ¶¶ 61-62).)  But Plaintiff cannot rely on entirely unrelated allegations to plead that Defendants knew or recklessly disregarded that HongYun purportedly was a "sham." *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 418 (S.D.N.Y. 2003) (manipulated sales in separate location "too far removed"); *In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434, at *15 (S.D.N.Y. May 7, 2020) ("unrelated accounting misconduct" did not support scienter), *aff'd,* 844 F. App'x 385 (2d Cir. 2021).

Similarly, Plaintiff repeats that HongYun purportedly was a sham, but does not provide facts indicating that any Defendant knew or consciously disregarded such information. (Opp. 44.)  Although Plaintiff in essence argues that Defendants must have been aware (*id.*), that allegation is significantly undercut by the numerous indications that HongYun is a legitimate purchaser, including photographic proof of deliveries (TAC ¶ 187); the Special Committee's

---

prominent (Opp. 27), its inclusion is inconsistent with an allegation of knowing concealment.

confirmation of deliveries (Ex. 36); and audited financial statements reflecting revenue for HongYun trucks (Mot. 15-16). The SEC complaint similarly contains no allegations that HongYun was a "sham." There cannot be a strong inference that Defendants must have known of an alleged issue that Hyzon's auditor and an independent forensic consultant did not uncover.[18]

### 5. Management Changes Do Not Support an Inference of Scienter.

Plaintiff's speculation regarding the reasons for the departures of Gordon, Gu, and Knight is baseless, and does not support scienter. Plaintiff states vaguely that Gordon departed "within months" of the Special Committee's appointment. (Opp. 47.) In fact, Gordon departed in April 2022, concurrently with the announcement of his successor, approximately four months prior to the identification of revenue timing issues. (Ex. 34.) That timing, and Gordon's continued role as a consultant (*id.*), which Plaintiff does not address, is wholly inconsistent with an inference that Gordon was terminated due to fraud. *Schiro* v. *Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019). Similarly, while Plaintiff asserts that it purportedly could not have been "necessary to remove Gu as Chairman if only because of day-to-day mismanagement" (Opp. 48), Gu was in fact *not* removed as Chairman (TAC ¶ 216). Gu transitioned from Executive Chairman, a role that included management responsibilities in addition to leading Hyzon's board of directors, into the role of non-executive Chairman, in which capacity he continued "to provide strategic counsel." (*Id.*) These circumstances are fully consistent with leadership transitions in the context of Hyzon's business struggles, as well as myriad other reasons, unrelated to fraud, why executives move to new roles. *Gillis* v. *QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 605-06 (S.D.N.Y. 2016).

---

[18]     Plaintiff's generic allegations of HongYun's importance (Opp. 44-45) fall well short of a specific indication of knowing wrongdoing of an executive. In contrast, in *In re IMAX Sec. Litig.*, cited by Plaintiff, plaintiffs "alleged that IMAX executives had specific knowledge of the progress of each theater system installation" and that "employees at each installation site [] would report back to senior executives." 587 F. Supp. 2d 471, 481 (S.D.N.Y. 2008).

At the same time that Gu transitioned to non-executive Chairman, Knight departed as CEO. (TAC ¶ 215.) Plaintiff points to Knight's termination for cause months later, and asserts that "Defendants offer no explanation." (Opp. 48.) But the SEC complaint provides the most reasonable inference, which is in fact correct: Hyzon determined Knight's termination should be for cause due to the failure to disclose his stock pledge. (SEC Compl. ¶¶ 67-68.)[19] That is the only allegation for which the SEC alleged that Knight "knew, or should have known" of alleged misconduct. The number of available competing inferences preclude a strong inference that the departures of Knight or other executives were due to knowledge of misconduct alleged in the TAC.

### 6.    The Government Investigations Do Not Support an Inference of Scienter.

Plaintiff ignores that the SEC's narrow allegations of scienter significantly undercut his claims. (Opp. 49.) Plaintiff's assertion that the SEC settlement "presumably" was reached "after engaging in extensive fact finding" (*id.*) makes the absence of scienter-based allegations with respect to Plaintiff's core claims all the more noteworthy. The SEC complaint does not include *any* allegations with respect to (i) Hiringa, or (ii) HongYun's legitimacy as a customer. The SEC makes only allegations of negligence, not of scienter, with respect to (a) Hyzon's customer relationships, and (b) Hyzon's delivery of 82 vehicles in China. (SEC Compl. ¶¶ 25, 48, 54.) None of these allegations supports scienter here. *DNTW*, 172 F. Supp. 3d at 690-91; *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2019 WL 13164436, at *5 (D.N.J. Sept. 30, 2019) (negligence-based SEC charges did not establish scienter).[20]

---

[19]    Knight disputes that his termination properly qualifies as for cause.

