**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE HYZON MOTORS INC. SECURITIES LITIGATION | Case No. 6:21-cv-06612-MAV-MWP |
| *This Document Relates to:* ALL ACTIONS | **Oral Argument Requested** |

## LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ENJOIN THE PROPOSED CLASS SETTLEMENT IN THE *MALORK* CHANCERY COURT ACTION

PLEASE TAKE NOTICE that Lead Plaintiff Alfred Miller hereby moves this Court before the Honorable Meredith A. Vacca, United States District Judge, at the United States Courthouse, 100 State Street, Rochester, New York, at a date and time of the Court's choosing, for an Order enjoining the proposed class settlement filed in *Malork v. Anderson*, *et. al.*, No. 2022-0260 (Del. Ch.).

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order filed herewith, all pleadings and papers filed herein, the arguments made regarding this matter, and any other information properly before the Court.

DATED: June 27, 2025.                    Respectfully submitted,

                                         */s/ Lucas E. Gilmore*
                                         Lucas E. Gilmore (*pro hac vice*)
                                         Reed. R. Kathrein (*pro hac vice*)
                                         **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                         715 Hearst Avenue, Suite 202
                                         Berkeley, CA 94710
                                         Telephone: (510) 725-3000
                                         Facsimile: (510) 725-3001
                                         reed@hbsslaw.com
                                         lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Raffi Melanson
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
raffim@hbsslaw.com

*Lead Counsel for Lead Plaintiff Alfred Miller*

Brian J. Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Alfred Miller*

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NEW YORK**

|   |   |
|---|---|
| IN RE HYZON MOTORS INC.<br>SECURITIES LITIGATION | Case No. 6:21-cv-06612-MAV-MWP |
| *This Document Relates to:*<br>*ALL ACTIONS* | **Oral Argument Requested** |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO ENJOIN THE PROPOSED CLASS SETTLEMENT**
**IN THE *MALORK* CHANCERY COURT ACTION**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND .................................................................................................3

    A. This Federal Action's Pending Exchange Act Claims for Defendants' Deprivation of DCRB Investors' Redemption Rights .........................3

    B. The *Malork Action's* Overlapping Fiduciary Duty Claims .....................................5

    C. The *Malork* Stipulation Patently Fails Federal Scrutiny ........................................7

III. ARGUMENT......................................................................................................10

    A. The PSLRA Expressly Authorizes Federal Courts to Enjoin State Court Actions like the *Malork* Stipulation that Frustrate Federally Created Rights...............................................................................................11

        1. The PSLRA confers federally appointed Lead Plaintiffs with the federal right to control the course of federal securities litigation, including the selection of class counsel and the conduct of settlement negotiations................................11

    B. The *Malork* Stipulation's Overbroad Class Release Must Be Enjoined to Avoid Further Injury to Lead Plaintiff's Express Federal Rights and the Putative Federal Class........................................................14

    C. An Injunction Is Necessary to Protect the Federal Court's Exclusive Jurisdiction Over the Federal Putative Class's Pre-Merger Exchange Act Claims. ................................................17

    D. Absent Some Correction, the *Malork* Stipulation Threatens to Confuse, Mislead, and Injure Investors with Claims under Both State and Federal Law..................................................................19

IV. CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
398 U.S. 281 (1970)..................................................................................................10, 17, 18

*In re Baan Co. Sec. Litig.*,
271 F. Supp. 2d 3 (D.D.C. 2002) .....................................................................................14

*In re BankAmerica Corp. Sec. Litig.*,
95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001)................12, 13, 15

*In re BankAmerica Corp. Sec. Litig.*,
263 F.3d 795 (8th Cir. 2001) ...........................................................................................13

*Blalock Eddy Ranch v. MCI Telecomm. Corp.*,
982 F.2d 371 (9th Cir. 1992) ...........................................................................................10

*In re Cendant Corp.*,
260 F.3d 183 (3d Cir. 2001)..............................................................................................13

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ...........................................................................................13

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
583 U.S. 416 (2018)....................................................................................................12, 15

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...............................................................................................1

*In re Initial Pub. Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) ......................................................................................13

*In re LendingClub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..................................................................16, 19, 20

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019).................................................................................................2

*Mitchum v. Foster*,
407 U.S. 225 (1972)....................................................................................................11, 15

*National Super Spuds, Inc. v. New York Mercantile Exchange*,
660 F.2d 9 (2d Cir. 1981) ................................................................................................19

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  523 F.3d 1091 (9th Cir. 2008) ...................................................................................16

*In re Network Assocs., Inc. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .....................................................................13

*In re Payment Card Interchange Fee & Merch. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................................9

*Primo v. Pac. Biosciences of Cal., Inc.*,
  2013 WL 4482739 (N.D. Cal. Aug. 20, 2013) .........................................................16

*Sierra v. City of New York*,
  528 F. Supp. 2d 465 (S.D.N.Y. 2008)......................................................................17

*In re Tezos Sec. Litig.*,
  2018 WL 2387845 (N.D. Cal. May 25, 2018) ..........................................................16

*In re Visa Check/Mastermoney Antitrust Litig.*,
  2005 WL 2100930 (E.D.N.Y. Aug. 31, 2005)..........................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)..........................................................................................9

