**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *IN RE HYZON MOTORS INC.*<br>*SECURITIES LITIGATION* | Master File No. 6:21-cv-06612-MAV-MWP |
| This document Relates to:<br>ALL ACTIONS | |

**DCRB DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION TO
ENJOIN THE PROPOSED CLASS SETTLEMENT IN THE *MALORK*
<u>CHANCERY COURT ACTION</u>**

## I.  PRELIMINARY STATEMENT

Rather than present his concerns about a related Delaware class action proposed settlement (the "Settlement") to the Delaware Court of Chancery, Plaintiff's Motion to Enjoin seeks an All Writs Act injunction to collaterally stop the Settlement in its tracks out of fear that its release may extinguish claims Plaintiff imported from that action.  Plaintiff cites no authority granting such extraordinary relief in similar circumstances.  Indeed, Plaintiff persists with his Motion despite the recent dismissal of his federal version of the claims—meaning that his Motion seeks to sidestep principles of federal comity and the Anti-Injunction Act to protect claims *already determined to be inactionable* rather than live claims in an advanced federal proceeding or settlement.

The Delaware Settlement would resolve claims asserting that the directors and sponsor entities of Decarbonization Plus Acquisition Corporation ("DCRB") breached their fiduciary duties by making misstatements that impaired DCRB stockholders' right to redeem their shares in the leadup to DCRB's July 16, 2021 "de-SPAC" business combination (the "Merger") with Hyzon Motors, Inc. ("Hyzon").  The Settlement accordingly would release the precise claims asserted against the DCRB Defendants relating to "the impairment of the redemption rights" of DCRB

stockholders, but no other claims or theories in this action, including any claims at all against the Hyzon defendants, who are excluded from the release. As is customary in Delaware class settlements, the Delaware court has preliminarily certified a non-opt-out class (given the equitable nature of the court and the claim), approved the form of a class notice, scheduled a fairness hearing for October 3, 2025, and invited class members to submit objections before then.

Plaintiff clearly does not like the Settlement because he copied the Delaware "impairment" theory and added the DCRB Defendants in his *third* amended complaint, albeit in the form of his now-dismissed claim under Section 14(a) of the Securities Exchange Act of 1934. Plaintiff nonetheless still hopes to recover on behalf of the same class members, against the same defendants, based on the same alleged misstatements, and under the same "impaired redemption" theory of harm. So he has contrived criticisms of the Settlement—that its value is inadequate and the class notice deficient—but his attempt to present those criticisms here instead of in Delaware is contrary to the All Writs Act, the Anti-Injunction Act, and the fundamental principles of federalism and judicial comity which those acts reflect, particularly given the dismissal of his federal analogue. The Motion should be denied for several reasons:

*First*, Plaintiff's request that this Court enjoin state court proceedings runs squarely into the federal Anti-Injunction Act's ***absolute*** ban on federal injunctions of state court suits absent a recognized exception. The Supreme Court has consistently cautioned that principles of federalism and judicial comity require that exceptions be construed narrowly and that any doubt about an exception's applicability be resolved in favor of allowing the state action to proceed. Neither of the two exceptions Plaintiff invokes apply. The "authorized by Act of Congress" exception applies only where a federal right "could be given its intended scope only by the stay of a state court proceeding," which is not the case here since state courts are fully empowered to release federal

claims, regularly do so, and the Settlement covers only the parties and theories originating in that action and not the Hyzon defendants or other theories here. Indeed, the only "outlier" case Plaintiff cites enjoining a parallel state law suit under this exception involved a plaintiff who was denied lead plaintiff status in a federal securities action and then attempted to quickly settle the same claim in state court—a far cry from seeking protection for already dismissed federal claims. And the "in aid of its jurisdiction" exception does not apply because the Second Circuit has generally reserved it for *in rem* actions, not *in personam* actions like this one.

It is accordingly of no moment that Plaintiff has asserted his copycat version of the "impairment" theory under an exclusively federal securities statute and PSLRA lead plaintiff protocols. Parallel overlapping federal and state class actions (including numerous Delaware actions and settlements) are commonplace and federal courts have repeatedly denied the relief Plaintiff seeks. Nor is the analysis changed by the Court's authorization that Plaintiff may *move* for leave to amend, as that lifeline focused on the SEC action against only Hyzon-related parties that did not suggest wrongdoing by any DCRB Defendant.

*Second*, Plaintiff's argument that the *Delaware* settlement fails to meet *federal* fairness and notice requirements is a red herring. The fairness and adequacy of the Delaware Settlement is a matter for the Delaware court governed by Delaware law, although the two regimes are comparable and the dismissal of Plaintiff's federal version of the "redemption impairment" theory completely undermines his contention that the mediated Settlement is undervalued.

*Lastly,* to obtain a permanent injunction Plaintiff must in all events show that he lacks an adequate remedy at law and that an injunction would not be against the public interest. The Motion cannot meet that burden since his federal claims do not even currently exist and he has recourse in Delaware, where any challenge to the Settlement and release should be heard. An injunction would

be contrary to principles of judicial comity, waste judicial resources on Plaintiff's collateral attack here and others that would follow it, and undermine the efficiency of state court proceedings.

The Motion should be denied and the Court of Chancery should be permitted to proceed with its orderly administration of the Settlement in the Delaware action.

