**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE HYZON MOTORS INC. SECURITIES LITIGATION | Case No. 6:21-cv-06612-MAV-MWP |
| *This Document Relates to:* ALL ACTIONS | **Oral Argument Requested** |

**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENJOIN THE**
**PROPOSED CLASS SETTLEMENT IN THE *MALORK* CHANCERY COURT ACTION**

The DCRB Defendants concede that the PSLRA confers upon lead plaintiffs like Dr. Miller the right to control the course of federal securities litigation. They do not dispute that the proposed settlement in the state court action intends to terminate the class's Section 14(a) claims against DCRB and its Directors—*i.e.*, the very persons who disseminated the misleading proxy materials at issue. Instead, Defendants only claim an injunction is unnecessary, asserting the Delaware Chancery Court, less familiar with this federal litigation, might still uphold Lead Plaintiff's objection. This is nonsense.

Federal intervention is not merely authorized by the All Writs Act; it is necessary to protect the federal class's rights, as Rule 23(e)(2) entitles them to pursue a "fair, reasonable, and adequate" recovery against DCRB, independent of and in addition to Malork's state law claims. To date, Mr. Malork has never subjected himself to a contested, court-resolved process to test his ability to adequately represent class interests. Mr. Malork has never revealed the extent of his likely minimal financial interest. The proposed settlement papers contain no assessment of the released federal claims' value, details of additional consideration negotiated for these released claims, or an evaluation of the reasonableness of that amount, for the Chancery Court to review. And, as Defendants concede, Delaware's settlement regime provides no guarantee that the state court will consider the class protections that would have been applied had (i) Lead Plaintiff spearheaded the negotiations as this Court ordered (ECF No. 22 at 2 ¶2) or (ii) Mr. Malork sought relief in federal court.

In short, the *Malork* parties could have amended their proposed settlement to permit opt outs and exclude the release of the Section 14(a) claim. Their refusal corroborates that the *Malork* parties cheaply sold out the federal class. To protect the putative federal class, the Court should enjoin the *Malork* parties' efforts to undermine the PSLRA.

1

I.    **Despite Defendants' Equivocations, the Proposed *Malork* Settlement Will Terminate the Federal Putative Class's Section 14(a) Claims against DCRB In Their Entirety.**

    A.    **The To-Be-Added SEC Material Establishes a Viable Section 14(a) Claim.**

The DCRB Defendants' argument that the Court should dismiss Lead Plaintiff's concerns due to the MTD Order's dismissal of Section 14(a) claims is misguided. The Court did not dismiss these claims with prejudice; instead, its comprehensive analysis provides guidance, in conjunction with the SEC complaint, for amending the Section 14(a) claims.

Between February 9, 2021 and August 17, 2021, the DCRB Defendants disseminated a series of Investor Presentations—filed as soliciting materials with the SEC pursuant to SEC Rule 14a-12—that accompanied and supplemented the proxy statement seeking shareholder approval of the Hyzon merger. *See* TAC ¶¶ 296-309, 320-26. These Presentations repeated Hyzon had a "2021 backlog of ~$40 million under contract or [Memorandum of Understanding] from blue-chip Fortune 100s and municipalities" ("Revenue and Sales Pipeline Projections"), ¶ 297, when no such 100% certain backlog allegedly existed, ¶ 299. Additionally, these Presentations claimed Hyzon was "***finalizing purchase orders***" from, or were engaged in "***advanced discussions***" with, certain household brands including Heineken, Coca-Cola, and Ikea ("Customer Misstatements"), ¶¶ 168, 298, which, at that time, allegedly had no intent to order Hyzon hydrogen vehicles, ¶ 299.

