**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NEW YORK**

IN RE HYZON MOTORS INC.
SECURITIES LITIGATION

Case No. 6:21-cv-06612-MAV-MWP

*This Document Relates to:*
*ALL ACTIONS*

**Reply Requested**

**Oral Argument Requested**

## LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

PLEASE TAKE NOTICE that Lead Plaintiff Alfred Miller hereby moves this Court before

the Honorable Meredith A. Vacca, United States District Judge, at the United States Courthouse,

100 State Street, Rochester, New York, at a date and time of the Court's choosing, for an Order

for Plaintiff to file a Fourth Amended Consolidated Complaint for Violation of the Federal

Securities Laws.

This motion is based upon this Notice of Motion and Motion, the accompanying

Memorandum of Points and Authorities, the Proposed Order filed herewith, all pleadings and

papers filed herein, the arguments made regarding this matter, and any other information properly

before the Court. Plaintiff respectfully requests leave to file a reply brief in support of his motion.

DATED: August 15, 2025.                    Respectfully submitted,

/s/ Lucas E. Gilmore
Lucas E. Gilmore (*pro hac vice*)
Reed. R. Kathrein (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Raffi Melanson
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
raffim@hbsslaw.com

*Lead Counsel for Lead Plaintiff Alfred Miller*

Brian J. Schall (*pro hac vice* forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Alfred Miller*

**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE HYZON MOTORS INC. SECURITIES LITIGATION | Case No. 6:21-cv-06612-MAV-MWP |
|  | **Reply Requested** |
| *This Document Relates to:* *ALL ACTIONS* | **Oral Argument Requested** |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE
TO FILE FOURTH AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

APPLICABLE LEGAL STANDARD ...................................................................................3

ARGUMENT .........................................................................................................................4

    A.    Lead Plaintiff's amendments do not result from undue delay or bad faith. ...........................................................................................................4

    B.    The Proposed Amendments Will Not Unduly Prejudice Defendants. ...........................................................................................................5

    C.    The Proposed Amendments Do Not Result from a Failure to Cure, but rather Seek to Cure Deficiencies Raised by the Court's July 2025 MTD Order. ...........................................................................................7

    D.    The Proposed Amendments Are Not Futile. ...............................................10

    1.    Lead Plaintiff's New Allegations Plausibly Establish Section 14 Claims against Hyzon and its Executives. ..............................................11

    2.    These New Allegations Also Plausibly Establish DCRB's Section 14 Liability. ...............................................................................................15

    3.    These New Allegations Plausibly Establish Rule 10b-5(a) and (c) Claims against Hyzon and its CEO, Defendant Knight. ............................18

CONCLUSION ...................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agerbrink v. Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016)................................................................10

*AMBAC Assur. Corp. v. EMC Mortg. Corp.*,
  2010 WL 11595698 (S.D.N.Y. Dec. 16, 2010) ....................................................7

*Anthony v. City of New York*,
  339 F.3d 129 (2d Cir. 2003).................................................................................3

*Armstrong Pump, Inc. v. Hartman*,
  2012 WL 1795060 (W.D.N.Y. May 15, 2012)....................................................10

*Attestor Value Master Fund v. Republic of Arg.*,
  940 F.3d 825 (2d Cir. 2019).........................................................................2, 3, 8

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
  87 F. Supp. 2d 281 (S.D.N.Y. 2000)....................................................................7

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA)*
  *Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010).................................................................17

*In re Biopure Corp. Deriv. Litig.*,
  424 F. Supp. 2d 305 (D. Mass. 2006) ...............................................................7, 8

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993).................................................................................5

*In re Boesky Sec. Litig.*,
  882 F. Supp. 1371 (S.D.N.Y. 1995)....................................................................10

*Bos. v. Taconic Mgmt.*,
  2014 WL 4184751 (S.D.N.Y. Aug. 22, 2014).......................................................4

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020)...........................................................14, 18

*Cresci v. Mohawk Valley Cmty. Coll.*,
  693 F. App'x 21 (2d Cir. 2017) ............................................................................8

*Cruz v. Loc. 32BJ*,
2025 WL 47936 (S.D.N.Y. Jan. 8, 2025) ................................................................................7

*Dass v. City Univ. of New York*,
2024 WL 4986914 (S.D.N.Y. Dec. 5, 2024) ....................................................................4, 6, 7

*In re Dentsply Sirona, Inc. Sec. Litig.*,
665 F. Supp. 3d 255 (E.D.N.Y. 2023) ...............................................................................14

*Duling v. Gristede's Operating Corp.*,
265 F.R.D. 91 (S.D.N.Y. 2010) .............................................................................................5

*Espey v. Rice*,
2019 WL 1128779 (W.D.N.Y. Mar. 12, 2019)........................................................................5

*Francisco v. Abengoa, S.A.*,
559 F. Supp. 3d 286 (S.D.N.Y. 2021)...............................................................................4, 7, 8

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
514 F. Supp. 3d 942 (S.D. Tex. 2021) ................................................................................20

*Hayden v. Cty. Of Nassau*,
180 F.3d 42 (2d Cir. 1999)...................................................................................................3

*Hegazy v. Halal Guys, Inc.*,
2024 WL 3988141 (S.D.N.Y. Aug. 28, 2024)........................................................................3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015).............................................................................................3, 7, 8

*Luce v. Edelstein*,
802 F.2d 49 (2d Cir. 1986)...................................................................................................3

*Mazuma Holding Corp. v. Bethke*,
1 F. Supp. 3d 6 (E.D.N.Y. 2014) ......................................................................................2, 5

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)................................................................................................17

