**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *IN RE HYZON MOTORS INC, SECURITIES LITIGATION*<br><br>This Document Relates to:<br>    ALL ACTIONS. | Master File No.: 21-cv-06612-MAV<br><br>Dated:        August 29, 2025 |

**THE DCRB DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH <u>AMENDED COMPLAINT</u>**

In dismissing all claims against the DCRB Defendants (and certain claims against the Hyzon Defendants), the Court permitted Plaintiff a narrow avenue to move for leave to file a ***fifth*** complaint to incorporate "***further details that emerged in*** the SEC action" that was resolved during the pendency of the motions to dismiss.  But the Court did not permit what Plaintiff has attempted vis-à-vis the DCRB Defendants:  Re-argue the dismissal decision based on obsolete liberal amendment standards and purported inferences from the long-available SEC allegations about certain of the Hyzon Defendants, rather than new factual allegations about the DCRB Defendants themselves.

Plaintiff resorts to those unauthorized tactics because the "further details" from the SEC action—the only pathway afforded by the Court—did not touch the DCRB Defendants.  Hyzon and certain of its former officers were the sole focus of the SEC proceeding, and, as Plaintiff's motion implicitly concedes, the SEC has never suggested any wrongdoing by the DCRB Defendants despite a full investigation.  Had the SEC's allegations changed the calculus as to the DCRB Defendants, presumably Plaintiff would have attempted to formally amend during the many

months preceding the Court's dismissal decision rather than merely pointing to the Hyzon-specific allegations during briefing and at argument.

Not surprisingly, therefore, the proposed "new" factual allegations drawn from the SEC proceeding correspondingly relate to other defendants and in large part to events post-merger. And so, Plaintiff is left to transpose those allegations to create an illusion that the DCRB Defendants made a false statement of present fact with the requisite mental state. But without new *factual* allegations to support that picture, Plaintiff's sleight of hand amounts merely to reargument of this Court's holding that the challenged proxy solicitation statements presented only forward-looking projections about potential future customer orders accompanied by safe-harbor disclaimers. Put simply, the prospective wording of the statements and their cautionary context has not changed, and Plaintiff's claim about them is exactly the same as it has always been: That they misleadingly implied that Hyzon had customer relationships that did not actually exist. Moreover, the proposed amendment identifies nothing in the SEC allegations remotely suggesting that *the DCRB Defendants* lacked a good faith belief in these forward-looking statements and thus irrationally pursued a doomed transaction knowing that the projected orders were a sham.

Finally, an amendment that retains the DCRB Defendants would be highly prejudicial. It would burden the Court and the DCRB Defendants with yet another dismissal motion revisiting the Court's prior decision as well as the DCRB Defendants' additional arguments the Court did not reach, including that Plaintiffs' Section 14(a) claim is derivative and that Plaintiff fails to plead the required mental state of any DCRB Defendant and otherwise satisfy the heightened strictures of Rule 9(b). Moreover, while the mere prospect of reviving the Section 14(a) claim against the DCRB Defendants could not justify Plaintiff's request for an All Writs Act injunction derailing the Delaware "redemption impairment" settlement, Plaintiff has made clear that his amendment

-2-

would become a pretext for continuing to pursue that wasteful frolic and otherwise trying to disrupt the settlement.

I.    **BACKGROUND**

A.    **The Court's dismissal decision.**

On July 14, 2025, after voluminous briefing, the Court issued a 64-page decision dismissing all claims in the third amended complaint against the DCRB Defendants, including the claim against all of them under Section 14(a) and the claim against DCRB Defendants Peter Haskopolous and Robert Tichio under Section 10(b). ECF No. 119 ("MTD Op."). In dismissing the Section 14(a) claim, the Court thoroughly analyzed the challenged statements contained in the merger proxy statement and other soliciting materials, and in particular Plaintiffs' focus on presentations that included "[s]everal slides with graphics and projections identifying specific [Hyzon] customers and potential customers." *Id*. at 50-54. The Court determined that "the challenged statements were forward-looking [rather than present facts] because they were predictions made throughout 2021 about how Legacy Hyzon would perform through the merger and how the combined company would perform beyond" and that "it was clear from the presentations that a large share of projected revenue . . . would have to be converted in the future." *Id*. at 54-55 ("Plaintiff's assertions that the challenged statements are statements of present fact, rather than forward looking, ignore the context of the proxy and the timing of the shareholder vote."). The Court further credited the accompanying cautionary language in the solicitation materials, noting the slides include "qualifying language indicating that the projected sales pipeline includes both contracts and MOUs" as well as disclaimers including that "not all [listed logos] subject to binding purchases." *Id*. at 36, 55-59. On that basis, the Court found that the challenged statements were protected by the bespeaks caution doctrine and dismissed the Section 14(a) claims against the DCRB Defendants. *Id*. at 59-60.