[20]    Plaintiff also refers to Hyzon's report in October 2022 that the SDNY had opened an investigation. (Opp. 48-49.) In light of the more specific information regarding the outcome of the SEC investigation, the announcement of the SDNY investigation more than a year ago does not support an inference of scienter, particularly given the SDNY's greater burden of proof.

**B.    Plaintiff Has Not Met His Burden of Pleading a Cognizable Motive.**

Plaintiff has failed to sufficiently allege facts that demonstrate Defendants' cognizable motive and opportunity to defraud investors.  In the Opposition, Plaintiff weakly rehashes his arguments in the TAC that "[p]owerful incentives motivated Defendants' alleged fraud." (Opp. 49.)  But while Plaintiff claims that the Hyzon Defendants "stood to benefit from the fraud personally" (*id.*), Plaintiff conspicuously fails to address or refute any of the authority cited in the Motion that a potential to profit from shares or options is insufficient to plead scienter, even where the relevant holdings are substantial.  (Mot. 43); *ECA Loc. 134 IBEW* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Similarly, Plaintiff argues that Hyzon's "ability to continue" and "attain profitable operations" created motive (Opp. 49), but does not address the Second Circuit's determination that "generic corporate interests such as . . . avoiding bankruptcy[] or continuing to operate as a business . . . do not support motive to commit securities fraud." *Lehmann* v. *Ohr Pharm., Inc.*, 830 F. App'x 349 (2d Cir. 2020).[21]  Plaintiff fails to establish a cognizable motive distinct from that held by ordinary corporate insiders or investors.

## IV.    PLAINTIFF CANNOT ESTABLISH LOSS CAUSATION.

The Opposition fails to support a basis for loss causation:

(a)  Blue Orca Report and (b) Iceberg Report:  Contrary to Plaintiff's assertions (Opp. 57), the short-seller reports relied heavily on information "readily available" to investors— Hyzon's investor presentations (*see* Exs. 20, 31).  *In re Arcimoto Inc. Sec. Litig*., 2022 WL 16851834, at *7 (E.D.N.Y. 2022).  The reports therefore "cannot support loss causation." *Id.*  In addition, Plaintiff does not plausibly explain how the Iceberg Report, which "agree[d] with" the

---

[21]    Plaintiff cites *Skiadas* v. *Acer Therapeutics Inc.*, 2020 WL 3268495 (S.D.N.Y. June 16, 2020).  In addition to pre-dating *Lehmann*, *Acer* involved "substantial doubt about the Company's ability to continue as a going concern,"  *id.* at *4, circumstances significantly more acute than Hyzon's alleged desire to "attain profitable operations" and "financing." (Opp. 49-50.)

earlier Blue Orca Report (TAC ¶ 179), could possibly support loss causation.

(c) January 12, 2022 Form 8-K, (d) March 30, 2022 Form 10-K, and (e) May 6, 2022 Form 8-K: Plaintiff still fails to tie Hyzon's financial updates to any alleged misstatements concerning Hiringa, HongYun, or Hyzon's customer base. Because these "announcement[s] make[] no mention" of the subject of the alleged fraud, they can "not cure or undermine Defendants' past misrepresentations." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283-84 (S.D.N.Y. 2008); *see also In re IPO Sec. Litig.*, 399 F. Supp. 2d 298, 309 (S.D.N.Y. 2005). Regarding disclosure of the SEC subpoena, the subpoena "related to the allegations made in the [Blue Orca Report]" (TAC ¶ 493), which had already been publicized *twice*. Because it was "substantially similar to the previous disclosures related to" the Blue Orca Report, the SEC disclosure was "materialization of *known* risk" that cannot support loss causation. *Sjunde AP-Fonden* v. *Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 148 (S.D.N.Y. 2021) (emphasis added).