## STATUTES

15 U.S.C. § 78aa ...........................................................................................................17

15 U.S.C. § 78u-4 ...........................................................................................................2

15 U.S.C. § 78u–4(a)(3)(B) ..........................................................................................12

28 U.S.C. § 1651(a) .......................................................................................................10

28 U.S.C. § 2283 ......................................................................................................10, 17

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(e)(2)................................................................................................1, 8

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995) ..............................................12

## I.    INTRODUCTION

On June 17, 2025, parties in a related, state court class action[1] brought against some of the same defendants in this case,[2] based on some of the same transactions and set of facts at issue in this case, notified the state court that they had reached a Stipulation and Agreement of Compromise. Ex. A ("*Malork* Stipulation").[3] That Stipulation—negotiated without any knowledge or involvement by the federal-court-appointed Lead Plaintiff, Alfred Miller—purports to create a **non-opt out** settlement class, which, as defined, heavily overlaps with, if not completely envelops, part of the putative class in this federal case. Although the claims at issue in the *Malork* action solely involved breach of fiduciary and unjust enrichment claims under Delaware law, the Stipulation includes an extremely broad release of liability that releases the DCRB Defendants from all claims, including pending federal claims alleged on behalf of the federal putative class in this case (over which this Court has exclusive jurisdiction). The *Malork* Parties' attempt to release class members' federal claims through a non-opt-out mechanism is highly prejudicial, as it unfairly binds absent parties to a resolution of their federal rights without meaningful opportunity to decline participation, as guaranteed under Rule 23.

What's more, the *Malork* Stipulation fails to include critical information that federal courts demand in determining whether the settlement of federal securities class action claims is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2) and *Detroit v. Grinnell Corp.*, 495 F.2d

---

[1]    *See Malork v. Anderson, et. al.*, No. 2022-0260 (Del. Ch.).

[2]    These Defendants are Defendants Anderson, Aaker, Kearns, Lapeyre, Leuschen, Tichio, McDermott, Tepper, and Warren—*i.e.*, the "DCRB Director Defendants"—and Defendants Riverstone, Sponsor, and WRG—*i.e.*, the "DCRB Corporate Defendants." These Defendants are collectively referred to herein as the "DCRB Defendants."

[3] All exhibits cited herein are attached to the Declaration of Lucas E. Gilmore filed concurrently herewith.

448 (2d Cir. 1974). Among other omitted critical information, the *Malork* parties fail to provide any: (i) discussion of the potential class recovery if plaintiffs had fully prevailed on each of their alleged claims, including what percentage of that potential recovery the proposed settlement represents, and what class members are expected to receive on a per share basis; (ii) analysis of the value of the released federal claims, what additional consideration was negotiated for these claims and whether that amount is within the range of reasonableness; and (iii) examination of Defendants' ability to withstand a higher judgment. Accordingly, the Stipulation patently fails federal scrutiny.

The proposed form of notice to the settlement class is equally deficient.[4] The Notice makes no mention of the instant action, let alone how this case and overlapping class members will be affected by the settlement and release. Thus, the notice fails to "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Put bluntly, this intentional strategy by the *Malork* parties is nothing more than a surreptitious attempt to revive the first-to-the-courthouse races that the Private Securities Litigation Reform Act's ("PSLRA's") lead-plaintiff-appointment process intended to supplant.[5] Because the *Malork* parties have proposed an imminent state court settlement that releases federal class claims (without Lead Plaintiff's involvement or federal court approval), this Court must order injunctive relief pursuant to the All Writs Act that either (i) enjoins the Delaware Chancery Court

---

[4] *See* Ex. B (Notice of Pendency and Proposed Settlement of Stockholder Class Action, Settlement Hearing, and Right to Appear) and Ex. C (Summary Notice of Pendency and Proposed Settlement of Stockholder Class Action, Settlement Hearing, and Right to Appear); *see also* Ex. D (Proposed Order and Final Judgment).

[5]    *See* 15 U.S.C. § 78u-4.

from proceeding on the *Malork* parties' proposed settlement or (ii) orders the *Malork* parties to refine their Stipulation's release in a way that completely carves out the federal putative class's claims against the DCRB Defendants.

## II.   BACKGROUND

### A.   This Federal Action's Pending Exchange Act Claims for Defendants' Deprivation of DCRB Investors' Redemption Rights

As this Court is aware, this case concerns Defendants' efforts to revive and take public a now defunct, hydrogen electric vehicle company—Hyzon Motors, LLC—through a special merger with the blank-check, special purpose acquisition company—DCRB.[6] To persuade shareholders to approve the proposed merger, Defendants emphasized in press releases, investor presentations, media appearances, and other Soliciting Materials that Hyzon had a growing backlog of deep-pocketed purchasers with 100% certain, revenue-generating sales and deliveries.[7]

With respect to the DCRB Defendants specifically, Lead Plaintiff alleges that they negligently prepared, reviewed, and/or disseminated these soliciting materials in the name of the DCRB Board to help consummate DCRB and Hyzon's July 2021 merger.[8] To lend credit to the recommendation that shareholders vote for the proposed merger, the DCRB Defendants represented they had conducted substantial due diligence and had favored the proposed merger due to, among other things, their review of "Hyzon's non-binding memoranda of understanding, letters of intent and a limited number of orders with various clients, including blue-chip Fortune 100 companies."[9] But at the time, information that would have been readily apparent from a

---

[6]   *See* Third Amended Complaint, ECF No. 67 ("TAC"), ¶¶ 5-7.