## II. BACKGROUND

A. <u>Plaintiff files a Section 10(b) action seeking damages for post-Merger stock drops.</u>

Various plaintiffs filed federal securities lawsuits against Hyzon and present/former directors and officers of Hyzon and DCRB in the fall of 2021 following negative allegations in short seller reports. *E.g.*, ECF No. 1. Among these, Lead Plaintiff Alfred Miller filed his initial complaint in this Court on November 15, 2021, asserting claims under Sections 10(b) and 20(a) of the Exchange Act and naming as defendants only Hyzon, Craig Knight (Hyzon's former CEO), Mark Gordon (Hyzon's former CFO), Erik Anderson (a Hyzon director and former DCRB director and CEO), Peter Haskopoulos (DCRB's former CFO). *See Miller v. Hyzon Motors*, 6:21-cv-06695, ECF No. 1. On December 14, 2021, the Court appointed Plaintiff as Lead Plaintiff, ECF No. 22, and he filed his consolidated complaint on March 21, 2022. ECF No. 34 (the "ICC"). The ICC also only asserted claims under Sections 10(b) and 20(a) and added Robert Tichio (DCRB's former Chairman) as a defendant. *Id.*

In the ICC, Plaintiff sought to represent a proposed class of purchasers of Hyzon (f/k/a DCRB) stock "during the period from February 9, 2021 to January 12, 2022" who "were damaged thereby." *Id.* at 1, ¶¶ 196-242, 292. The ICC did not mention or base any claims on pre-merger "redemption rights." Instead, it alleged that purported class members suffered loss months *after the Merger* closed on July 16, 2021, when "the truth ultimately emerged" about the alleged misstatements and "[t]he Company's stock fell hard." *Id.* ¶¶ 16; 121-22.

B.  Malork files Delaware state-court action alleging impairment of redemption rights.

On March 18, 2022, John E. Malork filed an action in the Delaware Court of Chancery (the "*Malork* Action") asserting breach of fiduciary duty claims against the *Malork* DCRB Defendants.[1]  Crough Dec., Ex. 1 (the "*Malork* Complaint").  Malork brought his claims on behalf of "all holders of Decarb common stock who held stock prior to the July 13, 2021 redemption deadline and were entitled to elect to redeem their shares but did not" do so.  *Id*. ¶ 99.  The *Malork* Complaint alleged that class members' "Redemption Rights were unlawfully impaired" when "materially false and misleading statements deprived the Class . . . of their right to a fully informed decision whether to redeem their shares" in advance of the Merger.  *Id*. ¶¶ 4, 98-99.  Malork sought monetary damages or, in the alternative, that the court "equitably reopen the redemption window to allow [stockholders] to exchange their Decarb Class A shares for $10 per share, plus interest."  *Id*. ¶ 16.  Between March 2022 and April of 2023, the parties in the *Malork* Action engaged in voluminous briefing on dismissal motions.[2]

C.  Lead Plaintiff amends his complaint to piggyback on the Delaware claims.

Only in the Third Amended Complaint (ECF No. 67, "TAC")—filed months after the completion of motion to dismiss briefing in the *Malork* Action and over a year after the *Malork* Action was filed—did Plaintiff:

- add the *Malork* DCRB Defendants Aaker, Kearns, Lapeyre, Leuschen, McDermott, Tepper, Warren, Riverstone, Sponsor, and WRG as parties and a Section 14(a) claim, TAC ¶¶ 48-59;

---

[1] The *Malork* DCRB Defendants are Anderson, Tichio, Jennifer Aaker, Jane Kearns, Pierre Lapeyre, Jr., David Leuschen, Jim McDermott, Jeffrey Tepper, Michael Warren (together, the "DCRB Directors"), Riverstone Investment Group LLC ("Riverstone"), WRG DCRB Investors, LLC ("WRG"), Decarbonization Plus Acquisition Sponsor, LLC ("Sponsor").

[2] In total, the parties submitted 382 pages of dismissal briefing, 25 exhibits, and supplemental briefing at the request of the Court of Chancery.  Crough Dec., Ex. 2, *Malork* Docket (the "Del. Docket"), Nos. 34, 51, 57, 64, 82-103.

- amend his putative class to include for the first time "all former shareholders of [DCRB] who held DCRB securities as of June 1, 2021 [the record date for voting on the SPAC Merger], were entitled to vote with respect to the SPAC Merger, and were damaged thereby," TAC ¶ 508; and

- add for the first time allegations that "Lead Plaintiff and members of the Class . . . were caused to not exercise their redemption rights" and suffered harm thereby.  Thus, the theory of harm—like the list of defendants—was lifted nearly verbatim from the *Malork* Complaint.  *Compare* TAC ¶ 551 ("Lead Plaintiff and members of the Class . . . were caused to not exercise their redemption rights.") with *Malork* Am. Compl. ¶ 150 ("As a result, Plaintiff and the Class were harmed when, . . . they did not exercise their Redemption Rights prior to the Merger.").

D.  The *Malork* Action proceeds and is settled.

On July 17, 2023, the Court of Chancery denied the motion to dismiss the *Malork* Action. Crough Dec., Ex. 2, Del. Docket No. 111.  Over the ensuing year, the Delaware parties engaged in substantial fact discovery, including serving and responding to requests for production, interrogatories, supplements to those interrogatories, and third-party discovery.  *Id.* Nos. 113, 118-19, 129-30, 138, 174, 199-201, 203, 209.  Ultimately, the parties produced over 20,000 documents from a collection of over 100,000 reviewed documents.  *Id.* No. 201.