In the anticipated Fourth Amended Complaint, Lead Plaintiff will include new factual allegations based on the SEC complaint, which fundamentally alter the nature of the previously alleged Section 14(a) claims. *See* ECF No. 95-1 ("SEC Compl."). Specifically, these new allegations confirm that the Investor Presentations falsely stated or misleadingly implied that Hyzon was "finalizing" purchase orders or engaged in "advanced discussions" with well-known customers who, in truth, had not even indicated they would purchase HFCEVs. SEC Compl. ¶¶ 18-23. As the SEC found, several featured blue-chip customers had ***expressly rejected or terminated***

*discussions prior to the proxy solicitation*:

- **Heineken**: Presentations claimed Heineken was "finalizing PO" even though "by at least February 4, 2021, … had informed Hyzon that it could not accept an offer for any FCEV deliveries in 2021 because the deliveries were not included in Company-1's annual budget." SEC Compl.¶ 22 (a).

- **Air Products**: Presentations falsely described "advanced discussions" though "by March 2021, [AirProducts had] informed Hyzon that it had selected a different FCEV supplier." *Id.* ¶ 22 (b).

- **Coca-Cola**: Presentations touted "advanced discussions" despite having only "only introductory meetings." *Id.* ¶ 22 (c).

- **Ikea**: Presentations claimed Hyzon was "finalizing" a $1 million contract even though Ikea "never indicated it intended to purchase FCEVs from Hyzon" and "specifically told Hyzon [in mid-2021] that it would not be moving forward with the project then under discussion. *Id.* ¶ 22 (d).

- **Suppliers**: Presentations falsely stated "key relationships have already been formed" with two suppliers when "Hyzon and these purported suppliers had not even reached the point of negotiating any supply relationship." *Id.* ¶ 23.

Unlike the Presentations' Revenue and Sale Pipeline Projections, which this Court found to be "forward-looking," the newly alleged 14(a) claims concern materially misleading statements of historical or present fact about Hyzon's existing relationships with customers and suppliers. *See, e.g., In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 288 (S.D.N.Y. 2010) (false proxy statements concerning business relationships violate Section 14(a) claim, even if the information was uniquely within the knowledge of the transaction's counterparty). While pled in the TAC (¶¶ 298-99), the Court did not address these statements in its July 14 MTD Order. Unlike vague forecasts or expressions of corporate optimism, these allegations focus on specific, verifiable factual assertions—such as that Hyzon was "finalizing" purchase orders or engaged in "advanced discussions" with blue chip companies—that were objectively false when made. Although risk warnings characterized certain information as forward-looking and cautioned investors not to rely on projections as guarantees,

3

these disclaimers do not immunize materially false statements of present or historical fact. *See In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, at *16 (S.D.N.Y. Mar. 12, 2024). Consequently, the bespeaks caution doctrine does not apply. *Iowa Pub. Emps' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 144 (2d Cir. 2010).

These misstatements were an essential link in soliciting shareholder approval of the merger—as they concerned facts any reasonable shareholder would deem critical in voting for the merger and foregoing their Redemption Rights. *See, e.g., Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*, 2023 WL 4744197, at *4 (S.D.N.Y. July 25, 2023); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 134 (S.D.N.Y. 2020).

The DCRB Defendants acted negligently by repeatedly disseminating documents containing objectively false and misleading statements about the present or historical status of Hyzon's relationships with critical customers and suppliers. These were not mere errors in judgment, but a serious failure to fulfill their duty to investigate and verify the accuracy of key representations central to the proposed merger. As SEC action revealed, Heineken had relayed it would not purchase Hyzon HFCEVs in 2021 before DCRB had concluded "its extensive due diligence" into Hyzon's contracts and customers. TAC ¶ 104. And as late as June 29, 2021—i.e., after Heineken, Ikea, Air Products, and Coca-Cola had all informed Hyzon they would not be ordering vehicles—DCRB's Defendant Tichio was still publicly commenting on Hyzon's "high probability orders" from "companies that ha[d] many times express[ed] indications to scale their truck order." TAC ¶ 139-40. Tichio's comments confirm DCRB had access to the customer information, but negligently continued to advocate for approval of the merger. Accordingly, the putative federal class has valuable Section 14 claims that will be gutted by the *Malork* settlement.