*Morseman v. Steuben Cnty.*,
2025 WL 2208130 (W.D.N.Y. Aug. 4, 2025) .........................................................................4

*Pangburn v. Culbertson*,
200 F.3d 65 (2d Cir. 1999)..................................................................................................10

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
153 F. Supp. 3d 628 (S.D.N.Y. 2015).....................................................................................8

*Ret. Sys. v. MF Glob., Ltd.*,
   620 F.3d 137 (2d Cir. 2010)..................................................................................14

*Ronzani v. Sanofi S.A.*,
   899 F.2d 195 (2d Cir. 1990)....................................................................................8

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008)....................................................................................3

*S.E.C. v. Farnsworth*,
   692 F. Supp. 3d 157 (S.D.N.Y. 2023).....................................................................20

*S.E.C. v. Masri*,
   523 F. Supp. 2d 361 (S.D.N.Y. 2007).....................................................................19

*Scott v. Chipotle Mexican Grill, Inc.*,
   300 F.R.D. 193 (S.D.N.Y. 2014) .............................................................................5

*SEC v. Hurgin*,
   484 F. Supp. 3d 98 (S.D.N.Y. 2020).......................................................................17

*SEC v. Pentagon Cap. Mgmt. PLC*,
   725 F.3d 279 (2d Cir. 2013)...................................................................................20

*SEC v. Rio Tinto, plc*,
   41 F.4th 47 (2d Cir. 2022) .....................................................................................20

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
   341 F.R.D. 542 (S.D.N.Y. 2022) .............................................................................6

*Slayton v. Am. Exp. Co.*,
   604 F.3d 758 (2d Cir. 2010)...................................................................................15

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981).....................................................................................5

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008)..............................................................3, 5, 8

*Thurber v. Finn Acad.: An Elmira Charter Sch.*,
   583 F. Supp. 3d 437 (W.D.N.Y. 2022)................................................................3, 10

*United States v. Hall*,
   48 F. Supp. 2d 386 (S.D.N.Y. 1999).......................................................................19

*Xerox Corp. v. Lantronix, Inc.*,
   342 F. Supp. 3d 362 (W.D.N.Y. 2018).....................................................................10

*In re XL Fleet Corp. Sec. Litig.*,
   2022 WL 493629 (S.D.N.Y. Feb. 17, 2022).......................................................................12, 14

*Yoshikawa v. Exxon Mobil Corp.*,
   2023 WL 5489054 (N.D. Tex. Aug. 24, 2023).........................................................................18

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................................5

**INTRODUCTION**

Pursuant to Rule 15(a)(2) and this Court's July 29, 2025, Order (ECF No. 124), Lead Plaintiff Alfred Miller respectfully requests leave to file the proposed Fourth Amended Complaint ("4AC"), a copy of which is attached as Exhibit A.[1] *See also* Exhibit B (redline comparison).

This is a securities case, in which Lead Plaintiff alleges that the Defendants, Hyzon Motors, Inc. ("Hyzon") and Decarbonization Plus Acquisition Corporation ("DCRB"), violated federal law by exaggerating Hyzon's business dealings with brand name companies and suppliers in the lead-up to a shareholder vote on whether to take Hyzon public through a special process known as a de-SPAC merger. These "business dealing" statements were material to investors, as they suggested Hyzon could generate revenue, despite lacking significant sales history, because it was purportedly finalizing contract terms with well-known, reliable companies. On July 15, 2021, investors—not knowing Defendants had falsely suggested that significant sales with blue-chip customers were imminent or that key supplier relationships had been established—voted in favor of the go-public merger instead of cashing out their redemption rights. Thereafter, Hyzon and its executives and directors lied about the number of hydrogen fuel-cell electric vehicles ("HFCEVs") Hyzon was manufacturing, delivering, and selling—and went so far as to engineer sham deliveries to customers before the year's end—all so Hyzon could claim it earned revenue and keep its stock price afloat. Meanwhile, investors lost millions by trading in a fraudulently inflated stock.

Through this motion, Lead Plaintiff seeks leave to add the factual material revealed by the SEC's enforcement action against Hyzon (ECF No. 95-1, "SEC Compl.") to his complaint to address the substantive and procedural deficiencies identified by the Court's July 14, 2025 Order, ECF No. 119 ("MTD Order") (granting in part and denying in part the Defendants' motions to

---

[1]    Herein, Ex. __ refers to Exhibits to the Declaration of Lucas E. Gilmore submitted herewith. Also, all emphasis is added, and all internal citations are omitted, unless otherwise noted.

- 1 -

dismiss). This new material confirms, among other things, that in 2021, Hyzon and DCRB disseminated multiple investor presentations which falsely represented that Hyzon was "finalizing" purchase orders or engaged in "advanced discussions" with well-known brands like Heineken, Ikea, and Coca-Cola, which had never advanced past introductory calls or had told Hyzon they would not be making purchases. SEC Compl. ¶¶ 18-23. Additionally, this new material confirms that, in 2021, Hyzon employees engaged in several deceptive acts—including staging fake videos of trucks running on hydrogen, falsifying records, improperly buying stock to inflate Hyzon's stock price, and engineering sham deliveries—as part of a deceptive course of business or scheme to prop up Hyzon's misleading narrative to the investing public. *Id.* ¶¶ 28-54, 64-68.