The Court also held that all statements that Plaintiff attempted to attribute to DCRB Defendants Haskouplous and Tichio to support Section 10(b) claims, such as Tichio's statement that he felt "extraordinarily comfortable" with Hyzon's projections, were also either non-actionable, forward-looking statements or puffery that was "too vague and general to be actionable." *Id*. at 34-38 (citing *In re Lululemon*, 14 F. Supp. 3d 553, 572 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)).  In dismissing the claims against the DCRB Defendants, the Court did not need to reach the other arguments raised by the DCRB Defendants in their motion to dismiss.[1]

**B.      The SEC action and the Court's permission for a motion for leave to amend.**

In its dismissal decision, the Court recognized that, "as discussed at oral argument," the SEC enforcement action had proceeded in parallel with the dismissal motions.  MTD Op. at 62. Noting that it was "reluctant to allow Plaintiff a further opportunity to amend his complaint," given that he had already amended three times over the four-year pendency of the case, the Court permitted Plaintiff "leave to *move* to amend" based only on "further details that emerged in the SEC action." *Id*. at 61-62.

Plaintiff's problem in navigating the Court's narrow channel for a proposed amendment as to the DCRB Defendants was that no "further details" in the SEC action were directed at them. ***The SEC did not charge nor even suggest wrongdoing in respect of any DCRB Defendant***. Instead, the SEC alleged that Hyzon, Craig M. Knight (Hyzon's former CEO), and Max C.B.

---

[1] Among other things, the DCRB Defendants argued that Plaintiff's claims were derivative, as was determined on substantially the same facts in the recent *Romeo Power* decision, but that Plaintiff failed to make a pre-suit demand on the Hyzon board.  ECF No. 90 at 11-12.  The DCRB Defendants further argued that Plaintiff failed to plead the required mental state, principally because the Section 14(a) claims sounded in fraud and Plaintiff failed to satisfy the requirements of Rule 9(b). *Id.* at 13-17.  Moreover, the DCRB Defendants noted that Plaintiff wholly failed to plead a strong inference that DCRB Defendants Haskopoulos and Tichio acted with scienter, as required to make out Section 10(b) claims against these Defendants.

Holthausen (the former managing director of Hyzon's European subsidiary) with various securities law and internal control violations, stressing that "***Knight was responsible*** for each of the false and misleading statements" regarding Hyzon's customer and supplier relationships. *SEC v. Hyzon Motors Inc.*, No. 6:23-cv-06553 ECF. No. 1 ("SEC Compl.") ¶¶24, 69-97 (W.D.N.Y. Sept. 26, 2023) (emphasis added).

Nor did anything in the SEC allegations change the forward-looking nature or disclaimers surrounding the pre-merger disclosures Plaintiff has attributed to the DCRB Defendants. The SEC alleged that Hyzon and the two former officers made "false and misleading" statements "about the status of Hyzon's relationships with certain well-known customers" and about other topics before and after the merger. SEC Compl. ¶¶18-34; *see also* Ex. 1, SEC Press Release at 1. But none of the SEC's allegations suggested that there had been a misrepresentation about the ***existence*** of any signed agreement with any customer prior to the merger; rather the SEC's pre-merger allegations only related to representations regarding the status of ***discussions*** between Hyzon and customers who were identified in the investor presentations as not yet having signed any binding agreement.[2] *See* SEC Compl. ¶22(a)-(d). And even as to the Hyzon Defendants, the SEC Complaint did not mention the other two pre-merger disclosure claims that Plaintiff advanced in his third amended

---

[2] Specifically, with regard to the customer statements, the SEC alleged that:
- Heineken "never expressed an intent to purchase FCEVs from Hyzon [and] by at least February 4, 2021 . . . had informed Hyzon that it could not accept an offer for any FCEV deliveries in 2021 . . . ." (SEC Compl. ¶22(a));
- Air Products "never indicated it intended to purchase FCEVs from Hyzon" and "informed Hyzon that it selected a different FCEV supplier" by March 2021 (*Id.* ¶22(b));
- Coca-Cola "never indicated it intended to purchase FCEVs from Hyzon" (*Id.* ¶22(c)); and
- Ikea "told Hyzon that it would not be moving forward with the project then under discussion" "[b]y June 2021." (*Id.* ¶22(d)).