(f) August 4, 2022 Form 8-K: Plaintiff claims that "[t]he Special Committee's summary findings concede that Hyzon falsely reported performance obligations as satisfied." (Opp. 58.) But Plaintiff fails to dispute that the text of the filing makes no mention of Hiringa, HongYun's legitimacy, or Hyzon's customer base more broadly. This deficiency is fatal to Plaintiff. *See Harris* v. *AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015).

(g) August 17, 2022 Press Releases: Plaintiff claims the report of Gu's transition and Knight's departure bears on Plaintiff's core allegations. (Opp. 59.) But the disclosure did not address Hiringa, HongYun, or Hyzon's customer base. Plaintiff does not plead that the disclosure that Knight's termination was deemed for cause, which occurred *months* later, caused a loss event.

## V.    PLAINTIFF'S ADDITIONAL CLAIMS FAIL.

### A.    Plaintiff Fails to Plead a "Scheme Liability" Claim.

The Opposition confirms that Plaintiff has not pled "an inherently deceptive or

-22-

manipulative act that is independent from any alleged misstatement." *In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 190-91 (W.D.N.Y. 2022). Plaintiff runs through a laundry list of pre-merger purported "acts" that are synonymous with statements, including "edit[ing] the investment presentations," "creat[ing] farcical posts," and "announc[ing]" deliveries." (Opp. 60); *SEC* v. *Morgan*, 2019 WL 2385395, at *8 (W.D.N.Y. June 5, 2019) (no liability where facts underlying scheme and misrepresentation claims "essentially identical"); *Turquoise Hill*, 625 F. Supp. 3d at 347-54. Notably, Plaintiff cites only out-of-circuit case law in support. (Opp. 60 nn.202, 204.) While some circuits have concluded that the Supreme Court's decision in *Lorenzo* v. *SEC*, 139 S. Ct. 1094 (2019), expanded scheme liability, the Second Circuit has held that *Lorenzo* did not alter Second Circuit precedent that scheme liability cannot rely solely on misrepresentations. *SEC* v. *Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022).

Plaintiff's post-merger allegations likewise are insufficient. None of the alleged activity is "inherently deceptive or manipulative," *Kodak*, 632 F. Supp. 3d at 191, since "disclosure of the full details . . . would transform that conduct into [] permissible behavior." *De Vito* v. *Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *43 (D.N.J. Dec. 31, 2018); *see also Alpha Cap. Anstalt* v. *Schwell Wimpfheimer & Assocs. LLP*, 2018 WL 1627266, at *11-12 (S.D.N.Y. Mar. 30, 2018). Each alleged act—entering an MOU, failing to disclose a share pledge, granting warrants, and delivering vehicles—would indisputably have been non-fraudulent if disclosed.[22]

---

[22] Plaintiff claims that Defendants "cannot argue for the first time in their reply that the above-described conduct cannot sustain a scheme liability claim." (Opp. 61.) That is wrong. Defendants argued in the Motion that Plaintiff had not pled "an inherently deceptive or manipulative act." (Mot. 46-47.) Given that many of the alleged acts are not specifically alleged in Plaintiff's scheme liability section or are framed as misstatements (TAC ¶¶ 528-37), Plaintiff is seeking to engage in briefing by ambush. *Chevron Corp.* v. *Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018), cited by Plaintiff, did not hold that a defendant must address every iteration of every allegation, but prevented defendant from raising an entirely new constitutional argument.

Finally, Plaintiff's failure to plead standing, falsity, scienter, and loss causation, as described above, is a further basis to dismiss Plaintiff's scheme liability claim.

### B.        Plaintiff Fails to Plead a Section 14(a) Claim.

To try to avoid the application of Rule 9(b) to his Section 14(a) claim, Plaintiff asserts there is a "'clear distinction' between the fraud and non-fraud claims" in the TAC. (Opp. 63-64.)  But unlike *comScore*, which Plaintiff cites, Plaintiff did not "segregate[]" the TAC "into two parts" for fraud and negligence allegations.  *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017).  Rather, Plaintiff made a "nominal effort[]," *id.*, disclaiming his fraud claims in a single sentence.  (TAC ¶ 543.)  Rule 9(b) therefore applies. *McIntosh* v. *Katapult Holdings, Inc.*, 2023 WL 5049044, at *5 (S.D.N.Y. Aug. 8, 2023).

*First*, Plaintiff does not dispute that, if the alleged misstatements are inactionable for the reasons above (Section II) or if Plaintiff has failed to plead loss causation (Section IV), Plaintiff's Section 14(a) claim also fails.