[7]   *See id.* ¶¶ 543-552.

[8]   *Id.*

[9]   *Id.* ¶¶ 103-108.

reasonably diligent investigation demonstrated the Soliciting Materials were inaccurate. No such binding or highly probable orders with advertised customers, including any blue-chip brands, actually existed. As alleged, the public learned the truth months later, when market research reports, Hyzon's SEC filings, and an SEC complaint and consent judgment began revealing the extent of Defendants' misrepresentations and misconduct.[10]

Lead Plaintiff claims that, in engaging in the above-described conduct prior to the merger vote, the DCRB Defendants impeded Lead Plaintiff and the putative federal class,[11] specifically those entitled to vote for/against the July 2021 Hyzon-DCRB merger, from exercising their right to redeem their pro rata investment interest in the SPAC ("Redemption Rights"), in violation of Section 14 of the Exchange Act and SEC Rule 14a-9 (promulgated thereunder).[12] Lead Plaintiff further maintains that DCRB Director Defendants Anderson and Tichio are also liable under Section 10(b) of the Exchange Act (and SEC Rule 10b-5 promulgated thereunder) for making certain false or misleading statements in the above-mentioned soliciting materials and for engaging in fraudulent and deceptive conduct in connection with the merger solicitation process.[13]

---

[10]  *Id.* ¶¶ 159-218; MTD Opp. at 17-18 (ECF No. 96) (discussing allegations in the SEC Complaint and consent judgment that became public after the TAC was filed).

[11]  As defined in TAC ¶ 508, the putative federal class consists of "all those who (a) purchased Hyzon Motors Inc. f/k/a Decarbonization Plus Acquisition Corporation's ('Hyzon' or the 'Company') securities during the period from February 9, 2021 to August 17, 2022, inclusive ('Class Period') and/or (b) *are former shareholders of DCRB who held DCRB securities as of June 1, 2021 and were entitled to vote with respect to the Merger*, and (c) were damaged thereby."

[12]  TAC ¶¶ 543-552. Lead Plaintiff also alleges that certain Hyzon-affiliated defendants, including Hyzon's CEO, Craig Knight; its Chairman, George Gu; and its CFO, Mark Gordon, acted negligently in making and/or disseminating the statements contained within the Soliciting Materials and by allowing the Soliciting Materials to be disseminated with such misleading statements to appear next to their name(s) and image(s). *Id.* ¶ 549.

[13]  *Id.* ¶¶ 518-537 (alleging Section 10(b) and SEC Rule 10b-5 claims against Hyzon, the Hyzon Defendants, and DCRB Directors Anderson, Tichio, and Haskopoulos, including claims for misstatements and conduct following the July 2021 merger vote by specific defendants).

The original Hyzon Motors Inc. securities class action lawsuit was filed on September 30, 2021. ECF No. 1. On November 29, 2021, Dr. Miller and three other movants timely moved for appointment of lead plaintiff. On December 14, 2021, the Court entered an Order finding that Dr. Miller was "the most adequate plaintiff because he has the largest loss and financial interest among the other lead plaintiff movants." ECF No. 22 at 2. In turn, the Court appointed Dr. Miller Lead Plaintiff. *Id.* The Court also approved Dr. Miller's selection of Hagens Berman as Lead Counsel, granting the firm exclusive authority to manage all aspects of the litigation, including pretrial and trial procedures, settlement negotiations, and coordinating all activities and filings for Plaintiffs, ensuring efficient prosecution and avoiding duplication. *Id.* at 2.

Lead Plaintiff Miller filed his first complaint on November 15, 2021. He last amended his complaint on June 23, 2023. Defendants' motion to dismiss was fully briefed in November 2023. And, in May 2025, after this case was reassigned to a new judge, this Court held its first oral argument on the sufficiency of any complaint filed in this proceeding. No decision has been published as of the date of this motion.

### B.      The *Malork Action's* Overlapping Fiduciary Duty Claims

Like the Federal Action, the *Malork* plaintiff, John Malork, asserts that the DCRB Defendants impaired the Redemption Rights of DCRB stockholders by issuing false or misleading statements in soliciting materials for the July 2021 merger. Malork alleges that the DCRB Defendants' pre-merger soliciting materials and investor presentations "falsely and misleadingly represented Legacy Hyzon's value and financial prospects, including by providing unsupportable financial projections (the 'Proxy Projections') for vehicle sales and corresponding revenue that the

Company would generate for the 2021 through 2025 fiscal years," and overstated the DCRB Defendants' role in assessing the merger.[14]

Malork claims that the DCRB Defendants "knew—or through reasonable due diligence should have known"—at the time of publication "that Legacy Hyzon was nowhere near converting the internationally-recognized brands identified in the Investor Presentations into actual customers."[15] Just like Lead Plaintiff Miller, Malork claims that "[a]s a natural and predictable consequence of the false and misleading disclosures and omissions in the Merger Proxy and Investor Presentations, Decarb stockholders voted to approve the Merger and largely chose to invest in the post-closing combined entity rather than exercise their Redemption Rights."[16]

Given his state law forum, Malork claims only violations of state law, specifically that the DCRB Defendants breached their fiduciary duty and unjustly enriched themselves.[17] Malork did not move to be Lead Plaintiff in the Federal Action. He instead filed his first state court complaint in March 2022 and his most recent amended complaint on July 15, 2024. It is unclear from the case filings what financial interest Plaintiff Malork has in this litigation, or whether he even has statutory standing to assert the released federal claims alleged herein, including potentially the Section 10(b) claims.