On July 31, 2024, Malork and the *Malork* DCRB Defendants reached a mediated settlement-in-principle, as referenced in subsequent public filings including a briefing stipulation on September 6, 2024.  *Id.* Nos. 237, 248, 265.  On June 16, 2025, definitive settlement documentation was filed with the Delaware court.  Crough Dec., Ex. 3, Stipulation and Agreement of Compromise and Settlement; Crough Dec., Ex. 4, Notice of Pendency and Proposed Settlement of Stockholder Class Action, Settlement Hearing, and Right to Appear (the "Notice").  The documentation reflected standard terms and procedures in settlements of Delaware SPAC litigation, and it called for an $8.8 million settlement fund in exchange for a release of the "Released Plaintiff's Claims," defined as:

"Released Plaintiff's Claims" means, as against the Released Defendant Parties, to the fullest extent authorized by Delaware law, any and all manner of

claims . . . whether based on state, local, federal, foreign, statutory, regulatory, or common law or equity or otherwise, that (a) Plaintiff or any other member of the Class individually or on behalf of the Class: (i) alleged, asserted, set forth, or claimed against the Released Defendant Parties in the Action or in any other action in any other court, tribunal, proceeding, or other forum, or (ii) could have alleged, asserted, set forth, or claimed against the Released Defendant Parties in the Action or in any other action in any other court, tribunal, proceeding, or other forum; and (b) **that are based upon**, arise out of, or relate in any way to **the impairment of the redemption rights** of any Decarb Class A stockholder.

Ex. 3, Settlement, 17-18 (the "Release") (emphasis added).  The "Released Defendant Parties" are the *Malork* DCRB Defendants and certain related entities, but expressly exclude the Hyzon defendants in this action including Knight, Gordon, and Gu.[3]  *Id.* 1-2, 14.

Two days later, on June 18, 2025, Plaintiff's counsel sent counsel in the *Malork* Action a letter stating that they were "concerned" about the "broad release" in the Settlement and requesting to meet and confer.  *See* Crough Dec., Ex. 5.  Plaintiff did not register any concerns with the Delaware court, which entered a Scheduling Order on June 25, 2025, setting a hearing to consider the Settlement for October 3, 2025 and providing interim procedures.  Crough Dec., Ex. 6.  The Order approved the form of notice and directed that it be distributed to prospective settlement class members by July 17, 2025 (*id.* ¶¶ 7-8), established a procedure for members of the settlement class to appear and object, (*id.* ¶ 15), and set a schedule for any objections.  *Id.*

    E.   Plaintiff files this Motion despite his forthcoming opportunity to object in Delaware.

On June 27, 2025, Plaintiff filed his "emergency" Motion in this Court seeking to enjoin the Delaware court's consideration of the Settlement.  ECF Nos. 110, 111.  The Motion requests

---

[3] As standard in these settlements, the definition extended to the *Malork* DCRB Defendants' "current and former parent entities, affiliates, subsidiaries . . ., directors, officers, employees, employers, controlling persons, owners, members, principals, managers, partners, limited partners, general partners, stockholders, representatives, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, agents, heirs, executors, trustees, personal representatives, estates, administrators, insurers, and reinsurers . . ., and their respective predecessors, successors, or assigns."  Crough Dec., Ex. 3, Settlement, 16-17.

the extraordinary relief that this Court specifically enjoin the Delaware Court of Chancery "from procedurally advancing the *Malork* [Settlement]," requiring it to "withdraw its scheduling order for the proposed [S]ettlement," and "stay any deadlines or events related to the proposed [S]ettlement." *Id.* On July 11, 2025, the Court deferred Defendants' response in light of a forthcoming decision on Defendants' Motions to Dismiss. ECF No. 118.

F. The Court dismisses all claims as to the DCRB Defendants.

On July 14, 2025, the Court rendered its decision on Defendants' Motions to Dismiss, dismissing all claims against the DCRB Defendants, including Plaintiff's Section 14(a) "redemption impairment" theory. ECF No. 119. The Court noted that, while "reluctant to allow Plaintiff a further opportunity to amend his complaint," it granted Plaintiff leave to *move* to amend "to incorporate any further details that emerged in the SEC action." *Id.* at 62. Notably, the SEC action does not name any of the DCRB Defendants, and does not allege any wrongdoing by any DCRB Defendant. *See* ECF No. 97 at 1, 8. Plaintiff nonetheless refuses to withdraw this Motion.[4]

## III.  LEGAL STANDARD

The All Writs Act and the Anti-Injunction Act specify the very narrow circumstances in which a federal court may enjoin pending litigation in state court. The All Writs Act provides that federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, the Anti-Injunction Act strictly limits this authority, providing that a federal court "may not grant an injunction to stay proceedings in a State court except as authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

---

[4] Plaintiff's counsel defended his persistence in pressing the Motion by contending it is not moot because "the Court's [dismissal] order provides a roadmap and grants Lead Plaintiff leave to move to amend the complaint." Crough Dec., Ex. 7.

Thus, the Anti-Injunction Act "imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions." *Mitchum v. Foster*, 407 U.S. 225, 228-29 (1972).

The Supreme Court has long counseled that "since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions ***should not be enlarged by loose statutory construction.***" *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970) (emphasis added); *see also Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) ("[T]he exceptions are narrow . . . ."). Instead, "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Atl. Coast Line*, 398 U.S. at 287. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297.

Further, beyond meeting an exception under the Anti-Injunction Act, to obtain a permanent injunction Plaintiff must show:

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Superb Motors Inc. v. Deo*, 2025 WL 888464, at *47 (E.D.N.Y. Mar. 21, 2025).[5]  Plaintiff must also "succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Id.*

---

[5] *See New Falls Corp. v. Soni Holdings, LLC*, 2022 WL 20058522, at *2 (E.D.N.Y. Sept. 13, 2022); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005) ("An injunction under the All Writs Act invokes the equitable power of the court; thus, as is similarly the case for traditional

## IV.  ARGUMENT

The Court should deny Plaintiff's extraordinary request to block the Delaware court's administration and consideration of the proposed Settlement.  This request runs counter to strong presumptions under federal law and traditional notions of judicial comity—in addition to upending the traditional process of appearing and objecting in the court where a settlement is pending. Plaintiff cannot overcome these presumptions, explain away the myriad of state class action settlements that overlap with and release federal claims, or justify a deviation from normal objection procedure, particularly to protect claims that have been dismissed on their merits.