**B.      The Role of the Lead Plaintiff Under the PSLRA Mandates the Adoption and Advancement of All Viable Class Theories that Benefit the Federal Class.**

Congress enacted the PSLRA to place control of federal securities class actions in the hands of the Lead Plaintiff—the class member with the largest financial interest—who, upon appointment, adopts all class allegations, asserts every viable legal theory on behalf of absent class members (even those first alleged elsewhere), and serves as a bulwark against deals that serve defendants' interests at the expense of the class. 15 U.S.C. § 78u-4(a)(3)(B). In doing so, Congress aimed to prevent precisely the problem here: where an unvetted, less-motivated state court plaintiff pursues an inadequate settlement with defendants with an overbroad release that compromises federal claims before the putative class in federal court has the benefit of a lead plaintiff's zealous advocacy and testing of the claims through discovery.

The DCRB Defendants' repeated suggestion that Lead Plaintiff asserted the Section 14(a) claim as an afterthought in response to the *Malork* settlement is false. Lead Plaintiff first asserted the Section 14(a) claim against the DCRB Defendants in June 2023—over a year before the *Malork* plaintiff entered into a confidential settlement of the claims against the DCRB Defendants in September 2024, and nearly two years before the terms of that settlement were publicly disclosed in June 2025. Thus, any suggestion that Lead Plaintiff's pursuit of the Section 14(a) claim is reactive of the *Malork* settlement is without merit. To the contrary, Lead Plaintiffs' adoption and expansion of the redemption right allegations and inclusion of new defendants reflects his fiduciary duty and purpose under the PSLRA—to efficiently and effectively litigate under a single class representative all claims for the benefit of the class.

**II.      The All Writs Act and Anti-Injunction Act Empowers this Court to Enjoin the *Malork* Parties' Attempted End Run Around this Putative Federal Class Action.**

**A.      The PSLRA Expressly Authorizes Federal Courts to Issue Injunctions.**

Defendants do not dispute that the PSLRA confers federally appointed lead plaintiffs with

federal rights and duties to control the course of litigation, which would be frustrated by the proposed settlement's overboard release of federal claims. Mot. at 11-12. They ignore this issue and instead contend that, according to their cited case law, an "injunction is inappropriate in all but the most extreme circumstances," which they erroneously assert are "not present here." Opp. at 11.

But unlike Defendants' cited cases, the case at bar involves *a non-opt-out state court settlement* that is not only *imminent* but agreed to, and scheduled for a final approval hearing. These facts place it closer to *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 803 (8th Cir. 2001), which the court held justified injunctive relief. There, as is the case here, a state court plaintiff who failed to participate in the PSLRA process sought to release pending federal claims, cutting out the federal lead plaintiff and binding absent federal class members through a settlement. The Eighth Circuit affirmed the injunction because allowing that kind of end-run would eviscerate the PSLRA's purpose. That risk is present here, given that the *Malork* settlement seeks to release the same impaired Redemption Rights claims that are central to Plaintiff's Section 14(a) claim.

Defendants' authorities are inapposite. In *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1190 (N.D. Cal. 2017), for example, the class members in the state court lawsuit had the right to opt out, and the court distinguished the facts before it from the circumstances of *BankAmerica*, noting that "*no party ha[d] raised the specter of a settlement*." Likewise, in *In re Tezos Sec. Litig.*, 2018 WL 2387845, at *2-4 (N.D. Cal. May 25, 2018), the state court plaintiff filed his lawsuit before there was any federal action, there was no proposed settlement, and no evidence suggested the state action sought to usurp the federal case.