As discussed herein, the proposed amendments are timely, made in good faith, do not unduly prejudice Defendants, directly address the substantive and procedural deficiencies raised by the MTD Order, and are not futile, especially as to Lead Plaintiff's scheme liability (Section 10(b)) and soliciting-materials (Section 14(a)) claims. This is the first time Lead Plaintiff has had the chance to amend after having the Court's ruling on a relevant issue. *See Attestor Value Master Fund v. Republic of Arg.*, 940 F.3d 825, 833 (2d Cir. 2019) ("We have been particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue[.]"). Lead Plaintiff has not taken any discovery in this matter. And courts regularly grant securities plaintiffs leave to add new information revealed for the first time through a publicly filed SEC action. *See, e.g., Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (granting leave to amend Section 10(b) claim to incorporate allegations from SEC action).

Both the Federal Rules and the Second Circuit suggest that leave should be liberally granted in cases with procedural histories just like this one, especially when they involve complex litigation under the PSLRA. The Court should accordingly grant leave to amend.

**APPLICABLE LEGAL STANDARD**

The standard for amendments is liberal and permissive. Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And in the Second Circuit, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cty. Of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also Attestor Value Master Fund*, 940 F.3d at 833 (2d Cir. 2019).

"Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *see also Thurber v. Finn Acad.: An Elmira Charter Sch.*, 583 F. Supp. 3d 437, 444 (W.D.N.Y. 2022). Defendants bear the burden of establishing that amendment should not be allowed for these reasons. *See Anthony v. City of New York*, 339 F.3d 129, 138 n.5 (2d Cir. 2003).

"Ultimately, as the Second Circuit has explained, the permissive standard of Rule 15 is consistent with this Circuit's strong preference for resolving disputes on the merits." *Hegazy v. Halal Guys, Inc.*, 2024 WL 3988141, at *2 (S.D.N.Y. Aug. 28, 2024); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189-90 (2d Cir. 2015) ("the permissive standard of Rule 15 is consistent with our strong preference for resolving disputes on the merits"). This liberal approach is particularly important in securities fraud actions, given the strict pleading standards that the PSLRA imposes. *See, e.g.*, *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (noting the "importance of adherence to liberal amendment standards in context of complicated pleading rules of PSLRA"); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (noting in an appeal of a federal securities action that "[c]omplaints dismissed under Rule 9(b) are almost always dismissed with leave to amend.").

**ARGUMENT**

The Court should grant Lead Plaintiff leave to amend, as Lead Plaintiff has timely brought the proposed amendments in good faith and none of the reasons for denying leave are present here.

**A.    Lead Plaintiff's amendments do not result from undue delay or bad faith.**

The Second Circuit recognizes that a "court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith." *Bos. v. Taconic Mgmt.*, 2014 WL 4184751, at *1 (S.D.N.Y. Aug. 22, 2014). The defendants carry "[t]he burden of establishing bad faith," *Dass v. City Univ. of New York*, 2024 WL 4986914, at *5 (S.D.N.Y. Dec. 5, 2024), such as that the plaintiff seeks amendment "as merely a tactic or as part of some legal gamesmanship," *Morseman v. Steuben Cnty.*, 2025 WL 2208130, at *5 (W.D.N.Y. Aug. 4, 2025), while "the party seeking to amend its pleading must explain its delay," *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 312 (S.D.N.Y. 2021).

Here, Lead Plaintiff acted promptly and did not delay this motion. On July 14, 2025, the Court issued a detailed MTD Order. This Order issued rulings on complex issues including standing, the falsity of many alleged misstatements, and pre- and post-merger activities. The Order also provided Lead Plaintiff with an opportunity to move for leave to amend to fold in factual material revealed by the SEC's enforcement action. MTD Order at 62–63. In the following days, Lead Plaintiff assessed the MTD Order's rulings and mapped out the scope of his planned amendments. As part of that process, on July 28, 2025, Lead Plaintiff filed his reply in support of his motion to enjoin the proposed settlement in the *Malork* chancery court action, in which he outlined his planned amendments. *See* ECF No. 122 at 2–4. And in filing this instant motion for leave, Lead Plaintiff has complied with the Court-ordered deadline that Lead Plaintiff seek leave to amend no later than August 15, 2025. ECF No. 124.

- 4 -

Accordingly, there is "no reason to deviate from the general policy that leave to amend should be granted liberally in cases alleging securities fraud." *In re Take-Two*, 551 F. Supp. 2d at 313; *see also State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("[m]ere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend"); *Espey v. Rice*, 2019 WL 1128779, at *2 (W.D.N.Y. Mar. 12, 2019) (same). Nor is there any evidence of bad faith by Plaintiff. Instead, the proposed amendment fulfills his obligations under the PSLRA to assert every viable legal theory on behalf of absent class members (even those first alleged elsewhere). *See* 15 U.S.C. § 78u-4(a)(3)(B). "[A]s a logical matter," Plaintiff could not incorporate the proposed additional allegations in the 4AC until after the SEC complaint was filed, "thereby allowing" Plaintiff to strengthen his claims accordingly. *See Mazuma*, 1 F. Supp. 3d at 20. And given the procedural history of this case, there was good cause to wait to do so until after the Court ruled on Defendants' Rule 12 motions. *See* Part C, *infra*.

**B.      The Proposed Amendments Will Not Unduly Prejudice Defendants.**

Defendants cannot meet their burden of establishing that they would be unduly prejudiced by the proposed amendments. "The burden of demonstrating prejudice rests with the non-movant." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014).

"In determining what constitutes 'prejudice,' courts should 'consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute.'" *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Courts also weigh whether "the new claims are related to the existing ones and whether a party has had prior notice of a proposed new claim." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 99 (S.D.N.Y. 2010). Courts find "[p]rejudice… where, at a critical juncture of a case, a proposed amendment 'adds new parties or

at least entails more than an alternate claim or a change in the allegations of a complaint.'" *Dass,* 2024 WL 4986914, at *5. That is not the case here.