It is notable that the SEC alleged that two of these customers had informed Hyzon that they did not plan to move ahead with a transaction well after the merger was signed and announced on February 9, 2021 and after DCRB's diligence of Hyzon.

complaint: Hiringa or Hyzon's projected profit margins. ECF No. 67, Third Amended Complaint ("TAC") ¶¶124-41. The SEC allegations consequently did not alter "present facts" as of the pre-merger solicitation materials that explicitly differentiated between customers with binding orders and other potential order flow. Nor did the allegations alter that the prospect of future agreements accompanied by disclaimers was inherently forward-looking as the Court found.[3]

Plaintiff has had ample opportunity to leverage the SEC allegations in opposing the dismissal motions and has tried to do so.[4] The SEC action was filed well before Plaintiff filed his opposition to Defendants' motions to dismiss, *see* ECF No. 96 (filed on October 25, 2023), and this Court entered orders and final judgments approving the SEC settlement on January 16 and 17, 2024, *see SEC v. Hyzon Motors Inc.*, No. 6:23-cv-06553, ECF Nos. 5, 6, 7. Plaintiff attached the SEC Complaint as Exhibit A to his opposition to Defendants' motions to dismiss and relied extensively on the existence of the SEC action and its allegations. *See* ECF No. 95 at 1; ECF No. 96, *passim*. Beyond extensive discussion of the SEC action and citation to the SEC Complaint no fewer than 19 times, Plaintiff's dismissal opposition specifically urged the Court to "also consider the newly disclosed factual material alleged in the SEC's complaint." ECF No. 96 at 19 & n.34. Plaintiff again relied on the SEC action at the oral argument on the motions to dismiss, claiming that "according to the SEC complaint," Defendants misrepresented the status of customer discussions, such as that Hyzon and Coca-Cola "only had preliminary discussions [but] said they

---

[3] The SEC complaint also alleged that Hyzon, Knight, and Holthausen made false statements ***post-merger*** about Hyzon's sales in China and Europe, that Hyzon made false filings with the SEC post-merger, and that Hyzon maintained false books and records and inadequate internal controls after the merger. *Id*. ¶¶35-64.

[4] The proposed amended complaint itself concedes that Plaintiff has already relied on the developments in the SEC action in this case, stating only that the amendment "***formally bring[s] the new information*** revealed by the SEC's complaint and consent judgments ***into the pleading record***." ECF No. 126-2 at ¶13 (emphasis added).

were . . . nearing delivery."[5]  Transcript of Hearing on Motion to Dismiss (May 21, 2025) ("MTD Tr.") 34:9–35:2, 38:3–39:3.

### C.    The proposed amended complaint.

In response to the small opening left by the Court for Plaintiff to seek leave to amend based on "further details that emerged in the SEC action," Plaintiff requested leave to amend his complaint for a fourth time on August 15, 2025.  *See* ECF No. 125.  Given that the SEC allegations are directed only against certain Hyzon Defendants and not any DCRB Defendant, it is unsurprising that the proposed fourth amended complaint adds no new allegations of substance regarding the DCRB Defendants.  The proposed amended complaint itself confirms that the "new" factual allegations drawn from the SEC action involve only the Hyzon Defendants by summarizing that its "new allegations include that:"

- "***Hyzon exaggerated*** the status of its business dealings with its potential customers and suppliers, including well-known companies like Heineken, Air Products, Ikea and Coca-Cola;"

- "***Hyzon kept*** the names, logos, and the generic descriptions of these companies on its investor presentations well after they had told Hyzon that they would not be purchasing vehicles;"

- "***Hyzon falsely claimed*** that it had delivered its first FCEV;"

- "***Hyzon stated*** that its Chinese subsidiaries had sold and delivered 82 HFCEVs in 2021 [when], in reality, Hyzon had not completed the vehicles prior to shipment;"

- "***Hyzon Europe's managing director falsified***, or caused to be falsified, Hyzon's books, records, and accounts;" and

- "***Hyzon's CEO, Craig Knight, had improperly*** pleaded 226,415 of his Hyzon stock to secure a $1.5 million loan."