*Second*, Plaintiff acknowledges that the inclusion of Gordon, Gu, and Knight in the solicitation materials is an afterthought, stating in a footnote that "[f]or the Hyzon Defendants, the Soliciting Materials listed their respective backgrounds as well."  (Opp. 66 n.235.)[23]  Their biographies are entirely disconnected from the alleged misstatements, and Plaintiff does not allege "a substantial and plausible connection [from Defendant's name] to the solicitation process." *Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 295 (S.D.N.Y. 2010).

*Third*, Plaintiff does not provide any basis to conclude that Gordon, Knight, or Gu acted negligently as to the solicitation materials.  Gordon, Gu, and Knight were not DCRB

---

[23]        Plaintiff's only cited case, *SEC* v. *Hurgin*, is inapposite as, unlike *Hurgin*, the TAC fails to allege that Gu, Gordon, and Knight "consented" to the use of their names or that their qualifications were "essential to soliciting" votes for the merger.  484 F. Supp. 3d 98, 117 (S.D.N.Y. 2020).

"corporate insiders," and Plaintiff can only claim vaguely that "Defendants allowed DCRB" to disseminate alleged misstatements. (Opp. 66-67.) Plaintiff does not point to any actions taken by Gordon, Gu, or Knight in preparing the soliciting materials, and the Section 14(a) claim as to them therefore fails. *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005).

*Finally*, for the reasons described in the memorandum of the DCRB Defendants, in which the Hyzon Defendants join, the Section 14(a) claim is derivative and should be dismissed.

### C.    Plaintiff Fails to Plead a Section 20(a) Claim.

Plaintiff does not dispute that his Section 20(a) claim is derivative of Section 10(b). (Opp. 68-70.) Because Plaintiff fails to plead a Section 10(b) violation, control, or culpable participation by the Hyzon Defendants, the Section 20(a) claim also should be dismissed.

## VI.    THE TAC SHOULD BE DISMISSED WITH PREJUDICE.

Despite four opportunities to plead his claims over two years, Plaintiff seeks leave to file a fifth complaint because "this []is the first instance the Court has reviewed this . . . complaint." (Opp. 70.) But claims are regularly dismissed with prejudice following a first court decision where, as here, a previous motion to dismiss "provided full notice of the deficiencies." *Clark* v. *Kitt*, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 F. App'x 34 (2d Cir. 2015); *see also, e.g.*, *Silverman* v. *3D Total Sols., Inc.*, 2020 WL 1285049, at *10 (S.D.N.Y. Mar. 18, 2020). Plaintiff's proposal to "incorporate[] the SEC's recently filed fraud allegations" (Opp. 70) does not change this conclusion. The Opposition already relies on SEC's allegations (*e.g.*, Opp. 48-49 & nn. 14, 73-77, 100, 130, 136-37) almost none of which concern scienter-based fraud. A further amendment therefore would do nothing to strengthen Plaintiff's current pleading or arguments, and should be denied. *Sjunde AP-Fonden* v. *Gen. Elec. Co.*, 2021 WL 311003, at *14 (S.D.N.Y. Jan. 29, 2021) ("non-scienter-based violations" in SEC settlement did not support leave to amend); *In re Nokia Corp. Sec. Litig.*, 423 F. Supp. 2d 364, 410 (S.D.N.Y. 2006).

-25-

Dated:    Palo Alto, California       Respectfully submitted,
          November 22, 2023


                                      /s/ Laura Kabler Oswell
                                      Laura Kabler Oswell (*pro hac vice*)
                                      SULLIVAN & CROMWELL LLP
                                      550 Hamilton Avenue
                                      Palo Alto, California  94301
                                      Tel.: (650) 461-5600
                                      Fax:  (650) 461-5700
                                      oswelll@sullcrom.com

                                      Jacob M. Croke
                                      Christopher A. Graham (*pro hac vice*)
                                      SULLIVAN & CROMWELL LLP
                                      125 Broad Street
                                      New York, New York  10004
                                      Tel.: (212) 558-4000
                                      Fax:  (212) 558-3588
                                      crokej@sullcrom.com
                                      grahamch@sullcrom.com

                                      *Counsel for Defendants Hyzon Motors Inc.,*
                                      *Erik Anderson, Craig Knight, Mark Gordon,*
                                      *and George Gu*