Two weeks after filing his most recent amended complaint, on July 31, 2024, Malork participated in a mediation with the DCRB Defendants without Lead Plaintiffs' knowledge or

---

[14]    *Malork* Complaint ¶¶ 5-6, 9.

[15]    *Id.* ¶ 7. Additionally, Malork alleges the soliciting materials "withheld critical information from Decarb's public stockholders concerning the high degree of dilution of Decarb's shares that would occur in connection with the Merger." *Id.* ¶ 4.

[16]    *Id.* ¶ 12.

[17]    *Id.* ¶¶ 166-185.

involvement.[18] That day, the *Malork* parties purportedly reached a settlement in principle. At no point prior did he move to certify a litigation class or otherwise divulge the details of the settlement.

### C.    The *Malork* Stipulation Patently Fails Federal Scrutiny

On June 17, 2025, almost a year later, the state court plaintiff Malork, "for himself and on behalf of the Class," and the Settling Defendants filed a proposed settlement with the Chancery Court, which "subject to the approval of the [Chancery] Court," purports to "completely, fully, finally, and forever compromised, settled, released, discharged, extinguished, and dismissed with prejudice and without costs (except as provided herein) and are fully, finally, and forever compromised, settled, released, discharged, extinguished, and dismissed with prejudice and without costs (except as provided herein) as to the Released Defendant Parties and the Released Plaintiff Parties, in the manner and upon the terms and conditions set forth herein."[19]

Therein, the *Malork* parties attempt to certify a ***non-opt out*** class "consisting of all Persons who held shares of Decarb Class A common stock as of the Redemption Deadline, either of record or beneficially, and who did not redeem all of their shares"—a class definition that overlaps with, if not completely envelops, the federal putative class members with Section 14 federal claims.[20]

And for this proposed settlement class, the Stipulation includes an extremely broad release encompassing "any and all manner of claims, … of any kind, nature, or description whatsoever, whether known or unknown, disclosed or undisclosed, … whether based on state, local, ***federal***, foreign, statutory, regulatory, or common law or equity or otherwise, that (a) Plaintiff or any other member of the Class individually or on behalf of the Class: (i) ***alleged, asserted, set forth, or***

---

[18]    Ex. A at 7.

[19]    *Id.* at 10-11.

[20]    *Id.* at 11.

*claimed against the Released Defendant Parties* in the Action or *in any other action in any other court*, tribunal, proceeding, or other forum, or (ii) could have alleged, asserted, set forth, or claimed against the Released Defendant Parties in the Action or in any other action in any other court, tribunal, proceeding, or other forum; and (b) *that are based upon, arise out of, or relate in any way to the impairment of the redemption rights of any Decarb Class A stockholder*."[21] Thus, the *Malork* parties seek to extinguish class members' federal claims pending in this action on a non-opt-out basis, effectively stripping class member of their fundamental right to pursue those claims without their express consent.

The Malork Stipulation is glaringly deficient and cannot meet the federal scrutiny required for settling federal securities class action claims under Fed. R. Civ. P. 23(e)(2) and the *Grinnell* factors. Despite the parties' stated intent to release claims of both the Lead Plaintiff and the Class, the stipulation critically omits essential information federal courts demand to determine if a settlement is "fair, reasonable, and adequate." Among these crucial omissions, there is no discussion regarding the potential class recovery if plaintiffs had fully prevailed on each of their alleged claims, nor is there any indication of what percentage of that potential recovery the proposed settlement represents, or what class members are expected to receive on a per-share basis.

---

[21]  *Id.* at 17-18. For the avoidance of doubt, the Stipulation defines "Released Defendant Parties" to mean "defendants Erik Anderson, Jennifer Aaker, Jane Kearns, Pierre Lapeyre, Jr., David Leuschen, Robert Tichio, Jim McDermott, Jeffrey Tepper, Michael Warren, Riverstone Investment Group LLC ("Riverstone"), Decarbonization Plus Acquisition Sponsor, LLC ('DCRB Sponsor'), and WRG DCRB Investors, LLC ('WRG')" and "and any and all of their respective current and former parent entities, affiliates, subsidiaries and any and all directors, officers, employees, employers, controlling persons, owners, members, principals, managers, partners, limited partners, general partners, stockholders, representatives, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, agents, heirs, executors, trustees, personal representatives, estates, administrators, insurers, and reinsurers of any of the foregoing, and their respective predecessors, successors, or assigns." *Id.* at 16-17.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (court must examine the "range of reasonableness" of the settlement "in light of the best possible recovery").