A.  No exception to the Anti-Injunction Act's absolute ban applies.

Plaintiff has not satisfied either of the two exceptions he invokes to circumvent the Anti-Injunction Act's absolute ban.  The first exception has been applied in the way Plaintiff wants in only one "outlier" case, where a disgruntled federal plaintiff was denied lead plaintiff status and then attempted to effect a quick settlement of the same claims in state court.  And Plaintiff does not point to any cases where the second exception was successfully invoked in a situation like this one, no doubt because such an application is contrary to decades of settled law.  Moreover, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line*, 398 U.S. at 297.

i.  Exception #1:  Plaintiff does not establish that an injunction may issue because it has been "expressly authorized by Act of Congress."

The first exception asks "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, ***could be given its intended scope only*** by the stay

---

injunctions, a court may not issue an injunction under the All Writs Act if adequate remedies at law are available.").

of a state court proceeding." *Mitchum*, 407 U.S. at 297 (emphasis added). Plaintiff argues this exception applies because the PSLRA codifies a federal right for lead plaintiffs to "monitor, manage and control the [federal] litigation," which he contends cannot be given its intended scope if state court plaintiffs "can usurp the putative federal class's claims." Mot. at 12. But an injunction is improper under the first exception for three reasons. *First*, the case law is clear that an injunction is inappropriate in all but the most extreme circumstances, not present here. *Second*, Plaintiff's interpretation "would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099-100 (9th Cir. 2008). *Third*, Plaintiff's rights under the PSLRA are protected both by the proper Delaware channels for challenging a proposed settlement and by the non-"impairment" aspects of this case which are not implicated by the settlement.

a.    Courts routinely deny injunctions on similar facts.

Federal courts routinely deny requests to enjoin state actions to protect purported PSLRA rights, including in many cases cited by Plaintiff himself. *See* Mot. at 15-16. These authorities confirm that, absent egregious facts not present here, "the state action does not so threaten the integrity of the PSLRA that failing to enjoin it would amount to an abrogation of a Congressional mandate." *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1190 (N.D. Cal. 2017).

For example, in *In re Lendingclub Sec. Litig.*, a consolidated federal securities action and a state-court class action were proceeding in tandem and asserting overlapping claims related to an allegedly misleading registration statement. *Id.* at 1177. The lead plaintiff in the federal action sought an injunction, arguing like Plaintiff here that the PSLRA could not be given its intended scope unless the lead federal plaintiff was able to control the proceedings. *Id.* at 1190. In denying that request, the court noted that the state court had certified a class, discovery was advanced, and

-11-

there was no suggestion of gamesmanship by the state plaintiff or his counsel. *Id.* Here, too, the *Malork* plaintiff overcame a motion to dismiss, decided on voluminous briefing, and only reached the proposed Settlement through arm's length mediation after a year of fact discovery.

Similarly, in *In re Tezos Sec. Litig.*, the court rejected plaintiff's motion to enjoin a parallel state court proceeding where consolidated federal actions challenged the same Initial Coin Offering as a state court action. 2018 WL 2387845, at *2 (N.D. Cal. May 25, 2018). The federal lead plaintiff sought an injunction based on the PSLRA's "uniquely federal right" for him to control the litigation. *Id.* The court noted that the state action was filed before the federal action and so cannot be characterized as "trying to piggy back on or disrupt an earlier filed federal action," and that the allegations of bad faith and misconduct did not rise to a level that would justify the injunction. *Id.* at *3-4. The only "piggybacking" here is Plaintiff's belated effort to copy the "impairment" theory from the *Malork* Action—not the other way around.

In *Haase v. Gunnallen Fin., Inc.*, a PSLRA plaintiff likewise sought to enjoin a state-court assignment for the benefit of creditors arguing that the PSLRA created a federal "right to steer the litigation" of the lead plaintiff in the federal action. 2009 WL 2476099, at *2 (E.D. Mich. Aug. 11, 2009). The federal plaintiff's request was presumably animated by concern that the assignment proceeding would extinguish claims and the plaintiff argued that the state proceeding would allow the "alleged tortfeasors to circumvent the jurisdiction of" the federal court. *Id.* The *Haase* court rejected that argument and declined to enjoin the state court proceeding. *Id.* at *4.

These authorities overwhelmingly demonstrate that injunction of state court proceedings to protect purported PSLRA rights are disfavored and require far stronger facts than those here.

-12-

b. Plaintiff's sole authority is inapposite.

Disregarding this long line of authority respecting parallel state proceedings, Plaintiff points to only one decision that enjoined a state proceeding to protect a federal PSLRA claim, *In re BankAmerica Corp. Sec. Litig.*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001). But that case is an outlier frequently distinguished by district courts denying the same type of relief—including two of the courts discussed above.[6]

In *BankAmerica*, a law firm filed simultaneous class actions in federal and California state courts, but then dismissed the federal case and attempted a fast state court settlement once it became clear the firm's client would not become federal lead plaintiff. *Id.* at 1046. The federal court explained the case illustrated a "blatant attempt at forum shopping" by a law firm who did "not have the best interests of the class at heart" and was "wholly inadequate to control the conduct of th[e] suit," evidenced by their hasty attempt at settlement discussions before any real discovery. *Id.* at 1050. The court called the conduct "outrageous" and found an injunction necessary to preserve the federal lead plaintiff's rights. *Id.*

Those circumstances bear no resemblance to this matter. First, the only attempt to usurp the "impairment" theory has been by Plaintiff. Second, the *Malork* plaintiff did not engage in attempts at a hasty settlement to try to cut the line—he asserted his claim first in time, never sought a lead role in this federal action, and has undergone motion practice, voluminous briefing, and substantial fact and written discovery. Indeed, at this point no federal claims against the DCRB Defendants even exist, much less ones embodied in an advanced federal action or settlement. In