Here, (i) investors filed the federal action first, (ii) the district court vetted Lead Plaintiff and his counsel and duly appointed them to control settlement discussions, (iii) the state plaintiff

6

did not seek lead status and has never disclosed his financial interest, and (iv) there is an imminent, fully executed settlement—negotiated without Lead Plaintiffs' involvement—that seeks to release the federal class's claims without any opportunity to opt out.

The only case Defendants cite that involves a pending state court settlement is *Primo v. Pac. Biosciences of California, Inc.*, 2013 WL 4482739, at *3 (N.D. Cal. Aug. 20, 2013), but even that decision underscores the need for an injunction here. In *Primo*, the federal court declined to enjoin a state settlement because (1) the state plaintiffs filed first their action before commencement of any federal litigation; (2) opt-out rights were available; and (3) the state plaintiffs owned substantially more stock than the federal plaintiffs. None of those factors is present here.

Defendants also confusingly cite *Haase v. Gunnallen Fin., Inc.*, which involved a creditor assignment proceeding, not a competing class settlement. *See* 2009 WL 2476099, at *1–3 (E.D. Mich. Aug. 11, 2009). There were no overlapping claims and no conflict between courts over who could resolve class members' federal rights.

Further, Defendants' cases[1] each involved state court actions asserting claims under the Securities Act of 1933, which expressly provides for ***concurrent jurisdiction*** in state and federal courts. *See* 15 U.S.C. § 77v(a).  In that context, it is unsurprising that courts declined to enjoin state proceedings, especially where the state plaintiffs had filed first and were litigating claims within the jurisdictional bounds Congress established. This case is categorically different. Lead Plaintiff's Section 14(a) claim arises under the Securities Exchange Act of 1934, for which

---

[1] *Cf. In re LendingClub Sec. Litig.*, 282 F. Supp. 3d at 1176 (state lawsuit alleged violations of Securities Act sections 11, 15, and 12); *Primo*, 2013 WL 4482739, at *1 (same); Exhibit A of Not. of Removal, ECF No. 1-1 at 5-25, *Baker v. Dynamic Ledger Sols., Inc.*, Case No. 3:17-cv-6850 (N.D. Cal. Nov. 29, 2017) (Securities Act sections 5 and 17).

Congress granted *exclusive federal jurisdiction*. *See* 15 U.S.C. § 78aa(a).

Defendants have gone to state court to seek a release of those claims. Taken together, Defendants' cases at best demonstrate the outer boundaries of federal courts' deference to parallel state proceedings where Congress has provided concurrent jurisdiction. They do not establish that district courts must stand down when a state settlement is on the brink of approving a contested, non-opt-out release of federal securities claims over which this Court has exclusive jurisdiction. For that, *BankAmerica* remains the most persuasive authority.

**B.      This Court May Enjoin the *Malork* Settlement "In Aid of Its Jurisdiction"**

In contesting the "in aid of its jurisdiction" exception to the Anti-Injunction Act, Defendants misstate the rule and repeatedly downplay the threat this settlement poses to the Court's ability to adjudicate claims over which is has exclusive jurisdiction. Contrary to Defendants' suggestion, the "in aid of jurisdiction" exception is not limited to traditional *in rem* proceedings. Courts have applied the exception where, like here, a state court judgment "could have res judicata effect" that would "threaten[] the federal court's exclusive jurisdiction[.]" *Winchester v. Fla. Farm Bureau Equities Inc.*, 427 F. App'x 833, 837 (11th Cir. 2011). That is particularly true in the PSLRA context, where Congress gave federal courts the responsibility to appoint a Lead Plaintiff and protect absent class members' rights through Rule 23(e). A state court settlement negotiated without participation of the Lead Plaintiff, and which purports to release exclusively federal claims without opt-out rights, directly undermines the federal court's control over its case and its class.

Though Defendants note that "some state settlements can and often do release exclusively federal claims,"[2] none of their cases suggests that "a federal court must stand idly by while parallel

---

[2]    Opp. at 20 (citing *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 369 (1996)).

state court proceedings are used to frustrate an important federal right." *BankAmerica Corp. Sec. Litig.*, 263 F.3d at 803.