First, this case is at its relative infancy. No Rule 26(f) conference has been set, and absolutely no discovery has been taken.[2] Courts in this circuit have granted leave to amend at similar, or even later, procedural stages. *See, e.g., Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 553 (S.D.N.Y. 2022) (finding no undue prejudice where proposed sixth amended complaint alleging Section 10(b) violations added no new defendants, did not expand the class or class period, was based on the same theory as existing claims, and was filed before close of discovery).

Second, the proposed amendments do not add entirely new or separate claims. Instead, they seek to cure deficiencies outlined by this Court (and any related deficiencies suggested by the MTD Order) by (i) formally bringing in the new information learned from the SEC enforcement action into the pleading record and (ii) showing how the new SEC information supports viable securities law claims dismissed without the revealed, SEC information. *See also* Part D.3, *infra* (showing how the proposed amendments are not futile). To promote the efficient use of Court and party resources, the proposed amended complaint also (i) identifies the three case aspects the Defendants and the Court should consider for any future motion-to-dismiss briefing and (ii) deletes other content that Lead Plaintiff has declined to preserve for appeal.

Third, any delay in resolving the sufficiency of Lead Plaintiff's limited, newly amended claims would be immaterial, as the proposed amendments concern aspects of Lead Plaintiff's case

---

[2]    In the MTD Order, the Court mistakenly stated that there had been "significant discovery" in this case. MTD Order at 61. Additionally, the Court stated that Lead Plaintiff had indicated that mediation had "led to a greater understanding of the events alleged." *Id.* (citing ECF No. 65). To be clear, Lead Plaintiff has issued no discovery requests. Nor has he received any merits-related discovery. And while mediation "yield[ed] valuable insights into the [Defendants'] respective positions," those insights were limited to their critiques of the pleadings. ECF No. 65.

that are entirely severable from Lead Plaintiff's sustained, Rule 10b-5(b) claims for Hyzon's post-merger misstatements and omissions.

Finally, that the proposed amendments may revive liability for Defendants' pre-merger statements and conduct does not create **undue** prejudice."'[T]he prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial.'" *Dass*, 2024 WL 4986914, at *5; s*ee also A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) ("that an amendment will require the expenditure of additional time, effort, or money do[es] not constitute 'undue prejudice.'"). "[S]ince most amendments entail additional discovery and some delay, those factors alone do not give rise to prejudice." *AMBAC Assur. Corp. v. EMC Mortg. Corp.*, 2010 WL 11595698, at *7 (S.D.N.Y. Dec. 16, 2010).

**C.**    **The Proposed Amendments Do Not Result from a Failure to Cure, but rather Seek to Cure Deficiencies Raised by the Court's July 2025 MTD Order.**

Lead Plaintiff seeks to cure the substantive and procedural deficiencies raised by the MTD Order. The present case combines a complex evolution of a distressed business enterprise with a long, multi-part securities law complaint. "In such situations, pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute." *Loreley Fin.*, 797 F.3d at 191 (reversing district court denial of leave to amend in securities law case).

For these reasons, courts in the Second Circuit regularly grant plaintiffs leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint. *See, e.g.*, *Francisco*, 559 F. Supp. at 313. Moreover, they also suggest that denying leave to amend, where a plaintiff "has not yet [amended] with the benefit of a ruling[,]" could amount to reversible error. *See, e.g., Cruz v. Loc. 32BJ*, 2025 WL 47936, at *2 (S.D.N.Y. Jan. 8, 2025). This is because

"[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin.*, 797 F.3d at 190. And only "the District Court's ruling, not the defendant's arguments in support of a motion to dismiss, [] puts a plaintiff on notice of the complaint's deficiencies." *Francisco*, 559 F. Supp. at 313 (citing *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017)); *see also Cresci*, 693 F. App'x at 25 ("A plaintiff has no obligation to replead merely because the defendant has argued that the complaint is deficient, without knowing whether the court will agree." (citing *Loreley Fin.*, 797 F.3d at 160)).

Here, leave to amend is warranted because Plaintiff has not previously been granted leave following a dismissal. The recent MTD Order was the first time in this litigation that the parties have received the Court's commentary on the legal sufficiency of Plaintiff's complaint. With the benefit of the Court's guidance and the additional allegations from the SEC action, Plaintiff can bring a strengthened complaint that alleges new facts to respond to the issues raised by the Court. *See Attestor*, 940 F.3d at 833; *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (reversing denial of leave to amend where the court had not previously granted leave); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 657 (S.D.N.Y. 2015) (granting leave to amend a securities class action complaint even though "Plaintiff has amended once as a matter of right," because "Plaintiff has not been granted leave to amend").