---

[5] The Court asked if the DCRB Defendants objected to its taking judicial notice of the SEC Complaint in ruling on the TAC, to which their counsel stated that the DCRB Defendants "[did not] have an objection" and that it could see "the efficiency in . . . taking [it under] consideration now given that we're on our third amended complaint."  MTD Tr. 25:18–26:5.

ECF No. 126-1 at ¶13 (emphasis added). In fact, the proposed amended complaint's own synopsis of the "new allegations" do not even mention the term "DCRB" or any name of any DCRB Defendant.

Moreover, the only categories of this supposedly "new" information that even relate to the DCRB Defendants[6]—statements involving potential customers and suppliers contained in the pre-merger investors presentations—offer little, if anything new at all. The wording of the challenged statements involving potential customers and suppliers has not (and cannot) change, and Plaintiff merely points to the SEC action to support the notion that Hyzon did not have the customer relationships that were represented—which was the exact same claim he made in his prior complaint and which was dismissed under the bespeaks caution doctrine. *Compare* TAC ¶6 ("To persuade shareholders to approve the proposed merger, Defendants emphasized in press releases, investor presentations, media appearances, and other Soliciting Materials Hyzon's growing backlog of deep-pocketed purchasers and the expected deliveries and revenues 'committed' sales would generate."), *with* ECF No. 126-2, Proposed Amendment ¶3 ("To persuade DCRB's shareholders to approve the proposed merger, officers and directors of Hyzon and DCRB falsely suggested to potential investors in press releases, media appearances, and investor presentations that: Hyzon was in 'advanced discussions with, was finalizing orders with, or had '100% certain,' contracted orders from blue-chip, Fortune 100 companies.").

The proposed amended complaint also seizes upon a two-sentence paragraph in the SEC complaint alleging that statements in the investor presentation that "key relationships have already

---

[6] The proposed amendment also attempts to bolster claims regarding post-merger statements against the Hyzon Defendants and it further attempts to revive Plaintiff's claims against the Hyzon Defendants based on pre-merger statements, which is plainly futile given the Court's dismissal of those claims on purely legal grounds.

been formed" were untrue because Hyzon's "suppliers had not reached the point of negotiating any supply relationship." ECF No. 126-2 at ¶384 (quoting SEC Compl. ¶23). But a footnote on the slide in question explained that the status of these relationships was very preliminary:



And as with the customer relationships, the SEC put the blame for any misstatement related to supplier relationships squarely with Knight. SEC Compl. ¶24 ("Knight was responsible for each of the false and misleading statements about Hyzon's purported … supplier relationships set forth in the investor presentation.").

Rather than add new factual allegations about the DCRB Defendants, the proposed amendment attempts to extrapolate and advocate why the Court should imply their wrongdoing and knowledge of the alleged falsehoods. Plaintiff's motion for leave devotes considerable space to arguing that the DCRB Defendants' must have been culpable due to their due diligence in connection with the merger. *See* ECF No. 125 at 15-17. But argumentative and conclusory allegations that the DCRB "failed to do reasonable diligence" or "failed to conduct ongoing

diligence" are unaccompanied by any new *facts from the SEC allegations (or otherwise)* as to why the diligence was faulty—in fact, the proposed amendment *left unchanged* the complaint's section entitled "DCRB's Due Diligence on Hyzon." *See* ECF No. 126-2 at ¶16; *see also id.* ¶¶98-103. And despite adopting wholesale the SEC complaint's other allegations, Plaintiff never grapples with the inconvenient fact that the SEC complaint placed no blame for any alleged deficiencies on the DCRB Defendants, nor can Plaintiff explain why Knight would have revealed the supposedly concealed truths to his merger counterparty.