Also notably absent from the Stipulation is any assessment of the released federal claims' value, details of additional consideration negotiated for these released claims, or an evaluation of the reasonableness of that amount. *In re Payment Card Interchange Fee & Merch. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (noting that the *Grinnell* factors require court to consider "range of reasonableness of the settlement fund in light of all the attendant risks of litigation").

The stipulation also offers no examination of the Defendants' ability to withstand a higher judgment (*Grinnell* factor 7)—perhaps for good reason. The DCRB Defendants include Riverstone Holdings LLC (the broader entity often associated with Riverstone Investment Group LLC), which states on its website that it has raised over $40 billion of capital since its inception in 2000.[22] They also include high net worth individuals such as Riverstone co-founders David M. Leuschen and Pierre F. Lapeyre Jr. of Goldman Sachs fame. Thus, there is no indication of an ability to pay risk or difficulty of enforcing a judgment after a verdict.

In addition to the proposed settlement, the *Malork* parties have also submitted proposed notices to be sent to the putative state law class to inform them of their rights. These notices, however, fail to even acknowledge the existence of the ongoing Federal Action, let alone explain what claims will be released in this action if the settlement is approved, the class definitions in this case, its procedural posture, whether plaintiffs' counsel in this case participated in the settlement negotiations, or any explanation of the significance of those factors on settlement approval.[23] Nor

---

[22] https://www.riverstonellc.com/en/about/.

[23] *See* Ex. B (Notice of Pendency and Proposed Settlement of Stockholder Class Action, Settlement Hearing, and Right to Appear); Ex. C (Summary Notice of Pendency and Proposed Settlement of Stockholder Class Action, Settlement Hearing, and Right to Appear).

- 9 -

do they inform investors that the potential recovery in the Federal Action could be substantially greater than the $8.8 million settlement agreed to by the *Malork* parties. And only the detailed notice arguably mentions—in a single paragraph buried deep within a gauntlet of legal jargon—that the state law settlement would release unspecified federal claims.[24]

## III.   ARGUMENT

Pursuant to the All Writs Act, this Court should enjoin the Delaware Chancery Court from procedurally advancing the *Malork* Stipulation or any other actions taken by the *Malork* parties to release the federal claims in this action (over which this Court enjoys exclusive jurisdiction).

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[25] This power is limited by the Anti-Injunction Act, which provides that a federal court "may not grant an injunction to stay proceedings in a State court except" when doing so is expressly authorized by an act of Congress; is necessary in aid of the federal court's jurisdiction; or is necessary to protect or effectuate the federal court's judgments.[26] Accordingly, if a proposed injunction of a state court proceeding comes within any of the Anti-Injunction Act's three exceptions, then it is authorized under the All Writs Act.[27] The decision to enjoin state court proceedings is committed to the district court's discretion.[28]

Here, the Anti-Injunction Act's first and second exception applies, empowering this Court to enjoin the *Malork* parties' unlawful usurpation of the putative federal class's rights.

---

[24]   *See* Ex. B at 18.

[25]   28 U.S.C. § 1651(a).

[26]   28 U.S.C. § 2283.

[27]   *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970).

[28]   *Blalock Eddy Ranch v. MCI Telecomm. Corp.*, 982 F.2d 371, 375 (9th Cir. 1992).

### A.    The PSLRA Expressly Authorizes Federal Courts to Enjoin State Court Actions like the *Malork* Stipulation that Frustrate Federally Created Rights

#### 1.    The PSLRA confers federally appointed Lead Plaintiffs with the federal right to control the course of federal securities litigation, including the selection of class counsel and the conduct of settlement negotiations.

The PSLRA confers "express authority" on the federal courts to enjoin state court settlements like the *Malork* Stipulation through the PSLRA's detailed, notice-and-selection process for appointing lead plaintiffs in federal securities law class actions.

"[T]o qualify as an 'expressly authorized' exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding."[29] "This is not to say that in order to come within the exception an Act of Congress must, on its face and in every one of its provisions, be totally incompatible with the prohibition of the anti-injunction statute. The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding."[30] Notably, to qualify under the exception, "a federal law need not contain an express reference to that statute."[31] Nor must "federal law … expressly authorize an injunction of a state court proceeding in order to qualify as an exception."[32]

---

[29]    *Mitchum v. Foster*, 407 U.S. 225, 237-38 (1972).

[30]    *Id.*

[31]    *Id.* at 237.

[32]    *Id.*

- 11 -

Since the passage of the PSLRA, the power to control securities class actions no longer rests with the first plaintiff-attorney team to race to the courthouse.[33] Rather, the PSLRA sets forth a detailed notice-and-selection process for appointing a lead plaintiff. At the end of this process, the federal courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."[34] In doing so, the PSLRA's notice-and-selection process confers "a uniquely federal right" on lead plaintiffs appointed through the PSLRA's provisions, which cannot be given their intended meaning or scope if a state court plaintiff in an overlapping state court proceeding, like the *Malork* action, can usurp the putative federal class's claims, without the federal lead plaintiff's consent or involvement.