---

[6] *See Lendingclub*, 282 F. Supp. 3d at 1190 ("Only one court . . . has found an express right to enjoin a state court proceeding based on the PSLRA," and that case was enjoined due to "woefully inadequate representation in the state action" by attorneys who engaged in "precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent."); *Tezos*, 2018 WL 2387845, at *3 ("As in *LendingClub* and *Primo*, and unlike in *BankAmerica*, the circumstances here do not justify an injunction.").

any event, a fairness inquiry will be undertaken by the Delaware court. *See In re AMC Entm't Holdings, Inc. S'holder Litig.*, 2023 WL 5165606, at \*7 (Del. Ch. Aug. 11, 2023), *aff'd sub nom. In re AMC Entm't Holdings, Inc.*, 319 A.3d 310 (Del. 2024).

c.    <u>The pending Settlement does not justify an injunction.</u>

Pointing to an "imminent" settlement in Delaware cannot justify Plaintiff's injunction request. Mot. at 15-16. Plaintiff's citation to *Negrete* does not save him, because the Ninth Circuit there reversed an order which operated as an injunction against plaintiff engaging in settlement negotiations in other federal or state court parallel actions, finding that plaintiff's argument "would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction." *Negrete*, 523 F.3d at 1099-100. The Ninth Circuit held that this error was "exacerbated" by its applicability to state court proceedings, noting that the Anti-Injunction Act "is not a minor revetment to be easily overcome; it is a fortress which may only be penetrated through the portals that Congress has made available." *Id.* at 1100.

In the end, Plaintiff points to no authority holding that an impending state settlement justifies an injunction to protect an ongoing federal parallel action. It is one thing for a federal court to enjoin a state court action that threatens an imminent complex settlement in the federal action. *See Lendingclub*, 282 F. Supp. 3d at 1191 ("The only circumstance in which federal courts typically enjoin their state counterparts . . . is when a final disposition of a complex litigation is imminent, and injunction of the state action is necessary to effectuate the settlement or judgment."). It is another for a federal court to enjoin a state court from effectuating its own final disposition where the parallel federal action is merely in progress or, *a fortiori*, the relevant parallel claims as here have been dismissed. The mere fact that a state court settlement is on the table does

not justify an injunction.  *See Primo v. Pac. Biosciences of Cal., Inc.*, 2013 WL 4482739, at *1 (N.D. Cal. Aug. 20, 2013) (denying plaintiffs' motion to enjoin a parallel state court action wherein the state court had preliminarily approved a settlement and it was set for a final hearing).

Moreover, Plaintiff acknowledges that even when federal courts weigh the prospect of state court settlement, they ask whether the state court "threatens to dispose of all claims on behalf of all class members" in a federal suit.  Mot. at 16 (quoting *Lendingclub*, 282 F. Supp. 3d at 1190).  But Plaintiff fails to meet his own test.  The Settlement does not purport to "release[] all federal claims," nor would it.  Mot. at 16.  As the Motion elsewhere acknowledges, the release applies only to the DCRB Defendants and extends only to the Delaware claims "that are based upon, arise out of, or relate in any way to ***the impairment of the redemption rights*** of any Decarb Class A stockholder."  Mot. at 8 (quoting the Settlement at 17-18) (emphasis omitted).  Plaintiff does not suggest that if the Settlement is approved he would have to dismiss this action—that is because even with the Settlement, his central claims continue.

Plaintiff's TAC, motion to dismiss briefing, and this Motion all make clear that he is only relying on an "impaired redemption" theory with respect to his belated Section 14(a) claim, not his Section 10(b) claims which are therefore not impacted.[7]  Indeed, Plaintiff's proposed Section 10(b) class extends to many stockholders who did not have any redemption right at all, since the proposed Section 10(b) class includes "all those who [] purchased Hyzon Motors Inc. f/k/a

---

[7] *See* TAC ¶¶ 551-52, 559 (alleging only that alleged misstatements "caused [DCRB stockholders] to not exercise their redemption rights" as part of Plaintiff's ***Section 14(a)*** claim and the companion Section 20(a) claim based on Section 14(a) primary violations); ECF No. 96 at 67 (Plaintiff's Response to Motions to Dismiss) ("The Complaint's ***Section 14(a)*** claims are based on Defendants' deprivation of investors' redemption rights and are thus "direct," not derivative." (emphasis added)); ECF No. 110 (Motion to Enjoin) ("Lead Plaintiff claims that, in engaging in the above-described conduct prior to the merger vote, the DCRB Defendants impeded Lead Plaintiff and the putative federal class . . . from exercising their right to redeem their pro rata investment interest in the SPAC ("Redemption Rights"), ***in violation of Section 14 of the Exchange Act and SEC Rule 14a-9 (promulgated thereunder)***." (emphasis added)).

Decarbonization Plus Acquisition Corporation's [] securities during the period of February 9, 2021 to August 17, 2022," (TAC ¶ 508), including many purchasers after the July 13, 2021 redemption deadline.  Crough Dec., Ex. 8, Proxy at 8.

Further, not all holders of DCRB securities even had redemption rights as of the redemption deadline.  Investors in the private placement in public equity ("PIPE") could not have had their redemption decision impaired, as PIPE investors did not have redemption rights.  *See id.* at 18 (noting that finalization of PIPE was contingent on consummation of Merger).  Likewise, holders of DCRB warrants also did not have redemption rights.  *Id.* at 9.  By contrast, Plaintiff defines his Section 14(a) class as "former shareholders of DCRB who held DCRB securities as of June 1, 2021 and were entitled to vote with respect to the Merger."  TAC ¶ 508.  Thus, despite Plaintiff's vague and unspecified concerns about the Section 10(b) claims, (Mot. at 15 n.42, 17), Plaintiff does not suggest that these claims are based on the TAC's belated impairment theory.