Defendants' invocations of comity and parallel jurisdiction are similarly beside the point. The *Malork* parties purposefully crafted their settlement to short-circuit this federal court's management of the case. Without an injunction, the Court's ability to control its docket, protect the class, and enforce federal securities laws will be compromised. Inaction will encourage litigants to pursue similar race-to-the-bottom settlement strategies that the PSLRA sought to prevent.

### III.    An Injunction is Necessary Here to Protect the Class's Rights

#### A.    The Delaware Court Cannot Protect the Federal Rights at Stake Here

The *Malork* settlement threatens to dispose of an entire class of claims relating to pre-merger statements. Downplaying this threat, Defendants contend that Lead Plaintiff has sufficient recourse because he can object to the *Malork* settlement in Chancery Court. Opp. at 2-3, 17, 21-23. The relevant question, however, is not simply whether the proposed settlement is fair under ***Delaware*** law, but whether it unfairly extinguishes ***federal*** claims governed by the PSLRA and Rule 23, that are pending in a federal court that has exclusive jurisdiction to adjudicate them. Defendants "fail[] to explain how the federal plaintiffs could ensure that the state court would accord them the full scope of rights bound up in the PSLRA's lead-plaintiff provisions." *BankAmerica Corp*, 263 F.3d at 803 (8th Cir. 2001).

Nor can Defendants credibly assert that class members' rights will be protected through the Delaware notice process. In notifying the putative state court settlement class of their rights, the *Malork* parties omitted basic information required under Rule 23(e), including (i) no per-share recovery estimate; (ii) no comparison of the settlement with potential recovery if plaintiffs prevail under state or federal law; and (iii) no discussion of this federal action, the overlapping class

9

definitions, or what rights class members would be giving up. *See* Mot. at 8–9, 18–19; Class Notices (ECF Nos. 112-2 and -3).

These are not incidental omissions – they strike at the core of due process. As Defendants admit, "[i]t is for the Delaware court to determine, **under Delaware principles**, whether the Settlement meets the relevant requirements." Opp. at 23 (emphasis added). As such, the Chancery Court will not consider the broader federal interests at stake, the PSLRA structure, or this Court's authority. That is precisely the kind of situation in which a federal court must step in. *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d at 803 ("The point of the district court's injunction is not to prevent the resolution of federal claims through a settlement in state court. Rather, the injunction ensures that the resolution of the federal claims proceeds in a manner that preserves the federal rights created by the PSLRA.").

### B.    Plaintiff Satisfies Each Standard for a Permanent Injunction

*First*, irreparable harm is clear. Approval of the *Malork* settlement, which lacks opt-out rights, will permanently bar class members' Section 14(a) claims.

*Second*, Defendants err in suggesting the Court's MTD order negates harm from the *Malork* settlement. As noted above, with amendment, the Class will assert viable Section 14(a) claims with damages far exceeding the proposed Settlement.

*Third*, there is no adequate remedy at law. That Lead Plaintiff could file an objection to the Malork settlement is no substitute for the Rule 23(e)'s protections. Delaware law does not mandate opt-out rights, and, as Defendants tacitly admit, the Delaware court is not tasked with safeguarding federal procedural rights.

*Finally*, the public interest strongly favors an injunction. The PSLRA reflects Congress's intent that federal courts oversee the prosecution and resolution of Exchange Act claims. Enjoining a state settlement that circumvents that structure serves the public interest.

DATED: July 28, 2025.

Respectfully submitted,

*/s/ Lucas E. Gilmore*

Lucas E. Gilmore (*pro hac vice*)
Reed. R. Kathrein (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Raffi Melanson
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
raffim@hbsslaw.com

*Lead Counsel for Lead Plaintiff Alfred Miller*

Brian J. Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Alfred Miller*

- 1 -