That Lead Plaintiff previously conducted investigations into Hyzon and participated in prior Rule 12(b) briefing does not materially impact the leave-to-amend calculus. In *In re Biopure Corp. Deriv. Litig.*, for example, securities law plaintiffs who had already conducted an independent investigation, had filed a complaint with substantial allegations, and sought to incorporate additional facts from an SEC complaint, just like here, moved for leave to amend. 424

F. Supp. 2d 305, 307 (D. Mass. 2006). Though the defendants opposed the motion, the court granted the plaintiffs leave so they could plead the supplemental SEC information. *Id.*

Moreover, Lead Plaintiff has not failed to cure by not seeking leave to amend in September or October 2023, after the SEC enforcement action was filed. As articulated in Lead Plaintiff's October 25, 2023 MTD Opposition (ECF No. 96), Lead Plaintiff declined to amend at that time out of a reasonable concern that an amendment would further delay a Court ruling on his allegations and waste "resources by formally restarting the motion-to-dismiss process anew." *Id.* at 20. At that time: this case had "remained in the pleading stages for over eighteen months due to, in part, new admissions and claim-corroborating disclosures [Hyzon had made] after Lead Plaintiff ha[d] filed his pleadings," *id.*; Lead Plaintiff had already amended his complaint three times to incorporate then-new factual material that had been revealed by Hyzon after the prior complaint's filing,[3] *id.*; and Hyzon's future as a public company seemed suspect. Thus, as an alternative to amending in October 2023, the parties addressed aspects of the SEC enforcement's revelations in their motion-to-dismiss briefing. These motions were fully briefed by the end of 2023. Further, while the motions to dismiss were pending, Lead Plaintiff again acknowledged the procedural irregularity in his October 2024 and March 2024 motions for a case management conference and stated that he was "prepared to [amend his pleadings] if ordered by the Court to comply with any procedural requirement." ECF No. 102 at 6; ECF No. 105 at 6.

---

[3]    *See* First Amended Complaint (ECF No. 34) filed on March 21, 2022 (adding new information from the last quarter of 2021 regarding HongYun orders and deliveries); Second Amended Complaint (ECF No. 55) filed on September 16, 2022 (adding new information revealed in Hyzon's January 2022 through August 2022 corrective disclosures, including the formation of a Special Committee and the termination of Hyzon's co-founders); and Third Amended Complaint (ECF No. 67) filed on June 23, 2023 (incorporating Hyzon's February 2023 through May 2023 corrective disclosures, including the Special Committee Report Summary and Hyzon's restated financials).

**D.    The Proposed Amendments Are Not Futile.**

Leave to amend should be granted because the 4AC cures purported deficiencies that the Court identified in the MTD Order.

The Second Circuit has held that an amendment is futile when it is "beyond doubt that the plaintiff can prove no set of facts in support of [its] amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Thurber*, 583 F. Supp. 3d at 444. Accordingly, when considering a motion to amend a pleading, a "court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016); *see also Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 370 (W.D.N.Y. 2018). Additionally, the party opposing a motion to amend bears the burden of proving futility. *See, e.g.*, *Xerox Corp..*, 342 F. Supp. 3d at 370. Trial courts will generally not deny leave to amend based on futility unless the proposed amendment "is clearly frivolous or legally insufficient on its face." *See, e.g.*, *Armstrong Pump, Inc. v. Hartman*, 2012 WL 1795060, at *6 (W.D.N.Y. May 15, 2012); *In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995).

Here, the proposed amendments are not futile. Drawing directly from the new facts revealed by the SEC's enforcement action against Hyzon, the proposed amendments clarify and further strengthen the Section 10(b) scheme-liability and Section 14 misleading-soliciting-material claims that were originally presented in the prior complaint. These new allegations confirm that Defendants disseminated misstatements about the then-present status of Hyzon's relationships with its customers, which were not forward-looking statements protected by the PSLRA's safe harbor or the bespeaks caution doctrine. And they put before the Court the allegations of Hyzon's

- 10 -

fraudulent conduct beyond its misstatements, which were filed alongside consent judgments. Accordingly, the amendments are not clearly frivolous or legally insufficient on their face.

      1.      *Lead Plaintiff's New Allegations Plausibly Establish Section 14 Claims against Hyzon and its Executives.*

The newly added SEC material addresses the Court's expressed concerns about forward-looking statements by showing how Hyzon and its executives disseminated false statements about the then-present status of Hyzon's relationships with name brand customers and suppliers, in violation of Section 14(a).

In the MTD Order, the Court found that certain pre-merger statements that were frequently repeated in presentations disseminated to investors were forward-looking projections protected by the PSLRA safe harbor and/or the bespeaks caution doctrine. In particular, the Court focused on misstatements about Hyzon's projected deliveries and revenue for 2021 from contracts and non-binding memoranda of understanding. In doing so, the Court found that these statements were forward looking because they "project[ed] results in the future"—i.e., 85 deliveries and $37 million in revenue by the year's end. MTD Order at 55. Additionally, the Court found these statements were accompanied by adequate cautionary language, warning that there were "no assurance[s] that non-binding memoranda of understanding and letters of intent [would] be converted into binding orders."[4] *Id.* at 56. (This assumed the MoUs existed in the first place.)

---

[4]    As noted in the proposed 4AC, in amending, Lead Plaintiff does not intend to have the parties or the Court spend resources reconsidering the actionability of these projected revenue and deliveries statements. Rather, the 4AC denotes that Lead Plaintiff has kept these statements in the 4AC solely so he can preserve his right to appeal the District Court's dismissal of these statements, under the belief that the Court misapplied securities law concepts by sweeping too broadly and/or by making improper findings that did not construe the pleading record in the light most favorable to Lead Plaintiff. Lead Plaintiff also reserves his right to seek leave to amend should discovery confirm, for example, that Hyzon included customers like Heineken and Air Products in its revenue and delivery projections without a reasonable basis, including

The SEC material fundamentally alters this calculus. First, the SEC confirmed that from January through July 2021, Defendants misrepresented the then-present status of Hyzon's business dealings with potential customers, including Heineken, Air Products, Ikea, and Coca-Cola, over the course of multiple investor presentations to create the false appearance that significant sales transactions with name brand companies were imminent. SEC Compl. ¶ 1. For example, in an investor presentation published on February 9, 2021 (the start of the Class Period), Defendants claimed that Hyzon was "finalizing" purchase orders with Heineken, Air Products, and Ikea, and was in "advanced discussions" with Coca-Cola. *Id.* ¶ 22. But as the SEC learned from its investigation, these specific representations about the then-current status of Hyzon's customer relationships were false.