## II.    <u>LEGAL STANDARD</u>

Plaintiff's motion for leave to amend yet again does not come early in this proceeding or in the absence of the Court's guidance. The Court made quite clear that Plaintiff's challenge in seeking leave to amend was to show how "the further details that emerged in the SEC action" cured the deficiencies discussed in its decision. Plaintiff's invocation of the general "liberal" amendment standards of Rule 15(a) and the Court's "sound discretion" in entertaining amendment requests (Mot. at 3, 10) are accordingly of no moment.

Instead, the starting place for considering Plaintiff's post-dismissal request to amend a fourth time is that "[l]eave to amend should generally be denied . . . 'in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022). In that regard, Plaintiff attempts to dilute the standard for futility, relying on obsolete caselaw that states "an amendment is futile when it is 'beyond doubt that the plaintiff can prove no set of facts in support of [its] amended claims.'" Mot. at 10 (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999)). That "no set of facts" standard has been plainly rejected by the Supreme Court in favor of the "plausibility" test of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

But more fundamentally, given that Plaintiff has already filed four complaints, the Court narrowed the focus by referencing the SEC allegations as the sole vehicle to cure the deficiencies in his TAC. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.").

Finally, to the extent that Plaintiff infuses argument and hyperbole in support of his claims against the DCRB Defendants rather than additional factual allegations drawn from the SEC action, that gratuitous material is not only beyond what the Court authorized, but amounts to reargument of the Court's dismissal. To satisfy the high standard for such a request, Plaintiff must show "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011).

### III.    ARGUMENT

#### A.    The proposed amendment does not cure the basis for dismissing all claims against the DCRB Defendants.

At bottom, Plaintiff's claim against the DCRB Defendants is still that they misrepresented Hyzon's sales pipeline in the solicitation materials. But the proposed amendments do not and could not change the Court's conclusion that those statements are protected and forward looking, as the SEC allegations included nothing on that front, much less accusation of wrongdoing by the DCRB Defendants. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

-11-

### 1.    Plaintiff proposes no new "developments" as to the DCRB Defendants.

Plaintiff's attempt to re-plead claims against the DCRB Defendants does not raise any new factual allegations from the SEC action (or otherwise) that were not already before the Court when it dismissed those claims.  Instead, Plaintiff offers only argument, inference, and hyperbole that satisfy neither the general standard for amendment and, *a fortiori*, the narrow avenue the Court left open for any proposed amendment.

As a general matter, "where the 'additional allegations merely reiterate and embroider the claims . . . already presented in [the] original complaint, adding little, if anything, of substance to [the] case,' justice does not require that leave to amend be granted."  *Scot. Air Int'l, Inc. v. Brit. Caledonian Grp., PLC.*, 152 F.R.D. 18, 30 (S.D.N.Y. 1993); *see also O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 284 (S.D.N.Y. 1990) (denying leave to amend based on "mere elaboration and increased verbiage concerning the same core allegations initially put forward"), *aff'd*, 936 F.2d 674 (2d Cir. 1991).  But here, the Court also underscored that something new would be needed based on the SEC allegations to overcome the dismissal.

Plaintiff admits that his proposed amendment would not change the statements he has been challenging with respect to the DCRB Defendants—representations regarding Hyzon's prospective customer relationships in the pre-merger investor presentations that were the focus of ¶¶298-99 of the TAC.  ECF No. 122 at 3.  And contrary to Plaintiff's contention that "the Court did not address these statements in its July 14 MTD Order," the Court specifically addressed the statements (MTD Op. at 52), analyzed them and held that they were forward-looking (*id.* at 54-55), and determined that they there accompanied by meaningful cautionary language before dismissing claims based on the statements under the bespeaks caution doctrine (*id.* at 55-60).

Nor does the proposed amendment advance any SEC "developments" regarding the customers statements, namely that relationships with Heineken, Air Products, Ikea, and Coca-Cola were overstated, as shown in the following chart:

| "New" Allegation in Proposed Amendment | Allegation in Prior Complaint | Argument in MTD Opposition Brief | Argument at MTD Oral Argument |
|---|---|---|---|
| "As revealed by the SEC (and others): although Hyzon solicited transactions with blue-chip, Fortune 100 companies like Heineken, Ikea, Air Products, and Coca-Cola, none of these companies had indicated they would purchase HFCEVs from Hyzon at the time Defendants disseminated these statements. To the contrary, several of these purported customers had informed Hyzon in early 2021 that they had selected different HFCEV suppliers or would otherwise not be making purchases."