In *BankAmerica*, the Eighth Circuit reached a similar conclusion.[35] There, investors alleged the namesake bank violated federal securities laws by failing to disclose material facts in connection with the 1988 merger between BankAmerica Corporation and the former NationsBank Corporation. One investor filed both a federal class action and several California state class actions. And "[w]hen it became clear that [they] lacked the financial stake to become lead plaintiffs in the federal case, … [they] dismissed the federal case to focus on the California cases where no financial stake rules govern[ed] the selection of lead plaintiffs and lead counsel."[36] This prompted

---

[33] *See* H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess., at 32-35 (1995) (describing Congress's concerns about the method by which class representatives and class counsel were selected); *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 422 (2018) ("Congress passed the Reform Act principally to stem 'perceived abuses of the class-action vehicle in litigation involving nationally traded securities.'" (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006))).

[34] 15 U.S.C. § 78u–4(a)(3)(B).

[35] *In re BankAmerica Corp. Sec. Litig.*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001) ("*BankAmerica*").

[36] *Id.* at 1046.

the PSLRA-appointed lead plaintiff in the federal case to move to enjoin the related state court litigation through the All Writs Act.

In enjoining the state court case in the first instance, the district court found that the PSLRA vested several rights in the investors found to be "the most adequate plaintiff," including "the right to be appointed lead plaintiffs, *to control the course of the class action litigation*, and to select class counsel of their choice," which would be "frustrated if [the court] fail[ed] to enjoin the California proceeding."[37] On appeal, the Eighth Circuit upheld the injunction, agreeing that the PSLRA grants federal-court-appointed lead plaintiffs "significant federal rights" and "decisional muscle" which other class members lack.

> We think it plain that the lead-plaintiff provisions of the PSLRA create significant federal rights that previously did not exist. It can hardly be gainsaid that the right to steer litigation of this magnitude is an important privilege. The lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff decisional muscle that other members of the class lack.[38]

Since *BankAmerica*, courts in multiple jurisdictions have held that lead plaintiffs appointed under the PSRLA have the express power and duty to "monitor, manage and control the litigation, making, as is the case in ordinary cases, litigation decisions on resource allocation and settlement, with, of course, the advice of, but not the prerogative of, class counsel."[39]

---

[37]   *Id.* at 1049-50 (emphasis added).

[38]   *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001).

[39]   *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999); *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 709 (9th Cir. 2009) ("The [PSLRA] expressly provides that lead plaintiff has the power to select lead counsel, suggesting that the identity of the party selecting lead counsel was of substantial importance to Congress."); *In re Cendant Corp.*, 260 F.3d 183, 197 (3d Cir. 2001) ("Congress' clear intent in enacting the PSLRA was to transfer control of securities class actions from the attorneys to the class members (through a properly selected lead plaintiff)."); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123

- 13 -

Here, there is no question that the PSLRA confers Dr. Miller, the lead plaintiff found by this Court to be the most capable of adequately representing DCRB shareholders' interests, with the express rights to monitor, manage, and control federal litigation against the Hyzon and DCRB defendants. ECF No. 22 at 2. During the Class Period, Dr. Miller expended nearly $7 million purchasing about 1.7 million DCRB/HYZN shares at artificially inflated prices and (using the inputs available during the lead plaintiff motion process) suffered more than $3 million in total out-of-pocket losses.[40] As of the date of the SPAC Merger, Dr. Miller was holding nearly 160,000 shares of DCRB (plus over 800,000 warrants). Further, the Court granted Lead Counsel broad authority to direct all aspects of the litigation, including speaking for the Plaintiffs in pretrial and trial procedures and conducting settlement negotiations. ECF No. 22 at 2.

Although Mr. Malork did not subject himself to the PSLRA's lead plaintiff process, he was afforded every opportunity to do so under the PSLRA's spelled-out process. His non-participation in the PSLRA process, combined with his refusal to identify in any pleadings how many DCRB shares he actually held through the July 2021 merger, strongly calls into question his ability to most adequately represent any actual litigation class.

### B. The *Malork* Stipulation's Overbroad Class Release Must Be Enjoined to Avoid Further Injury to Lead Plaintiff's Express Federal Rights and the Putative Federal Class

As was the case in *BankAmerica*, Lead Plaintiff Miller's "federal right cannot be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of

---

(S.D.N.Y. 2002) (finding the "responsibility explicitly given to lead plaintiffs by the PSLRA is the power to select and direct class counsel"); *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 11 (D.D.C. 2002) ("[T]he legislative history makes clear that the lead plaintiff must do two things—select the lead counsel and control the litigation.").