Even as to the TAC's Section 14(a) claims, Plaintiff never states that without the ability to make a claim based on an impairment of a redemption right his claims would fail.  For one thing, Plaintiff also asserts his Section 14(a) claims against Hyzon, Knight, Gordon, and Gu, who are excluded from the Delaware Release.  *See* TAC ¶¶ 548-49.  More generally, to the extent Plaintiff's 14(a) claims are revived, nothing forecloses Plaintiff from trying to demonstrate in due course how his Section 14(a) claims raise distinct non-impairment theories based on alleged deficiencies in the proxy solicitation materials.

Thus, the pending Settlement, even if marginally relevant to the analysis, carries less weight because it only impacts a subset of Plaintiff's claims.

d.  <u>Plaintiff's rights are already protected by the Delaware court.</u>

An injunction is also unwarranted because Plaintiff's PSLRA rights are protected through the proper Delaware channels.  Even when the concurrent proceeding is in another federal court, rendering the Anti-Injunction Act inapplicable, "[a]n injunction under the All Writs Act invokes the equitable power of the court; thus, as is similarly the case for traditional injunctions, a court may not issue an injunction under the All Writs Act if adequate remedies at law are available.  Generally, if a party will have opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law."  *U.S. Army Corps of Eng'rs*, 424 F.3d at 1132.  Here, the concurrent state proceeding sought to be enjoined adequately protects Plaintiff.  *See Gabelli v. Sikes Corp.*, 1990 WL 213119, at *6 (S.D.N.Y. Dec. 14, 1990) (staying federal court action to allow state settlement to proceed which would release federal securities claims and explaining that the ability to intervene in the state court action "will adequately protect the rights of the plaintiff who seeks to invoke federal jurisdiction").

In *BankAmerica*, the court noted that, because "[n]o class has ever been certified that might include the federal plaintiffs," "they were not in a position to seek appellate review" of the decisions in the state court action.  95 F. Supp. 2d at 1052.  Here, by contrast, Plaintiff acknowledges that he is part of the class that would be subject to the Settlement (Mot. at 7), and the Scheduling Order provides a timeline and a procedure for class members to submit objections.  Following entry of the Scheduling Order, all potential class members receive notice of the settlement terms, the plan of allocation, and their rights by mail, public dissemination, and a dedicated settlement website.  Crough Dec., Ex. 6, Scheduling Order ¶¶ 7-8.  Any class member can file a written objection up to fourteen days before the scheduled settlement hearing.  *Id.* ¶ 15.  Plaintiff and other class members can properly object and present argument at the settlement

hearing, including on Plaintiff's contention that the settlement undervalues the released claims (despite the dismissal of his federal version of the same claims). *Id.*  There, the Court will consider all timely objections, along with the parties' responses, before determining whether the Settlement, plan of allocation, and any requested attorneys' fees or service awards are fair, reasonable, and adequate. *Id.* ¶¶ 5, 15.  This process is designed to ensure that all class members have a meaningful and orderly opportunity to be heard.

There is no reason Plaintiff must move for this Court to enjoin a state court's consideration of the Settlement, rather than raising his concerns as part of the state court's consideration of the matter.  It is not the case, then, that Plaintiff's PSLRA right can "be given its intended scope *only* by the stay of [the] state court proceeding," and so an injunction is improper.  *See Mitchum*, 407 U.S. at 238 (emphasis added).

> ii.  Exception #2: Plaintiff cannot establish that an injunction is "necessary in aid of jurisdiction."

Alternatively, Plaintiff seeks to invoke the Anti-Injunction Act's "necessary in aid of jurisdiction" exception by arguing that the Settlement would release his Section 14(a) claims against the DCRB Defendants and potentially his Section 10(b) claims against two specific Defendants, and that a state court settlement cannot release those claims because federal courts have exclusive jurisdiction to hear them.  Mot. at 17.  Under the Anti-Injunction Act, the "necessary in aid of jurisdiction" exception applies only "where the effect of [a state court proceeding] would be to defeat or impair the jurisdiction of the federal court," and is "generally reserved for state court actions *in rem,* because the state court's exercise of jurisdiction 'necessarily impairs, and may defeat,' the federal court's jurisdiction over the *res*."  *Wyly v. Weiss*, 697 F.3d 131, 137-38 (2d Cir. 2012).  *In personam* actions, by contrast, involve issues of liability

rather than possession "of a thing" and therefore those actions "do[] not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Id.* at 138.

The Second Circuit has reaffirmed the principle that the "'in aid of jurisdiction' exception generally applies only where necessary to protect a federal court's jurisdiction over a *res*." *United States v. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013). The limited exception is when most of the federal defendants to an *in personam* action have settled already and the rest would shortly. *Wyly*, 697 F.3d at 138 (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985)). In *Baldwin-United*, the Second Circuit "explicitly noted that if 'it should appear that prompt settlement was no longer likely, . . . the situation would fall within the [*Kline* ] rule that *in personam* proceedings in state court cannot be enjoined merely because they are duplicative of actions being heard in federal court.'" *Id.* (citing *Baldwin-United*, 770 F.2d at 338). The Second Circuit has now twice held that when an imminent settlement of the federal court action is not present, *Baldwin-United* is inapplicable and the "necessary in aid of jurisdiction" exception does not apply. *See Schurkman*, 728 F.3d at 138; *Wyly*, 697 F.3d at 139.