As reported by the SEC, although Hyzon had solicited transactions with these companies, none had indicated they would purchase HFCEVs from Hyzon. *Id.* ¶ 19. On the contrary, several of these companies had informed Hyzon that they would not be purchasing vehicles before Defendants disseminated the investor presentations in February, April, and July 2021. As relayed:

- Heineken had informed Hyzon that it would not be purchasing Hyzon HFCEVs in 2021 by at least February 4, 2021, *id.* ¶ 22(a);

- Air Products had told Hyzon that it had selected a different supplier by March 2021, *id.* ¶ 22(b);

- Ikea had told Hyzon that it would not be moving forward by at least June 2021, *id.* ¶ 22(d); and

---

after customers indicated they would not make any orders in 2021. *See In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *4 (S.D.N.Y. Feb. 17, 2022).

- 12 -

- Hyzon had never gotten past introductory meetings with Coca-Cola, *id.* ¶ 22(c).[5]

The newly added SEC material also leaves no doubt that Defendant Knight was intimately involved in crafting and approving the false and misleading investor presentations, including those touting relationships with blue-chip customers and key suppliers. As alleged, Knight supplied the underlying information about customer and supplier relationships to the drafters of those presentations, edited and reviewed them, and approved them before they were used in promotional materials and filed with the SEC. *Id.* ¶ 24. And in some instances, he had directly interacted with customers (for example, Coca-Cola) who had indicated that they did not intend to purchase HFCEVs. *See* SEC Compl. ¶ 25.

Second, the SEC also revealed that each version of the investor presentations also falsely represented that "key relationships have already been formed" with two suppliers of truck chassis (the structure framework for a vehicle) when "Hyzon and these purported suppliers had not even reached the point of negotiating any supply relationship." See *id.* ¶ 23; *cf.* 4AC ¶ 116, 236.

These are present-state misrepresentations about the purported then-present status of Hyzon's dealings with customers, not forward-looking projections. They thus fall outside the bespeaks caution doctrine. That these "business dealing" misrepresentations were adjoined by other alleged misstatements concerning the magnitude and value of Hyzon's projected 2021 deliveries (and thus arguably underlaid separate statements with forward looking elements) does not immunize Defendants from liability. Courts in this Circuit have repeatedly recognized that where a challenged statement contains both present-tense and future-tense components, the

---

[5]    As noted by the SEC, in February 2021, Hyzon replaced the names and logos of all customers on its global map with generic descriptions of each company after certain customers demanded removal of their names and logos. *Id.* ¶ 21. But Hyzon kept the names, logos, and/or the generic descriptions of these companies in the February 12, April 29, and July 19 presentations, *id.*, and Defendants continued to refer investors to the original version in other Soliciting Materials.

doctrine applies only to the genuinely forward-looking portion. *See, e.g.*, *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 398 (S.D.N.Y. 2020) ("[A] statement may contain some elements that look forward and others that do not," and "forward-looking elements" may be "severable" from "non-forward-looking" elements."). Further, they have held that the present-tense portion remains actionable if false or misleading when made. *See, e.g.*, *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 144 (2d Cir. 2010) ("A statement may contain some elements that look forward and others that do not. A characterization of present or historical fact may be partially predictive. … However, bespeaks caution does not apply insofar as those characterizations communicate present or historical fact as to the measures taken.").

Here, Defendants' use of terms like "finalizing" purchase orders, "advanced discussions" with named customers, and "key relationships" already "formed" with suppliers conveyed concrete, present facts about the status of Hyzon's business relationships, not merely aspirations or projections. And Defendants continued to disseminate these misrepresentations after adverse changes in the customer relationships. Accordingly, they are actionable. *See, e.g.*, *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 284 (E.D.N.Y. 2023) (finding that statements describing relationships with distributors were actionable because they were made shortly after a distributor announced it would not renew its exclusive deal, and the statements were allegedly intended to soften the financial impact of the distributorship changes); *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *4 (S.D.N.Y. Feb. 17, 2022) (finding statements about vehicle manufacturer's exaggerated sales pipeline, revenue projections, and state of negotiation purported customers were false and actionable where employees recorded "sales opportunities without a reasonable basis, record inflated percentage likelihoods of sales[,] and maintain pre-existing entries in the records after customers indicated that they would not order").

- 14 -

And even if these statements were somehow purely forward looking, they were unaccompanied by "meaningful" cautionary language that "convey[ed] substantive information about factors that realistically could cause results to differ materially from" Hyzon had represented." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 771 (2d Cir. 2010). As noted by the Court, the accompanying cautionary statements warned only of uncertainty regarding the *future* conversion of memoranda of understanding and letters of intent into *binding* orders. The cautionary language did not warn investors that Defendants had falsely described the then-*current* of Hyzon's dealings with lauded, name brands. Nor did it warn investors before the July 15, 2021 vote on the de-SPAC merger that Hyzon had already been told by Heineken, Air Products, and Ikea that no purchases would occur, or that no negotiations had even begun with two "key" suppliers.

As such, by pleading that Hyzon and Knight knowingly provided and approved this false present-tense information for use in SEC-filed materials, the 4AC states a plausible Section 14(a) claim that the Court has not yet addressed.