ECF No. 126-2, Proposed Amendment at ¶5. | Defendants "deceptively reinforced investors' belief that Hyzon had deals in place with big-name brands listed in its investor presentation like Heineken and Coca-Cola who, in truth, were not real customers."

TAC at ¶314.

"[I]t was especially misleading to boast that the pre-orders had come from a number of established companies, including Coca-Cola, Heineken, and Ikea, when these pre-orders were highly fabricated."

TAC ¶300. | "DCRB and Hyzon falsely claimed that blue-chip logos like Heineken and Ikea were near-term customers for months, when those [companies] informed Hyzon as early as January and February 2021 that they would not be making orders in 2021 or at all."

ECF No. 96 at 66 & n.237

"In furtherance of this pre-merger scheme, Defendants surreptitiously edited the investment presentations shown to DCRB shareholders, removing logos of blue-chip customers, but leaving on those customer's purported deals, even where customers like Heineken had indicated they would not be making purchases." | MR. GILMORE: "Defendants, for example, claim that Heineken was finalizing a two million dollar order … [h]owever, Heineken informed Hyzon … that it could not accept deliveries."

MTD Tr. 37:15-23.

MR. GILMORE: "We have the same set of scenario for Ikea, the same set of scenario for Air Products, and the same set of scenario for Coca-Cola. These were all prior to the merger in which Hyzon had been informed there would be no sales."

MTD Tr. 38:3-10. |

| | | ECF No. 96 at 60. | |
|---|---|---|---|

In other words, Plaintiff has previously invoked the SEC allegations to challenge the statements, and nothing in those allegations could ever change their forward-looking substance or surrounding cautionary language. So not surprisingly, nothing in the proposed amendment offers new facts based on the same SEC allegations to change this Court's conclusion that "the statements challenged in Plaintiffs Section 14(a) claims were forward-looking statements, and the cautionary language sufficiently warned potential investors about the risks inherent in the merger." MTD Op. at 59-60.

Plaintiff's proposed amendment does make a passing reference to the SEC's allegation (which only occupied two sentences in the SEC complaint to begin with) that an investor presentation statement that "key relationships have already been formed" was false because "Hyzon and these purported suppliers had not even reached the point of negotiating any supply relationship." Mot. at 13; *see also* ECF No. 126-2, Proposed Amendment at ¶¶16, 117. Plaintiff did not plead this statement in the TAC, despite attempting to pull in every conceivable misstatement there, for good reason. The slide that this language appeared on does not say that all of the suppliers listed on the slide were negotiating supply relationships, and, in fact, the footnote disclaimer on the bottom of the slide states that "***[t]his list represents suppliers who have provided components to date; discussions around long-term arrangements ongoing***." ECF No. 126-2, Proposed Amendment ¶118; F.12 (emphasis added). The SEC Complaint does not mention this disclaimer or any information other than that the title of the slide stated that "key relationships have already been formed." SEC Compl. ¶¶23-24. Regardless, any developments in the SEC action related to this statement do not support a claim against the DCRB Defendants, as the SEC alleged that Knight was responsible for this alleged falsehood. SEC Compl. ¶24.

### 2.    Plaintiff's arguments and spin are not factual allegations and inappropriately seek reargument.

Unable to point to any new factual allegations drawn from the SEC action as to the DCRB Defendants, Plaintiff's proposed amendment and motion instead resort to re-argument of points already lost on the motion to dismiss embellished by "inferences" and spin. His motion thus claims that the statements "misrepresented the then-present status of Hyzon's business dealings with potential customers, including Heineken, Air Products, Ikea, and Coca-Cola, over the course of multiple investor presentations to create the false appearance that significant sales transactions with name brand companies were imminent." Mot. at 12.

The Court's permission to seek leave to amend was not an invitation to reargue the past round or add rhetoric. Plaintiff's proposed amendment should be struck on that basis alone. And Plaintiff's "inferences" are not new facts drawn from the SEC allegations. But even if considered, none of that gratuitous material presents a basis for reconsideration. "[T]he standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015). Plaintiff's "wasteful repetition of arguments already briefed, considered and decided" certainly does not meet this bar. *Terra Sec.*, 820 F. Supp. 2d at 560.