[40]    *See* Decl. of Lucas E. Gilmore i/s/o Alfred Miller's Lead Plaintiff Motion (ECF No. 12).

shares, can institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims."[41]

Though the Federal Action asserts claims for violations of Section 14(a) arising from the DCRB Defendants' alleged interference with shareholders' Redemption Rights, the *Malork* Stipulation, as drafted, releases ***any*** claims—both state and federal—***based upon, aris[ing] out of, or relat[ing] in any way to the impairment***" of the very same redemption rights at issue in this case.[42] The *Malork* Stipulation releases these federal claims against the DCRB Defendants in this case—no one else. What's more, it releases these federal claims not just for Mr. Malork (who is welcome to opt out of the putative federal class), but for "all Persons who held shares of Decarb Class A common stock as of the [July 13, 2021] Redemption Deadline." And by creating a no-opt-out class, the Stipulation gives neither Lead Plaintiff nor any absentee member of the putative federal class any opportunity to opt out or otherwise remove themselves from the *Malork* parties' forced settlement and release—a fundamental procedural safeguard under Rule 23.[43]

Because lawyer-driven attempts to undermine federal securities lawsuits are rare, only a handful of district courts have considered motions to enjoin state court securities law actions that overlapped with a federal case. In each instance since *BankAmerica*, each district court has

---

[41] *BankAmerica*, 95 F. Supp. 2d at 1049. That the Supreme Court affirmed concurrent federal and state jurisdiction over Securities Act claims does not compel a different result. *See Cyan, Inc.*, 583 U.S. at 422. As noted by the court in *BankAmerica* in rejecting a similar argument: "*Mitchum*[], the case which provides the definitive test for the expressly authorized exception, involved a 42 U.S.C. § 1983 suit"—a type of suit that "may be brought in state court." *BankAmerica*, 95 F. Supp. 2d at 1050-51 (citing *Mitchum v. Foster*, 407 U.S. 225 (1972)).

[42] Ex. A at 18. Moreover, construed liberally, the Stipulation could also preclude the federal putative class's pending Section 10(b) claims against Defendants Anderson and Tichio arising from fraudulent statements/omissions they made, or the scheme conduct they engaged in, prior to the July 2021 SPAC merger.

[43] *Id.* at 11.

- 15 -

considered as a determinative factor whether or not the state court proceeding "raise[s] the specter of settlement … that threatens to dispose of all claims on behalf of all class members" in a federal suit.[44] The Ninth Circuit has similarly identified an "imminent" class action settlement as a circumstance justifying the issuance of an injunction to a state court despite the strictures of the Anti-Injunction Act.[45] This is exactly what the *Malork* parties are trying to force through in their Stipulation here.

In short, the *Malork* Stipulation is nothing but an end-run around the PSLRA's clear intent to end race-to-the-courthouse litigation strategies by effectively replacing the race to be the first to file with a race to be the first to negotiate a settlement agreement (most likely, through a monetary release that sells shareholders short). The *Malork* parties could have involved Lead Plaintiff in their settlement negotiations if Defendants wanted an effective global release. They instead chose a surreptitious route. Because the *Malork* parties have proposed an imminent state court settlement that releases all federal claims, this Court must order injunctive relief that either stays proceedings on the settlement or otherwise carves out the federal putative class.

---

[44]   *E.g.*, *In re Tezos Sec. Litig.*, 2018 WL 2387845, at *2 (N.D. Cal. May 25, 2018); *see also In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1190 (N.D. Cal. 2017) (leaving open the possibility that such circumstances might arise at a later point and, for that reason, denying the federal plaintiff's motion "without prejudice to the future imposition of an injunction or stay of either the state or federal action should it become necessary"); *Primo v. Pac. Biosciences of Cal., Inc.*, 2013 WL 4482739, at *3 (N.D. Cal. Aug. 20, 2013) (distinguishing case from "*BankAmerica* where 'competing state court plaintiffs, representing a significantly smaller number of shares sought to institute premature settlement negotiations which threatened the orderly conduct of the federal case and which could result in the release of the federal claims'").

[45]   *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, at 1103 (9th Cir. 2008).

**C.**    **An Injunction Is Necessary to Protect the Federal Court's Exclusive Jurisdiction Over the Federal Putative Class's Pre-Merger Exchange Act Claims.**

The *Malork* Stipulation must also be enjoined because it improperly seeks to settle, in a state court forum, federal claims that may only be adjudicated in federal court. As discussed above, the *Malork* Stipulation seeks to release the DCRB Defendants from any claim, including those arising under federal law, relating to the infringement of DCRB shareholders' Redemption Rights. If granted, this would naturally include Lead Plaintiff's pending Section 14 claims brought on behalf of himself and the putative federal class against the DCRB Defendants in this case.[46] The release also potentially includes the pending Section 10(b) claims against Defendants Anderson and Haskopoulos for their pre-merger misrepresentation and misconduct. Under Section 27 of the Exchange Act, however, "[t]he district courts of the United States," not the state courts, "***shall have exclusive jurisdiction*** of violations of" the Exchange Act.[47]

The necessary in aid of jurisdiction exception of the Anti-Injunction Act permits federal injunctive relief against state court actions where "necessary in aid of [the court's] jurisdiction."[48] Over time, courts have extended this exception beyond its historic *in rem* applications to cases where some federal injunctive relief may be necessary "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."[49] This includes both "multidistrict [] proceedings and

---

[46]    *See* Count IV of TAC, ¶¶ 543-552.

[47]    15 U.S.C. § 78aa (emphasis added).

[48]    28 U.S.C. § 2283.