Without noting that the Second Circuit has rejected an expansion of the "necessary in aid of jurisdiction" exception outside of an imminent federal court settlement, Plaintiff points out that some courts have expanded the historic application "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case," and argues that preserving the jurisdiction of the federal courts to hear these Exchange Act claims falls within this exception. Mot. at 17 (quoting *Atl. Coast Line*, 398 U.S. at 295). As an initial matter, in this case, no defendant has agreed to settle in the federal action, rendering inapplicable the only circumstance the Second Circuit has indicated that an *in personam* action can be enjoined under the exception. Plaintiff's only two

cases predate the Second Circuit's opinions in *Wyly* and *Schurkman*, and both of the cases he cites deny the requested injunction. *See Sierra v. City of New York*, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008) ("However, even assuming the correctness of this broader interpretation of the 'necessary in aid of . . . jurisdiction' exception, it still would have no applicability to the instant case."); *In re Visa Check/Mastermoney Antitrust Litig.*, 2005 WL 2100930, at \*4 (E.D.N.Y. Aug. 31, 2005) ("[T]he justifications described above for enjoining state court proceedings do not apply here.").

Moreover, Plaintiff ignores decades of federal and state law that state settlements can and often do release exclusively federal claims. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 369 (1996) ("This case presents the question whether a federal court may withhold full faith and credit from a state-court judgment approving a class-action settlement simply because the settlement releases claims *within the exclusive jurisdiction of the federal courts*. The answer is no." (emphasis added)); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("[W]e have recognized the authority of a state court to approve a settlement that releases a claim within the exclusive jurisdiction of the federal courts."); *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 762 (2d Cir. 1968) (explaining that although dismissal of a New York state case would not bar Section 10(b) claims in a federal action on res judicata grounds, "it was within [the state court's] powers over the corporation and the parties to approve the release of [the federal] claim as a condition of settlement of the state action.").[8]

Indeed, federal courts have acknowledged specifically that the Delaware Court of Chancery has the "power to approve a release encompassing federal securities law claims . . . not

---

[8] *See also Marie Raymond Revocable Tr. v. MAT Five LLC*, 980 A.2d 388, 406 (Del. Ch. 2008) ("The Court of Chancery 'may enter a judgment in connection with the settlement of [litigation] that results in the release of both state law claims and exclusively federal claims if the claims arise from the same factual predicate, even if the state court could not dismiss or adjudicate the federal claims.'"); *Matter of Anderson*, 917 F.3d 566, 572-73 (7th Cir. 2019) (confirming that Supreme Court has held that state-law rules of preclusion govern the defense of preclusion in the federal suit even on claims with exclusive federal jurisdiction).

within the subject matter jurisdiction of the Delaware state courts." *Sandler Assocs., L.P. v. Bellsouth Corp.*, 818 F. Supp. 695, 704 (D. Del. 1993), *judgment aff'd*, 26 F.3d 123 (3d Cir. 1994); *see also Gibbons v. Morgan*, 2017 WL 3917041, at *6 (S.D.N.Y. Sept. 6, 2017) ("Plaintiffs argue that the Delaware Judgment cannot preclude the current cause of action because the Delaware Court was without jurisdiction to adjudicate a federal Section 16(b) claim.  But that argument falls flat in light of controlling precedent to the contrary. . . . [U]nder Delaware law, a state court judgment approving a class settlement that releases exclusively federal claims precludes future litigation of those claims arising out of an 'identical factual predicate.'").[9]

    B.  Plaintiff cannot circumvent the Delaware approval process.

There is no reason why Plaintiff cannot present his concerns about the scope of the release and the sufficiency of the class notice to the Delaware court in normal fashion, instead of asking this Court to preempt the Settlement altogether by collateral attack.  As the Supreme Court has explained, "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." *Atl. Coast Line*, 398 U.S. at 287.[10]  Class members have notice and ample opportunity to object to the Settlement.  *See supra* Section IV.A.i.d.  Plaintiff's argument that the Delaware state court Settlement "fails to include critical information that federal

---

[9] *See also Gabelli*, 1990 WL 213119, at *5 ("There is no doubt that the Florida courts have authority to approve the release of federal securities fraud claims even though they lack jurisdiction to adjudicate the claims."); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563-64 (3d Cir. 1994) (affirming summary judgment against plaintiffs after a Delaware non-opt out settlement released Exchange Act claims and holding "as a matter of federal law a state court has the power to enter a settlement negotiated by the parties as a judgment which releases exclusive federal claims that the state court could not itself entertain.").

[10] *See also Grimes*, 17 F.3d at 1561 ("Both Grimes and Holbrook were provided sufficient process by the Delaware court system to challenge the settlement."); *Boothe v. Baker Indus., Inc.*, 262 F. Supp. 168, 175 (D. Del. 1966) ("With full opportunity to appear in New York and demonstrate the inequity, if any there was, of the proposed settlement and judgment to be entered in the Hoffman case, plaintiff chose instead to bring his present action two weeks after notice of the New York hearing had been mailed and five days before the hearing in New York took place.").

courts demand" is both inaccurate and beside the point. Mot. at 1. Delaware's standard aligns with federal law, and the Settlement meets it.

The judicial review of proposed class action settlements is fundamentally similar in federal and Delaware courts. Although Delaware courts do not precisely track the analogous federal factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (the "*Grinnell* factors"), Delaware evaluates whether a settlement is fair, reasonable, and adequate, and in the best interests of the class by reviewing substantially similar considerations of the strength of the claims, the risks and costs of continued litigation, the stage of the proceedings, the reaction of the class, and the quality of the settlement relative to the relief sought. *See Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983); *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1043 (Del. Ch. 2015); *Fins v. Pearlman*, 424 A.2d 305, 308 n.4 (Del. 1980) (citing *Grinnell* for the principle that "[t]he Chancellor needs, when examining a settlement for fairness, sufficient facts to reach a fair and informed decision.").