2.    *These New Allegations Also Plausibly Establish DCRB's Section 14 Liability.*

The SEC's findings as to the status of Hyzon's relationships with customers also show how DCRB, its executives, and its directors ("DCRB Defendants") were negligent in disseminating the same false present-state statements in the investor presentations and Soliciting Materials filed with the SEC (and/or as control persons with respect to DCRB's Section 14 violations).

As alleged in the Third Amended Complaint, during the lead up to the de-SPAC merger vote, DCRB had told investors in proxy statements that it had performed an "extensive due diligence investigation" on Hyzon's business from December 7 to February 8, 2021, and that the Board had determined to merge with Hyzon due in part to "Hyzon's non-binding memoranda of

understanding, letters of intent and limited number of **firm orders with various clients, including blue-chip Fortune 100 companies**." Third Amended Compl. ¶¶ 99-100 (ECF No. 67) ("TAC").

As discussed above, the newly added SEC material now shows that at least one touted blue-chip customer, Heineken, had told Hyzon during DCRB's "extensive due diligence" period that it would not accept an offer for any FCEVs in 2021. SEC Compl. ¶ 22(a). Nevertheless, starting on February 9, 2021, DCRB began to disseminate multiple versions of an investor presentation that claimed Hyzon was finalizing a purchase order with Heineken.

Additionally, between February 9 and February 12, 2021, DCRB published three different versions of the joint, Hyzon-DCRB investor presentation on the SEC's EDGAR website. These subsequent presentations stripped and added customer logos from various parts of the slide deck. The February 12, 2021 version also suddenly replaced the names and logos of key customers (including Heineken) with generic descriptions. To the extent DCRB did not already know that the presentations exaggerated Hyzon's dealings with key customers and suppliers, the back-to-back changes from February 9 to 12 should have put DCRB on constructive notice that there were problems with the customers claimed. DCRB, however, disseminated the altered materials and filed the presentations with the SEC, under its own name, without any review or inquiry.

The newly added SEC materials also show how DCRB's negligent re-publication of these false statements continued up through the de-SPAC merger vote. As discussed above, the SEC reported that, in addition to Heineken, by March 2021, Air Products had told Hyzon that it had selected a different supplier, *id*. ¶ 22(b), and that by at least June 2021, Ikea had told Hyzon that it would not be moving forward. Nevertheless, on April 29, 2021, DCRB filed with the SEC another updated investor presentation that misleadingly exaggerated the then-present status of Hyzon's business dealings with notable name brands. On May 24, 2021, DCRB filed a quarterly report

- 16 -

telling investors to review an attached copy of the February 9, 2021 Investor Presentation "for additional information" about the proposed de-SPAC merger. And on June 29, 2021, DCRB's Chairman, Defendant Tichio, provided an investor audience copies of the investor presentations and told the public that Hyzon's trucks were "all regaining fantastic commercial transaction right now." TAC ¶¶ 139, 329.

The DCRB Defendants owed investors a fiduciary duty by way of their respective roles. *See* TAC ¶ 578. Yet in disseminating these presentations in DCRB's name and discussing Hyzon's "commercial traction" with investors, the DCRB Defendants negligently conveyed the impression that DCRB had ongoing awareness regarding Hyzon's relationships with then-present and then-potential customers. *See SEC v. Hurgin*, 484 F. Supp. 3d 98, 117 (S.D.N.Y. 2020) ("[W]hen individuals listed in a proxy statement 'hav[e] put their reputations in issue, [they] cannot divorce themselves from improper actions taken in the proxy battle by the participants acting under the banner of their names."). This is because, in the context of securities, "once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014). At the very least, it was negligent for DCRB to continue to publish statements about Hyzon's business or to speak publicly about Hyzon without conducting some ongoing due diligence, *before DCRB chose to speak about Hyzon's customers*, to confirm that there had been no material changes since DCRB's extensive due diligence investigation in February 2021. *See also See, e.g., In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 288 (S.D.N.Y. 2010) (false proxy statements concerning business relationships violate Section 14(a) claim, even if the information was uniquely within the knowledge of the transaction's counterparty).

  *3.*  *These New Allegations Plausibly Establish Rule 10b-5(a) and (c) Claims against Hyzon and its CEO, Defendant Knight.*

The newly added SEC material also directly responds to the Court's concern that there were no factual allegations properly before it that "demonstrate[d] 'inherently deceptive' practices independent of the alleged misstatements that Defendants made, MTD Order at 46, by alleging multiple, previously unknown deceptive acts.

First, it shows that on July 13, 2021, Hyzon staged a misleading video (which was later posted to social media) showing the operation of Hyzon's first delivered HFCEV. *See* SEC Compl. ¶¶ 28-29. This video gave the false impression that Hyzon had successfully manufactured and delivered a vehicle that ran on hydrogen. In truth, when Hyzon recorded the video, "Hyzon had not even installed a critical component on the FCEV that was required to power the FCEV with a hydrogen fuel cell" and had instead secretly rigged the truck to run on a limited electric battery. *Id.* In doing so, Hyzon and its employees engaged in fraudulent conduct to deceive investors two days before shareholders were to vote on the Hyzon-DCRB merger.[6] *See Yoshikawa v. Exxon Mobil Corp.*, 2023 WL 5489054, at *8-10 (N.D. Tex. Aug. 24, 2023) (sustaining Rule 10b-5(c) claim where a mid-level manager instructed her team to manipulate internal valuations to support public pledges to investors).