The Court already fully considered and disposed of Plaintiff's recycled arguments, and Plaintiff's attempt to characterize the "then-present" status of the relationship with the potential customers or draw inferences from allegations about other defendants does not alter the plainly forward-looking wording of the statements themselves. The Court already explained how the

investor presentations distinguished between customers for which there were "signed contracts" for sales versus just advanced discussions taking place and the various disclaimers on the materials.[7]  None of the SEC's allegations suggested that there had been a misrepresentation about the existence of any signed agreement with any customer, and, instead, the SEC's allegations only related to the description of the status of discussions with customers who were identified as not yet having signed any binding agreement.  *See* SEC Compl. ¶22(a)-(d).

Plaintiff goes even further flouting the Court's prior order in arguing that "even if these statements were somehow purely forward looking, they were unaccompanied by 'meaningful' cautionary language" because the slides "did not warn investors that Defendants had falsely described the then-*current* status of Hyzon's dealings with lauded, name brands."  Mot. at 15.  But Plaintiff points to no developments in the SEC action that changed the cautionary language contained in the solicitation materials or its adequacy, making this, too, mere re-argument of the Court's conclusion.  MTD Op. at 35-36.

In the end, the problem for Plaintiff is that he continues to challenge the exact same statements on the exact same grounds.  ECF No. 126-2, Proposed Amendment ¶¶4-7.  Repeating the same claims and hoping for a different result is improper and should be denied.  *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, No. 11 CIV. 8196(CM), 2015 WL 1650767, at \*5 (S.D.N.Y. Apr. 10, 2015) ("[C]ourts in this circuit have repeatedly held that district courts may deny leave to amend when the motion is made after other dispositive motions have already been filed and decided.")

---

[7] MTD Op. at 35-36 ("[E]ach of the slides that Plaintiff challenges—as well as Tichio's challenged February 9 statement—includes qualifying language indicating that the projected sales pipeline includes both contracts and MOUs.").

Finally, the DCRB Defendants briefly note that the proposed amendment continues to allege Section 10(b) claims against DCRB Defendants Haskopoulos and Tichio, despite the Court's previous dismissal of these claims. But Plaintiff identifies no development in the SEC action altering the Court finding that statements attributable to these defendants were non-actionable as a matter of law, and the amendment does not otherwise attempt to attribute any new statements to these defendants.

### B.    Leave to amend would prejudice the DCRB Defendants.

#### 1.    Plaintiff's wait-and-see approach in requesting leave to amend only after his claims were dismissed has prejudiced the DCRB Defendants.

Plaintiff's strategic decision to stand on his prior complaint before invoking the SEC action as a basis to amend is also plainly prejudicial to the DCRB Defendants, and this is an independent ground to deny leave with respect to these defendants. This action has been pending for nearly four years, Plaintiff has filed four prior complaints, and the parties have undergone two rounds of motion to dismiss briefing. This belies Plaintiff's argument that a fourth amendment, inevitably leading to another round of motion to dismiss briefing, would not prejudice Defendants because this case "is at its relative infancy." Mot. at 6.

Plaintiff had access to the SEC complaint and consent judgment before his opposition to the prior motions to dismiss was due, and instead of moving for leave to amend at that point, Plaintiff chose to stand on his operative complaint. *See* I.B  This was plainly calculated. Plaintiff took advantage of the SEC allegations in his opposition to the motions to dismiss, while slipping into the final paragraphs of his dismissal opposition a request that, only if he lost the motion, that he be allowed to "incorporate[] the SEC's recently filed fraud allegations . . . ."  ECF No. 96 at 70.

Plaintiff's proffered explanation for this gamesmanship, that he did so "out of a reasonable concern that an amendment would further delay a Court ruling on his allegations and waste

'resources by formally restarting the motion-to-dismiss process anew'" does not add up.  Mot. at 9.  Now that he has lost with respect to the DCRB Defendants, "restarting the motion-to-dismiss process anew" is exactly what Plaintiff is requesting.  But had Plaintiff moved to amend earlier, "the sufficiency of the . . . new allegations could have been tested earlier by one of the now-decided motions to dismiss."  *U.S. ex rel. Kester*, 2015 WL 1650767, at *7.  "[T]he fact that a party seeks leave to amend after dispositive motions are decided is a reason to *deny* leave to amend, not to grant it."  *Id.*