[49]    *Atl. Coast Line R.R. Co.*, 398 U.S. at 295; *see also Sierra v. City of New York*, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008) (collecting cases).

large class actions."[50] This justification for extending the exception is "based in part on the limited resources of a defendant in a mass tort or securities case and the court's interest in both equitable treatment of plaintiffs and in the possible viability of corporate defendants."[51]

Here, an injunction is necessary to prevent the usurpation of this Court's exclusive jurisdiction over Exchange Act claims and its inherent stewardship over injured class members. On June 24, 2025, after setting out in writing Lead Plaintiff's concerns with the *Malork* settlement (Ex. F.), the undersigned counsel participated in a meet and confer with the *Malork* parties. Gilmore Decl. ¶ 9. During the June 24, 2025 meet and confer, counsel for the DCRB Defendants conceded that they had no interest in reaching a settlement that would wipe out only the state or federal claims. The *Malork* parties further relayed that it was the DCRB Defendants who drafted and/or pushed for the *Malork* Stipulation's overbroad global release. Given these admissions, there can be no doubt that the *Malork* Stipulation's overbroad release was intentionally drafted to "seriously impair the federal court's flexibility and authority to decide" claims within their exclusive jurisdiction through the *Malork* Stipulation's res judicata effect (if entered).[52]

An injunction is also necessary to ensure any settlement of these federal claims receives proper scrutiny, guaranteed rights of the class under Rule 23 and *Grinnell*. As noted above, the *Malork* Stipulation utterly fails federal scrutiny. It provides no discussion of the potential class recovery if plaintiffs had fully prevailed on each of their alleged claims, including what percentage of that potential recovery the proposed settlement represents, and what class members are expected to receive on a per share basis, as required under *Grinnell* factor 8.

---

[50]   *In re Visa Check/Mastermoney Antitrust Litig.*, 2005 WL 2100930, at *3 (E.D.N.Y. Aug. 31, 2005).

[51]   *Id.*

[52]   *Atl. Coast Line R.R. Co.*, 398 U.S. at 295.

Likewise, there is no indication that Malork and his counsel conducted any analysis of the value of the released federal claims, that additional consideration was negotiated for these claims, and whether that amount is within the range of reasonableness. Indeed, it is entirely unclear whether Malork even has statutory standing to pursue certain of the federal claims at issue, including the Section 10b claims. *See National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981) (settling plaintiff generally cannot validly release other class members' claims that they themselves do not possess, for no consideration).

Further, as discussed above, the *Malork* parties provide no examination of Defendants' ability to withstand a higher judgment.

Accordingly, the settlement must be enjoined to ensure class members are given proper federal scrutiny of any release of their federal claims.

### D.    Absent Some Correction, the *Malork* Stipulation Threatens to Confuse, Mislead, and Injure Investors with Claims under Both State and Federal Law.

Absent injunctive relief, the *Malork* Stipulation also risks confusing, misleading, or prejudicing DCRB investors from fully exercising their rights under state and federal law.

Stated simply, neither the Detailed Notice nor the Summary Notice proposed by the *Malork* parties for the proposed state court settlement acknowledges that there is an ongoing federal class action—let alone explains to investors the overlap or differences between the two types of suits. Additionally, neither notice educates investors that they could potentially recover greater damages in this action—let alone amount per share that the *Malork* Stipulation would ultimately distribute to them. Without such information, shareholders cannot be expected to make fully informed decisions, including whether to object to the *Malork* Stipulation's settlement.

In *LendingClub*, the district court, in refusing to enter injunctive relief at the time, still expressed concern about a similarly deficient notice for a state court litigation class (as opposed to

a settlement class terminating claims) and ordered injunctive corrections.[53] Likewise, if this Court contemplates allowing the *Malork* Stipulation to proceed in any form, it should require the *Malork* parties to similarly amend their class notices to fully educate shareholders.

## IV.    CONCLUSION

In light of the above, this Court should enter an injunction that either:

(i)    stops the Delaware Chancery Court from proceeding on the *Malork* Stipulation as written, or

(ii)    orders the *Malork* parties to amend the proposed release of claims to specifically carve out the release of any pending federal securities law claims in this action.

Alternatively, if this Court finds that enjoining the state court proceeding or the *Malork* Stipulation in its entirety is not presently necessary, it should still enter an order that ensures that DCRB investors receive full and fair protection. Among other things, this order should require the *Malork* parties to:

(i)    amend the *Malork* Stipulation to create an opt-out class (rather than a non-opt out class) whereby any member of the putative federal class can opt out of the state law settlement by submitting a notice (either in writing or electronically), and

(ii)    reform their class notices "to inform class members of the parallel actions, the important differences between those actions,"[54] their right to opt out of the state court settlement class, and that their objection to the *Malork* settlement on any grounds will in no way harm their ability to recover in either the state or federal class action.

---

[53]    *LendingClub*, 282 F. Supp. 3d at 1192.

[54]    *See id.* at 1191-92.

DATED: June 27, 2025.                          Respectfully submitted,

/s/ Lucas E. Gilmore
Lucas E. Gilmore (*pro hac vice*)
Reed. R. Kathrein (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Raffi Melanson
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
raffim@hbsslaw.com

*Lead Counsel for Lead Plaintiff Alfred Miller*

Brian J. Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Alfred Miller*

- 21 -