Plaintiff erroneously suggests that there will be no consideration of "ability to pay risk or difficulty of enforcing a judgement" or the amount the Settlement represents compared to the total potential recovery in litigation. Mot. at 1-2, 9, 18. This ignores substantial Delaware law which engages in exactly that analysis. *Ryan v. Gifford*, 2009 WL 18143, at \*5, \*10 (Del. Ch. Jan. 2, 2009) (determining whether a settlement is fair, reasonable, and adequate based on *e.g.* "the amount of the compromised as compared to the amount and collectability of a judgment"). Similarly, Plaintiff argues the Settlement and Notice are deficient because federal courts are required to "consider 'range of reasonableness of the settlement fund in light of all the attendant risks of litigation'" and because the value of the federal claims are not expressly analyzed. Mot. at 2, 8-9. But here again Delaware courts consider these factors. *See, e.g.*, *Activision*, 124 A.3d

-22-

at 1063-64 (noting the court will "determine whether the settlement falls within a range of results that a reasonable party in the position of the plaintiff" would accept, and "whether the settlement consideration . . . provides adequate consideration for a global release").

Regardless, the Settlement need not meet a federal test.  It is for the Delaware court to determine, under Delaware principles, whether the Settlement meets the relevant requirements. Federal courts may not "employ their own rules . . . in determining the effect of state judgments," but must "accept the rules chosen by the State from which the judgment is taken."  *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481-82 (1982).  Indeed, the United States Supreme Court has suggested that as far as "judicially approved settlement[s]" are concerned, "a *federal* court" may find guidance from "general *state* law," not the other way around as Plaintiff contends.  *See Matsushita*, 516 U.S. at 375-76 (emphasis added).  A settlement approved by the Delaware Court of Chancery constitutes a final judgment entitled to full faith and credit under 28 U.S.C. § 1738. Under *Matsushita* and related Supreme Court precedent, federal courts must give the same preclusive effect to state court judgments as would the courts of that state, even where the judgment is a class action settlement and releases federal claims.  *Matsushita*, 516 U.S. at 373-75.[11]  Thus, any objections to the Settlement, Scheduling Order, or any procedural process must be raised in the Delaware court where the filings have already been preliminarily approved—not through collateral proceedings in federal court.

C.  Plaintiff has not satisfied the test for a permanent injunction.

Beyond Plaintiff's failure to meet either of the above-listed exceptions, Plaintiff also falls short on the requirements for a permanent injunction.  *See* 11A Charles Alan Wright & Arthur R.

---

[11] *See also Grimes*, 17 F.3d at 1562 ("[T]he federal full faith and credit statute can operate to bar the relitigation of issues decided by the state court, even though the state court would not have subject matter jurisdiction to consider the federal claims in the first instance, if state law would give the state court judgment preclusive effect.").

Miller, Fed. Prac. & Proc. Civ. § 2942 (3d ed. 2008) ("[I]t should be noted that even if an injunction against a state proceeding is not barred by Section 2283, the court still may refuse to issue it.").

By definition, the dismissal of the federal claims Plaintiff seeks to protect negates any harm from the Settlement.  But even if those claims are resurrected through a successful motion to amend, Plaintiff cannot establish that he lacks an adequate remedy at law, or that the public interest would not be disserved by a permanent injunction, nor does he even try.  *See Superb Motors*, 2025 WL 888464 at *47.  This is for good reason, as the public interest is squarely with allowing the state court to orderly and timely consider the Settlement.  Intervention would undermine finality and efficiency in state court proceedings and goes against the general "[p]olicies favoring the finality of judgments, judicial economy, and repose for the parties."  *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 642 (2d Cir. 1987).  *See also Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) ("The [Anti-Injunction] Act's purpose is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court.").  Moreover, federal intervention in state court settlements also encourages end-runs around class settlement processes.  The whole point of allowing state court release of exclusively federal claims is "to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action."  *TBK Partners*, 675 F.2d at 460.  If such settlements can be readily second-guessed in federal court injunction proceedings, the motivation to settle would drastically decrease.  *See Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 180 (W.D.N.Y. 2011) ("Broad class action settlements are common, since

defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country.").

Finally, intervention goes against the very principles of comity and federalism the Anti-Injunction Act was enacted to protect. *See Atl. Coast Line*, 398 U.S. at 287 ("[T]he statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts."); *Negrete*, 523 F.3d at 1100 ("[T]he Anti-Injunction Act restriction is based upon considerations of federalism and speaks to a question of high public policy."). Plaintiff's efforts to justify his extraordinary request for this Court to block the Delaware court from conducting a settlement hearing runs contrary to settled law, does not meet either the Anti-Injunction Act or the requirements for a permanent injunction, and defies common sense where the federal claims he seeks to protect have been dismissed.

## V. CONCLUSION

For the foregoing reasons, the DCRB Defendants respectfully request that the Court deny Plaintiff's Motion to Enjoin (ECF No. 110).

/s/ Jeffrey Crough

VINSON & ELKINS LLP

Michael C. Holmes (*pro hac vice*)
Jeffrey Crough (*pro hac vice*)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone:  +1.214.220.7700

Marisa Antonelli
1114 Avenue of the Americas
New York, NY  10036-7708
Telephone:  +1.212.237.0000

*Counsel for Peter Haskopoulos, Robert Tichio, Jennifer Aaker, Jane Kearns, Pierre Lapeyre, David Leuschen, Jim McDermott, Jeffrey Tepper, Michael Warren, Riverstone Investment Group LLC, Decarbonization Plus Acquisition Sponsor, LLC, and WRG DCRB Investors, LLC*

-27-

**CERTIFICATE OF SERVICE**

I, Jeffrey Crough, hereby certify that a copy of this Opposition to Lead Plaintiff's Motion to Enjoin The Proposed Class Settlement In The *Malork* Chancery Court Action was filed on July 21, 2025 with the Clerk of the District Court using its CM/ECF system, which will send copies to all counsel who have appeared in this action and registered with such system.

By: ___/s/ Jeffrey Crough____
      Jeffrey Crough