Second, the new material shows how, on November 18, 2021, Hyzon's CEO, Defendant Knight, improperly pledged 226,415 shares of his Hyzon stock to secure a $1.5 million loan from

---

[6] The actions of Hyzon's agents, including its senior executives and managers, is imputable to the corporation. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 424 (S.D.N.Y. 2020) ("Courts in this District will impute corporate scienter even if the corporation's agent making a misrepresentation did not individually have the requisite knowledge of the falsity of that statement if a sufficiently senior director or officer of the corporation with some oversight over the public-facing misrepresentation had such knowledge and did not intervene.").

a Singapore-based entity run by his friend. Knight then used the loan proceeds to purchase an additional 166,000 shares of Hyzon stock on the open market on November 22, 2021 in an unsuccessful attempt to inflate Hyzon's stock price. *See* SEC Compl. ¶¶ 65-68. As alleged by the SEC, the loan agreement did not reference the stock pledge, and, at Knight's request, the pledge was not registered with a brokerage or other third party. The stock pledge violated a February 8, 2021 lock-up agreement Knight entered into with Hyzon that prohibited him from pledging his shares. Additionally, Hyzon was required to disclose the pledge to investors pursuant to SEC rules. Knight nevertheless entered into the pledge, and then hid its existence, to unlawfully manipulate Hyzon's stock price. *See S.E.C. v. Masri*, 523 F. Supp. 2d 361, 367 (S.D.N.Y. 2007) ("practices … that are intended to mislead investors by artificially affecting market activity … closely resembling fraud, [and are] patently manipulative, serving no purpose other than to transmit false information to the market and artificially affect prices. The defendant's manipulative intent can be inferred from the conduct itself."); *United States v. Hall*, 48 F. Supp. 2d 386, 386 (S.D.N.Y. 1999) ("[N]or does the law provide that a defendant is free to use a manipulative device to bring a stock's price up to where the defendant believes the stock should be.").

Third, the new material shows that Hyzon executives and employees took extraordinary measures in 2021 to allow Hyzon to claim it delivered vehicles and recognized revenue. For deliveries to China, the SEC found that, at the end of 2021, a Hyzon employee had "arranged to deliver FCEVs shortly before the end of 2021 in order to meet Hyzon's public guidance" under an agreement with customers where the "the customers agreed to return the vehicles to Hyzon China's manufacturer after year-end to complete necessary work on the vehicles so that they could run on hydrogen power." SEC Compl. ¶ 46. And for Hyzon's five purported deliveries to Europe, the SEC uncovered that Hyzon Europe's managing director falsified Hyzon's books, records, and

- 19 -

accounts concerning HFCEV sales made by Hyzon Europe in 2021. *See* SEC Compl. ¶ 64. These sham deliveries and conditions for recognizing revenue fall square within the types of conduct that trigger scheme liability. *S.E.C. v. Farnsworth*, 692 F. Supp. 3d 157, 189 (S.D.N.Y. 2023) ("Generally, scheme liability is triggered where the defendant 'performed an inherently deceptive act that was distinct from an alleged misstatement: i.e., sham agreements, sham transactions, sham companies, or undisclosed payments to doctors who appeared independent.'");

This list, of course, is exemplary and part of a large course of business to make Hyzon seem more commercially viable than it really was. *See also, e.g.*, *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 954 (S.D. Tex. 2021) (sustaining Rule 10b-5(c) claim where defendant "direct[ed] employees to use outdated, misleading maps that made [the project] seem more commercially viable tha[n] it really was").

These allegations describe conduct that is inherently deceptive and goes beyond mere misstatements. *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) ("[M]isstatements and omissions can form part of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions[.]" (emphasis in original)). Lead Plaintiff makes just such a showing here, including disseminating a misleading video, arranging a sham transaction, falsifying books and records, and procuring a loan to purchase additional shares to inflate Hyzon's stock price. *See id*. at 54 ("dissemination is one example of something extra that makes a violation a scheme"); *see also SEC v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013) (scheme liability may be predicated on deceptive conduct even where misstatements are part of the scheme).

With the proposed amendments, Plaintiff clears the bar for pleading a viable scheme liability claim.

**CONCLUSION**

For all these reasons, Lead Plaintiff respectfully requests that the Court grant his Motion for Leave to Amend the proposed Fourth Amended Complaint.


DATED: August 15, 2025.                    Respectfully submitted,

                                           */s/ Lucas E. Gilmore*
                                           Lucas E. Gilmore (*pro hac vice*)
                                           Reed. R. Kathrein (*pro hac vice*)
                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                           715 Hearst Avenue, Suite 202
                                           Berkeley, CA 94710
                                           Telephone: (510) 725-3000
                                           Facsimile: (510) 725-3001
                                           reed@hbsslaw.com
                                           lucasg@hbsslaw.com

                                           Steve W. Berman (*pro hac vice*)
                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                           1301 Second Avenue, Suite 2000
                                           Seattle, WA 98101
                                           Telephone: (206) 623-7292
                                           Facsimile: (206) 623-0594
                                           steve@hbsslaw.com

                                           Raffi Melanson
                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                           1 Faneuil Hall Sq., 5th Floor
                                           Boston, MA 02109
                                           Telephone: (617) 482-3700
                                           Facsimile: (617) 482-3003
                                           raffim@hbsslaw.com

                                           *Lead Counsel for Lead Plaintiff Alfred Miller*

                                           Brian J. Schall (*pro hac vice* forthcoming)
                                           **THE SCHALL LAW FIRM**
                                           2049 Century Park East, Suite 2460
                                           Los Angeles, CA 90067
                                           Telephone: 310-301-3335
                                           Facsimile: 310-388-0192
                                           brian@schallfirm.com

                                           *Additional Counsel for Lead Plaintiff Alfred Miller*

- 21 -