Granting leave to amend would also burden the DCRB Defendants and the Court with another dismissal motion not only as to the bespeaks caution doctrine, but with respect to the multiple other grounds for dismissal that the amendment cannot cure.  For example, Plaintiff's proposed amendment continues to accuse the DCRB Defendants of fraud, without meeting the Rule 9(b) standard.  *See* ECF No. 126-2 Proposed Amendment at ¶¶3, 103 (suggesting that DCRB Defendants issued and filed with the SEC "false statements" because they were "poised to realize enormous returns" on their founders shares "should they persuade shareholders to approve the SPAC Merger.").   Nor can Plaintiff plead even the DCRB Defendants' negligence with particularity, as required by the PSLRA, as the proposed amendment leaves the section that actually contains the few *factual allegations* about what diligence DCRB did unchanged.  I.C. The proposed amendment also continues to allege nothing about Haskopoulos and Tichio's scienter, much less the strong inference required by the PSLRA.  *See* ECF No. 90 at 23-24.  And any developments in the SEC action certainly do not alter the DCRB Defendants' legal arguments that Plaintiff's claims are derivative under *Romeo Power* and should be dismissed for failure to meet to Rule 23.1's demand requirements.

In sum, Plaintiff has already had three opportunities to amend his complaint along with an opportunity to brief the exact allegations he attempts to replead now with respect to the DCRB Defendants.  Plaintiff's argument that he should get another bite at the apple to formally replead based on allegations in the SEC action that he already invoked and briefed to the Court falls short and would certainly prejudice the DCRB Defendants by "burden[ing]" them with "***added litigation time and expense[;] well-established forms of prejudice***."  *U.S. ex rel. Kester*, 2015 WL 1650767, at \*7 (emphasis added).

**2.      Plaintiff's attempts to disrupt settlement proceedings in a state court action based on this amendment prejudices the DCRB Defendants.**

Finally, allowing Plaintiff further opportunity to amend also prejudices the DCRB Defendants in light of the pending settlement in the *Malork* Chancery Court Action of the identical redemption impairment theory underlying Plaintiff's Section 14(a) claim.  Plaintiff's motion leaves no doubt that he intends to continue in pursuit of an All Writs injunction to derail the settlement of the same redemption theory even though no federal court has granted similar relief based on the mere pendency of a parallel federal securities class action, much less than on claims that have already been dismissed.  *See* Mot. at 4.  But given Plaintiff's persistence, permitting leave to amend would necessitate further proceedings and possibly appeals in respect of his injunction quest.

An amendment and continued collateral attack on the settlement would also potentially give rise to confusion among class members and the Delaware court.  Plaintiff is certainly free to register his objection to the settlement in Delaware and explain why the same basic theory this Court has dismissed is nonetheless worth more than the settlement offers.  But he should not be permitted to sabotage the settlement by perpetuating his deficient theory here and then using its

-19-

pendency as a pretext for extending his crusade seeking an injunction foreclosed by the Anti-Injunction Act.

## IV.     **CONCLUSION**

For the foregoing reasons, the DCRB Defendants respectfully request that the Court deny Plaintiff's Motion for Leave to File Fourth Amended Complaint as to them.


*/s/ Jeffrey Crough*

VINSON & ELKINS LLP

Michael C. Holmes (*pro hac vice*)
Jeffrey Crough (*pro hac vice*)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone:  +1.214.220.7700

Marisa Antonelli
1114 Avenue of the Americas
New York, NY  10036-7708
Telephone:  +1.212.237.0000

*Counsel for Peter Haskopoulos, Robert Tichio, Jennifer Aaker, Jane Kearns, Pierre Lapeyre, David Leuschen, Jim McDermott, Jeffrey Tepper, Michael Warren, Riverstone Investment Group LLC, Decarbonization Plus Acquisition Sponsor, LLC, and WRG DCRB Investors, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey Crough, hereby certify that a copy of this Opposition to Lead Plaintiff's Motion for Leave to File Fourth Amended Complaint was filed on August 29, 2025 with the Clerk of the District Court using its CM/ECF system, which will send copies to all counsel who have appeared in this action and registered with such system.

By:  <u>*/s/ Jeffrey Crough*</u>
Jeffrey Crough
