**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
                                              :

IN RE HYZON MOTORS INC.          :     Case No. 6:21-cv-06612-MAV-MJP
SECURITIES LITIGATION           :

                                             :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**HYZON DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT**

Laura Kabler Oswell (*pro hac vice*)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California  94301
Tel.:   (650) 461-5600
Fax:   (650) 461-5700
oswelll@sullcrom.com

Jacob M. Croke
Christopher A. Graham (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel.:   (212) 558-4000
Fax:   (212) 558-3588
crokej@sullcrom.com
grahamch@sullcrom.com

*Counsel for Defendants Hyzon Motors Inc.,*
*Erik Anderson, Craig Knight, Mark Gordon,*
*and George Gu*

August 29, 2025

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...........................................................................................................3

      A.      The Investor Presentations and the FrieslandCampina Vehicle ...........................3

      B.      The Special Committee Investigation and Hyzon's Restatement of Certain Financial Results ...........................................................................................5

      C.      The SEC Investigation and Settlement ....................................................6

      D.      Procedural History ..............................................................................8

LEGAL STANDARD....................................................................................................10

ARGUMENT ............................................................................................................10

I.       AMENDMENT WOULD BE FUTILE BECAUSE PLAINTIFF'S PROPOSED ALLEGATIONS ALREADY HAVE BEEN REJECTED BY THE COURT OR ARE OTHERWISE NOT VIABLE....................................................................10

      A.      The Proposed Section 14(a) Allegations Against Hyzon, Anderson, and Knight Do Not Justify Leave to Amend ................................................11

      B.      The Proposed "Scheme Liability" Allegations Against Hyzon and Knight Do Not Justify Leave To Amend........................................................16

            1.      Financial Restatements .........................................................16

            2.      FrieslandCampina Vehicle........................................................18

            3.      Knight's Stock Pledge............................................................20

II.      UNDUE DELAY, PREJUDICE, AND MULTIPLE PREVIOUS AMENDMENTS FURTHER SUPPORT DENYING LEAVE TO AMEND .................21

CONCLUSION...........................................................................................................23

## TABLE OF AUTHORITIES

*Page(s)*

**CASES**

*C.D.T.S.* v. *UBS AG*,
2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ...........................................................................15

*Chhabra* v. *Blinken*,
2022 WL 17587850 (2d Cir. Dec. 13, 2022) ...........................................................................10

*Clark* v. *Kitt*,
2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014) .........................................................................22

*In re Columbia Pipeline, Inc.*,
405 F. Supp. 3d 494 (S.D.N.Y. 2019).....................................................................................15

*Cuoco* v. *Moritsugu*,
222 F.3d 99 (2d Cir. 2000).....................................................................................................10

*De Jesus* v. *Sears, Roebuck & Co., Inc.*,
87 F.3d 65 (2d Cir. 1996) .......................................................................................................23

*In re DNTW Chartered Accts. Sec. Litig.*,
172 F. Supp. 3d 675 (S.D.N.Y. 2016).....................................................................................17

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022)..............................................................................18, 20

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
43 F. Supp. 3d 369 (S.D.N.Y. 2014).......................................................................................13

*Fid. Info. Servs., Inc.* v. *Debtdomain GLMS Pte Ltd.*,
2011 WL 3665138 (S.D.N.Y. Aug. 11, 2011).........................................................................22

*Foman* v. *Davis*,
371 U.S. 178 (1962)................................................................................................................10

*In re Garrett Motion Inc. Sec. Litig.*,
2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ..........................................................................20

*Giardina* v. *Blue Cross & Blue Shield of WNY, Inc.*,
1997 WL 613257 (W.D.N.Y. Oct. 2, 1997) ...........................................................................11

*Gonzalez* v. *City of Rochester*,
2020 WL 5032026 (W.D.N.Y. Aug. 26, 2020) .......................................................................22

*Hunt* v. *Enzo Biochem*, Inc.,
    530 F.Supp.2d 580 (S.D.N.Y. 2008)......................................................................................14

*Kusnier* v. *Virgin Galactic Holdings, Inc.*,
    2023 WL 8750398 (E.D.N.Y. Dec. 19, 2023) .........................................................................19

*Lipow* v. *Net1 UEPS Technologies, Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015)....................................................................................15

*Lucid Motors Sec. Litig.*,
    110 F.4th 1181 (9th Cir. 2024) .............................................................................................19

*McCarthy* v. *Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)..................................................................................................10

*Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n*,
    898 F.3d 243 (2d Cir. 2018)............................................................................................10, 21

*Off. Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003).....................................................................................................3

*Perrone* v. *Monroe Cnty. Sheriff Patrick O'Flynn*,
    2015 WL 7776930 (W.D.N.Y. Dec. 2, 2015)..........................................................................10

*Police & Fire Ret. Sys. of City of Detroit* v. *SafeNet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009)................................................................................2, 15

*Ross* v. *Bolton*,
    904 F.2d 819 (2d Cir. 1990)..................................................................................................14

*Ruffolo* v. *Oppenheimer & Co.*,
    987 F.2d 129 (2d Cir. 1993)..................................................................................................10

*Ruggiero* v. *Way*,
    2020 WL 5126112 (S.D.N.Y. Aug. 31, 2020)........................................................................13

*Salinger* v. *Projectavision, Inc.*,
    972 F. Supp. 222 (S.D.N.Y.1997)..........................................................................................23

*Schulz* v. *United States*,
    2017 WL 11514593 (N.D.N.Y. Dec. 15, 2017)......................................................................13

*Sec. & Exch. Comm'n* v. *Honig*,
    2021 WL 276155 (S.D.N.Y. Jan. 27, 2021) ...........................................................................20

*SEC* v. *Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011)...........................................................................2, 17, 18

*Silverman* v. *3D Total Sols., Inc.*,
    2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ........................................................................22

## STATUTE AND RULES

U.S.C. § 78u-4(b)(3)(B)........................................................................................................22

Fed. R. Civ. P. 9(b) ......................................................................................................2, 14, 15

Fed. R. Civ. P. 15(a) ...............................................................................................................10

Fed. R. Civ. P. Rule 23.1 .......................................................................................................14

SEC Rule 10b-5(a) and (c)...............................................................................................9, 16, 19

SEC Rule 10b-5(b)..................................................................................................................19

**PRELIMINARY STATEMENT**

Approaching four years after this case first was filed, rather than proceed with litigation, Plaintiff requests leave to file a fifth iteration of his complaint to try to resuscitate or reinvent the claims this Court dismissed in its July 14, 2025 Decision and Order on Defendants' Motions to Dismiss (ECF No. 119). That Decision—which allowed a number of claims to stand—provided clear instruction on Plaintiff's various theories of liability and allowed Plaintiff only to seek leave to move to amend based on the SEC allegations. Rather than follow the Court's direction or simply allow this litigation to proceed, Plaintiff's Motion and proposed Fourth Amended Complaint retreads ground already addressed by the Court and does nothing to address the core issues underlying the claims dismissed in the Order. Indeed, for the most part, Plaintiff concedes that it would have been futile to attempt to replead the dismissed claims, and Plaintiff instead seeks to supplement his remaining allegations with a small hodgepodge of Section 14(a) and "scheme liability" claims. While purporting to incorporate information from the complaint filed by the SEC as part of a September 2023 settlement, Plaintiff's proposed amendments by turn rehash old arguments (*e.g.*, allegedly deceptive acts in connection with Hyzon's 2021 financial statements); incorporate information that had previously been available to Plaintiff from other sources (*e.g.*, the FrieslandCampina vehicle); and add inapt and plainly untenable allegations (*e.g.*, Craig Knight's stock pledge). The Motion should be denied.

Plaintiff's proposed amendment is futile. Plaintiff seeks to reinstate claims that the Court dismissed on legal grounds that cannot be cured through amendment, including references to negotiations with potential customers accompanied by appropriate cautionary language and alleged acts that were not inherently deceptive independent of Hyzon's 2021 financial reports. (Decision at 45-47, 54-60.) In addition, Plaintiff's proposed Section 14(a) amendments fail because Plaintiff's claim is derivative and Plaintiff did not make a presuit demand or plead demand

futility, even though the harm of overpayment alleged by Plaintiff flows through the corporation and the claim therefore is classically derivative. Plaintiff's allegations concerning two unnamed chassis suppliers likewise fail to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, and are not false in any event when read in context. And as was the case in the Third Amended Complaint ("TAC"), Plaintiff's conclusory allegations of fraud or negligence, based almost entirely on corporate roles, cannot meet the heightened burden of Rule 9(b). *Police & Fire Ret. Sys. of City of Detroit* v. *SafeNet, Inc.*, 645 F. Supp. 2d 210, 239-40 (S.D.N.Y. 2009).

Plaintiff's proposed "scheme liability" allegations also fail. Plaintiff revisits events surrounding Hyzon's 2021 financial restatements, which the Court previously dismissed on the basis that they were not inherently deceptive acts. (Decision at 45-46.) That decision was correct, and Plaintiff offers no justification for his attempt to rehash it. Plaintiff's allegation concerning a video of the FrieslandCampina vehicle—which he could have alleged based on information available prior to the filing of the TAC—fails for the same reason because the crux of the alleged deception was an accompanying statement that the vehicle ran on hydrogen. *SEC* v. *Kelly*, 817 F. Supp. 2d 340, 343-44 (S.D.N.Y. 2011). Nor in any event would Plaintiff have standing to challenge acts of Legacy Hyzon that occurred prior to the merger, or be able to state a viable claim based on facts not disclosed until months after the class period closed. Finally—and perplexingly—Plaintiff seeks to add an allegedly undisclosed pledge of stock by Craig Knight, which Plaintiff alleges was used to obtain funds *to purchase additional Hyzon shares*. Not only is Knight's alleged share pledge irrelevant to Plaintiff's claims because it had no impact on the price of Hyzon's shares (a fact Plaintiff alleges) and was entirely unknown to the market until after the class period closed, but Mr. Knight's alleged purchase of shares during what Plaintiff claims was a critical period runs directly contrary to any "scheme" to defraud Hyzon shareholders.

Fundamentally, Plaintiff offers nothing new in the proposed Fourth Amended Complaint that has not or could not have been previously raised with the Court. Indeed, the SEC allegations that form the basis of Plaintiff's proposed amendments featured heavily in Plaintiff's Opposition to Defendants' Motions to Dismiss and Plaintiff argued the SEC allegations at the Motion to Dismiss hearing without objection from Defendants. Other purportedly "new" information predates not only the SEC settlement but also the TAC, including allegations regarding the FrieslandCampina vehicle and Hyzon's 2021 deliveries. Plaintiff's proposal to brief a third motion to dismiss would significantly prejudice the Hyzon Defendants, in light of Hyzon's dissolution and finite insurance funds on which the individual Hyzon Defendants are relying.[1] Plaintiff has had ample opportunities to amend his complaint, including after the SEC settlement and after reviewing the prior Motions to Dismiss. Plaintiff should not be allowed to file a fifth iteration of his complaint. *Off. Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 167-68 (2d Cir. 2003).

## BACKGROUND[2]

### A.    The Investor Presentations and the FrieslandCampina Vehicle

In connection with the February 9, 2021 merger announcement, Legacy Hyzon and DCRB published an investor presentation that covered information regarding Legacy Hyzon's "backlog" or "pipeline," including potential orders that Legacy Hyzon considered probable based

---

[1]    As noted in its May 16, 2025 letter to the Court (ECF No. 107), on April 7, 2025, Hyzon Motors Inc. commenced a proceeding to dissolve the Company in the Delaware Court of Chancery and has assigned its remaining assets for liquidation and distribution in accordance with the dissolution plan. Counsel is consulting with counsel to legacy Hyzon and the assignee entity about how to proceed with this litigation in light of the dissolution, and counsel expects that they may soon file a motion to withdraw with respect to their representation of Hyzon Motors Inc.

[2]    This section addresses background to the extent relevant to the present Motion. For additional background, the Hyzon Defendants respectfully refer to their Motion to Dismiss. (ECF No. 93 at 4-17.)

on the status of negotiations.   (ECF No. 126-1 ("Proposed Compl.") ¶¶ 107-11, 120.)   The presentation depicted actual and potential vehicle customers, which it cautioned were "at various stages of contract negotiations," and described the status of negotiations with certain customers on a map with those customers' logos.   (*Id.* ¶¶ 118, 304.)   In addition, under the heading "Vehicle Components Provided Through Selected Manufacturing Suppliers," the presentation listed eight suppliers and corresponding vehicle parts—*e.g.*, Ford ("Chassis"), DAF ("Chassis"), Worthington Industries ("Cylinders"), and OMB Saleri ("Hydrogen Valves").   (*Id.* ¶ 118.)   The presentation stated that "[t]his list represents suppliers who have provided components to date; discussions around long-term arrangements ongoing."   (*Id.*)   Legacy Hyzon and DCRB filed updated versions of the presentation with the SEC on February 10 and 12 and April 29, 2021.   (*Id.* ¶¶ 317, 327, 349.)[3]

On July 13, 2021, Legacy Hyzon issued a press release announcing that a "hydrogen-powered milk truck" was "delivered for use in operations by FrieslandCampina," a dairy cooperative.   (Ex. A at 1; *see* Proposed Compl. ¶¶ 373-74.)[4]   "Hyzon and various Hyzon executives, including Defendant Gu" allegedly "posted and/or disseminated a video of the [vehicle] via social media."   (Proposed Compl. ¶ 375.)   Plaintiff alleges that Hyzon's social media post of the video was accompanied by a "statement that [the vehicle] was powered by hydrogen" (Proposed Compl. ¶ 138),· and the post also contained a link to the July 13, 2021 press release (Ex. B; Oswell Decl. ¶ 1).

---

[3]   An additional presentation, which was posted on Hyzon's website on or about July 19, 2021 (Proposed Compl. ¶ 141), post-dated the merger and therefore cannot be a basis for Plaintiff's Section 14(a) claim regarding solicitations for the merger.

[4]   References to "Ex." are to the exhibits to the Declaration of Laura K. Oswell ("Oswell Decl."), filed herewith.

B.       **The Special Committee Investigation and Hyzon's Restatement of Certain Financial Results**

On March 13, 2023—three months before Plaintiff filed his TAC—Hyzon reported the results of the Special Committee investigation.  (Proposed Compl. ¶¶ 218-23; Ex. C.)  With respect to China, the Special Committee found that a portion of the vehicles that Hyzon had reported as delivered during 2021 had not yet completed the vehicle commissioning process and therefore were not yet operable on hydrogen "at the time of delivery and as of December 31, 2021." (Proposed Compl. ¶ 220.)  With respect to Europe, "[t]he Special Committee noted that the five vehicles delivered to customers in Europe . . . needed to undergo repairs post-delivery," which led the Company to "re-evaluate[] the treatment of revenue recorded for those five vehicles."  (Ex. C; *see* Proposed Compl. ¶ 221.)  The Special Committee also found that "it d[id] not appear that an additional vehicle provided to Transport Groep Noord, a carrier providing transport for Royal FrieslandCampina N.V., in Europe in 2021 was operable on hydrogen when Hyzon issued a press release regarding this vehicle [on July 13, 2021]."  (Ex. C.)

On March 14, 2023—again, three months before the TAC—Hyzon filed two amended quarterly reports on Form 10-Q/A for Q3 2021 and Q1 2022, and an amended annual report on Form 10-K/A for 2021.  (Proposed Compl. ¶¶ 225-26, 232.)  Based on the Special Committee investigation, Hyzon did not recognize revenue during 2021 for certain vehicles that Hyzon previously had reported as delivered in China during that year.  (*Id.* ¶¶ 227-29.)  As to Europe, Hyzon concluded that Hyzon Europe had been providing certain "customers with vehicle retrofit services to convert the customers' . . . vehicles to hydrogen [vehicles]," and revenue therefore was reallocated from the time of delivery to the time when work was performed.  (*Id.* ¶ 432.)

C.     The SEC Investigation and Settlement

On September 26, 2023, Hyzon announced a settlement with the SEC, which had conducted an extensive investigation of Hyzon following the Blue Orca Report and Hyzon's announcement of the Special Committee.  (*See* Proposed Compl. ¶¶ 189, 234.)  In connection with the settlement, the SEC filed a complaint that named Hyzon, Knight, and Max Holthausen, a former managing director of Hyzon Europe, as defendants.  *SEC* v. *Hyzon Motors Inc. et al.*, No. 6:23-cv-6553 (W.D.N.Y. Sept. 26, 2023), ECF No. 1 (Ex. D ("SEC Complaint")).  Anderson, Gordon, and Gu were not named as defendants in the SEC Complaint.  The SEC Complaint included the following allegations:

1.     Customer and Supply Relationships.  The SEC alleged that the 2021 investor presentations contained misstatements regarding the status of Legacy Hyzon's negotiations with four potential customers.  (SEC Compl. ¶¶ 21-22.)  The SEC did not allege that the investor presentations had misrepresented facts regarding any existing (as opposed to potential future) customer contracts.  (*Id.* ¶ 22.)  In addition, the SEC alleged that a slide header including the phrase "Key Relationships Have Already Been Formed" was false and misleading as applied to two of the four suppliers of vehicle chassis represented on the slide (the SEC did not allege which two), because Hyzon allegedly had not yet begun negotiations for a supply contract with the two unnamed suppliers.  (*Id.* ¶ 23; Proposed Compl. ¶ 305.)  The SEC did not allege that any of the Hyzon Defendants acted knowingly with respect to these alleged misstatements.  (SEC Compl. ¶¶ 25, 54.)  However, the SEC alleged that Knight *was negligent* and "*should have known*" that these statements were false and misleading because, "[a]s Hyzon's CEO, Knight's responsibilities included advancing Hyzon's customer and supplier relationships alongside Hyzon's sales and operational employees."  (*Id.* (emphasis added).)

2.    FrieslandCampina Vehicle.  The SEC alleged that the July 13, 2021 press release and video posted to social media regarding the FrieslandCampina milk truck were false and misleading because the truck was not running on hydrogen at the time "and was powered solely by an electric battery." (*Id.* ¶¶ 28-29.)  The SEC alleged that Holthausen "was ultimately responsible for the[] accuracy" of the press release and video, and that Holthausen "helped draft the July 13, 2021 press release" and "managed the video recording of the [FrieslandCampina vehicle] with the Hyzon Europe team he supervised." (*Id.* ¶ 30.)  The SEC alleged that Holthausen knew or was reckless in not knowing that the press release and video were false and misleading. (*Id.* ¶¶ 31, 53.)  The SEC did not allege that any Hyzon Individual Defendant had knowledge of the alleged falsity of the press release or video. (*Id.*)

3.    Financial Restatements.  Consistent with Hyzon's restatement of its Q3 2021 and FY 2021 financial reports, the SEC alleged that Hyzon's original reports regarding the amount of its vehicle sales in China and Europe during 2021 were false and misleading. (*Id.* ¶¶ 38-52, 56, 60-61.)  The SEC did not allege that any of the Hyzon Defendants acted knowingly with respect to the reports of sales in China. (*Id.* ¶ 48.)  Instead, the SEC alleged that Hyzon was negligent in "fail[ing] to implement effective internal controls." (*Id.*)  With respect to Europe, the SEC alleged that Holthausen "had ultimate authority for the[] statements in Hyzon's financial statements" concerning Europe, and that Holthausen knew or was reckless in not knowing that the statements concerning sales in Europe were false or misleading. (*Id.* ¶¶ 41-42.)  The SEC did not allege that any individual Hyzon Defendant had knowledge of the alleged falsity of Hyzon's financial statements with respect to Europe. (*Id.*; *see also id.* ¶ 43 (alleging that Hyzon was negligent in failing to implement effective internal controls in Europe).)

4.      Knight's Stock Pledge.  The SEC alleged that an April 27, 2022 proxy statement filed by Hyzon omitted reference to a stock pledge by Knight, which SEC regulations required to be disclosed.  (*Id.* ¶ 65.)  The SEC alleged that Knight had pledged shares of his Hyzon stock to secure a personal loan, which Knight then used to purchase additional Hyzon stock "in an unsuccessful attempt to inflate Hyzon's stock price."  (*Id.* ¶ 66.)

### D.      Procedural History

The original complaint in this action was filed nearly four years ago, on September 30, 2021.  (ECF No. 1.)  Plaintiff filed the first amended consolidated class action complaint ("FAC") on March 21, 2022.  (ECF No. 34.)  After Defendants moved to dismiss the FAC, Plaintiff requested and was granted leave to file the second amended complaint, which Plaintiff filed on September 16, 2022.  (ECF Nos. 49, 54, 55.)  Following a stay to allow the parties to pursue mediation, Plaintiff requested and was granted leave to file a third amended complaint.  (ECF No. 66.)  Plaintiff filed the TAC on June 23, 2023, and Defendants moved to dismiss on September 13, 2023.  (ECF Nos. 67, 90, 93.)  In opposing Defendants' Motions to Dismiss one month following the SEC Settlement, Plaintiff argued—much as he does now—that the SEC's allegations substantially bolstered his claims.  (*E.g.*, ECF No. 96 at 17-20.)  Indeed Plaintiff referenced the SEC settlement no less than 15 times in his Opposition brief and repeatedly in counsel's argument on the Motions to Dismiss.  (*See* ECF No. 96; May 21, 2025 Hr'g Tr. 34, 38.)

On July 14, 2025, the Court issued the Decision, granting in part and denying in part Defendants' Motions to Dismiss the TAC.  (ECF No. 119.)  The Court ruled that, under the purchaser-seller rule, Plaintiff lacked standing to pursue Section 10(b) claims based on premerger statements made by Legacy Hyzon, Knight, Gordon, or Gu.  (Decision at 15, 20, 24-25.)  Although the Court concluded that the purchaser-seller rule did not preclude standing with respect to premerger statements by Anderson, the Court found that the challenged statements in investor

-8-

presentations were not actionable because they were forward-looking statements accompanied by appropriate disclosures. (*Id.* at 35-38.)  Similarly, the Court dismissed Plaintiff's Section 14(a) claims on the basis that the challenged solicitation materials, including statements in the investor presentations, were protected by the "bespeaks caution" doctrine because they were forward-looking statements concerning prospective relationships and accompanied by sufficient cautionary language.  (*Id.* at 54-57 (cautioning there was "no guarantee that non-binding memoranda of understanding and letters of intent will be converted into binding orders or sales")).)  The Court also dismissed Plaintiff's Rule 10b-5(a) and (c) "scheme liability" allegations because Plaintiff had failed "to demonstrate 'inherently deceptive' practices independent of the alleged misstatements."  (*Id.* at 46.)  The Court denied the Hyzon Defendants' Motion to Dismiss with respect to certain post-merger statements, including statements related to HongYun, descriptions of Hyzon's business involving manufacturing and assembly, and the 2021 financial statements. (*Id.* at 38-39, 43.)

In the Decision, the Court stated that it was "reluctant to allow Plaintiff a further opportunity to amend his complaint," in light of the long tenure of this case and additional information to which Plaintiff had access as the result of Hyzon's Special Committee investigation and restated financial reports, and settlement discussions that the parties have already undertaken. (*Id.* at 61-62 (citing ECF No. 65 at 2).)  Nonetheless, the Court granted Plaintiff leave to move to file a Fourth Amended Complaint "to incorporate any further details that emerged in the SEC action."  (*Id.* at 62; *see also id.* ("The Court grants Plaintiff leave to move to amend, in order to provide additional briefing to the Court on proposed amendments in light of the [SEC action].").) Plaintiff filed his Motion on August 15, 2025.  (ECF No. 125.)

## LEGAL STANDARD

"It is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave should be "freely give[n]" "when justice so requires," that standard applies only in cases—unlike this case—where there is no "apparent or declared reason" to deny leave. *Perrone* v. *Monroe Cnty. Sheriff Patrick O'Flynn*, 2015 WL 7776930, at *3 (W.D.N.Y. Dec. 2, 2015) (quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)). A "request to replead should be denied" where "[r]epleading would be [] futile," *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), including "when the proposed new pleading fails to state a claim on which relief can be granted," *Chhabra* v. *Blinken*, 2022 WL 17587850, at *1 (2d Cir. Dec. 13, 2022) (quotations omitted); *see also Ruffolo* v. *Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, [] it is not an abuse of discretion to deny leave to amend."). Additional reasons that justify the denial of leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman*, 371 U.S. at 182. "[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) (quotations omitted).

## ARGUMENT

I.    **AMENDMENT WOULD BE FUTILE BECAUSE PLAINTIFF'S PROPOSED ALLEGATIONS ALREADY HAVE BEEN REJECTED BY THE COURT OR ARE OTHERWISE NOT VIABLE.**

There is little question that Plaintiff's proposed amendments in his fifth complaint are "unlikely to be productive." *Ruffolo*, 987 F.2d at 131. Indeed, the proposed amendments run

-10-

headlong into issues already decided by the Court in the Decision and/or present obvious legal defects.  Plaintiff proposes to amend two categories of allegations as relevant to the Hyzon Defendants:  (1) Section 14(a) claims based on alleged misstatements in the investor presentations concerning Hyzon's relationship with a narrow set of prospective customers and suppliers;[5] and (2) "scheme liability" claims related to Hyzon's financial restatements, the FrieslandCampina vehicle, and Knight's stock pledge.  (Mot. 11-20; Proposed Compl. ¶¶ 15-17.)  The Court already has rejected allegations in both categories, and the remaining proposed allegations are ancillary and cannot plead a viable claim.  Amendment therefore "would be futile," and Plaintiff's "motion for leave to amend the [TAC] should be denied."  *Giardina* v. *Blue Cross & Blue Shield of WNY, Inc.*, 1997 WL 613257, at *1 (W.D.N.Y. Oct. 2, 1997).

> **A.    The Proposed Section 14(a) Allegations Against Hyzon, Anderson, and Knight Do Not Justify Leave to Amend.**

Plaintiff zeros in on a tiny handful of statements in the investor decks characterizing Hyzon's relationships with four prospective customers and two unnamed suppliers.  (Mot. 12-13.)  But the Court already has addressed the same allegations and arguments that Plaintiff makes here concerning the description of Legacy Hyzon's customer pipeline, and rejected them.  For this, as well as multiple other reasons described below, there is no basis for Plaintiff's request to amend the TAC only to plead the same claims once more.

In the TAC, Plaintiff challenged Hyzon's "global map" as portraying "brands like Heineken and Ikea as end users in the last stage of finalizing . . . purchases."  (TAC ¶ 7; *see also, e.g., id.* ¶ 300 ("[T]he representation that Heineken was . . . 'finalizing' a purchase order for five

---

[5]    The deficiencies of Plaintiff's proposed Section 14(a) amendments also are addressed in the brief of the DCRB Defendants (ECF No. 127 ("DCRB Opp.")).  The Hyzon Defendants hereby join in those arguments.

vehicles . . . for 2021 delivery was baseless"); ¶ 435 (challenging the portrayal of companies "including Coca Cola, Ikea, and Heineken[] . . . many of which Hyzon claimed had purportedly final or near-final purchasing agreements").)  In opposing dismissal of the TAC, Plaintiff argued that the description of customers in the investor presentations "misrepresented the present state of affairs" and "encompassed representations of present facts about Hyzon's sales pipeline" (ECF No. 96 at 33 (citing TAC ¶ 116)), including because "customers like Heineken . . . had informed Hyzon they would not be taking orders in 2021" (*id.* at 34 (citing TAC ¶¶ 168, 177)).  Plaintiff incorporated support from the SEC Complaint in support of these same arguments.  (*E.g.*, *id.* at 35 ("Defendants falsely listed entities like Heineken and Ikea as near finalizing purchase 2021 orders when those entities never indicated they intended to purchase HFCEVs" (citing SEC Compl. ¶¶ 19-23)); May 21, 2025 Hr'g Tr. 37:15-38:10.)

The Court rejected Plaintiff's arguments.  In the Decision, the Court ruled that "Plaintiff's assertions that the challenged statements are statements of present fact, rather than forward looking, ignore the context of the proxy and the timing of the shareholder vote." (Decision at 54.)  Because the statements also were accompanied by extensive cautionary language, they therefore were protected by the "bespeaks caution doctrine."  (*Id.* at 54-60; *see also id.* at 27-28, 34-38 (ruling that Section 10(b) allegations concerning the investor presentations were not materially false for similar reasons).)

Nonetheless, Plaintiff now puts forward "new" allegations and arguments that are substantially the same as Plaintiff's old allegations and arguments.  In the Proposed Complaint's summary of new allegations, Plaintiff alleges that the SEC Complaint shows the investor presentations "misrepresented the then-*present* state of Hyzon's relationships with touted blue-chip brands."  (Proposed Compl. ¶ 15 (emphasis in original).)  Plaintiff specifically emphasizes

alleged misstatements that "Hyzon was '[f]inalizing' purchase orders or contracts with Heineken[]" and "Ikea," and that "Hyzon was in 'advanced discussions' with Coca-Cola." (*Id.*) In the Motion, as Plaintiff did in its Opposition to the Defendants' Motions to Dismiss and at the Motion to Dismiss hearing (ECF No. 96 at 7; May 21, 2025 Hr'g Tr. 38:3-22), Plaintiff argues that the "SEC confirmed" that the investor presentations "misrepresented the then-present status of Hyzon's business dealings with potential customers, including Heineken, Air Products, Ikea, and Coca-Cola" (Mot. 12).

In now repeating arguments already raised in the context of the previously decided Motion to Dismiss, Plaintiff's Motion is not to amend but essentially a motion for reconsideration. Plaintiff fails, however, to meet the "strict" standard for a motion for reconsideration, which is not an opportunity "for taking a second bite at the apple" and would require that Plaintiff "demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (internal quotations omitted), *aff'd sub nom. Lowinger* v. *Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016). In any event, the Motion provides no reason to think that amendment would produce any different outcome on a future motion to dismiss. Plaintiff's proposed amendments are materially the same as the allegations they seek to replace, and the result again would be dismissal, making amendment futile. *Ruggiero* v. *Way*, 2020 WL 5126112, at *4 (S.D.N.Y. Aug. 31, 2020) ("Where no substantive changes creating plausible claims have been proposed, Plaintiff's motion to amend is denied without prejudice as futile."); *Schulz* v. *United States*, 2017 WL 11514593, at *2 (N.D.N.Y. Dec. 15, 2017) (denying leave to amend where "minor changes merely expand on [plaintiff's] theories currently included in the amended complaint").

Even if this were not an issue already decided by the Court, Plaintiff's proposed amendment would be futile for multiple additional reasons, including because the proposed allegations do not plead (1) a presuit demand or demand futility; (2) an actionable misstatement related to the two unnamed suppliers; and (3) fraud or negligence with the required particularity.

*First*, Plaintiff's claims are inherently derivative, but Plaintiff has not made a presuit demand or pled demand futility, as required for derivative claims under Rule 23.1. As the DCRB Defendants described in greater detail in their Motion to Dismiss, Plaintiff's Section 14(a) claim is derivative because it in essence alleges that DCRB overpaid for Legacy Hyzon, which is harm that flows through the corporation. (ECF No. 90 at 11-12; Proposed Compl. ¶¶ 582-83.)

*Second*, Plaintiff's attempt to tack on an amendment concerning the characterization of two unnamed suppliers is wholly insufficient. As an initial matter, the Hyzon Defendants are left to guess which of the multiple listed suppliers are the subject of Plaintiff's allegation. (Mot. 13; SEC Compl. ¶ 23); *see Hunt* v. *Enzo Biochem*, Inc., 530 F.Supp.2d 580, 601 (S.D.N.Y. 2008) (dismissing claims pursuant to Rule 9(b) where plaintiffs "d[id] not identify the content of [defendant's] alleged[ly] [misleading] communications"); *Ross* v. *Bolton*, 904 F.2d 819, 823 (2d Cir. 1990) ("The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based."). More fundamentally, the challenged statement "Key Relationships Have Already Been Formed" is not inconsistent with the allegation that "Hyzon and two of the purported chassis suppliers [had not] reached the point of negotiating any supply relationship," as Plaintiff alleges. (Proposed Compl. ¶ 117; *see also* SEC Compl. ¶ 23.) The same slide of the investor presentation disclosed that "[t]his list represents suppliers who have provided components to date," and neither Plaintiff nor the SEC has challenged the accuracy of that statement, only that Hyzon had not undertaken to negotiate a formalized supply

arrangement. (Proposed Compl. ¶¶ 117, 305; SEC Compl. ¶ 23.) Plaintiff's conclusory allegation of falsity is insufficient and does not warrant leave to amend. *C.D.T.S.* v. *UBS AG*, 2013 WL 6576031, at *3 (S.D.N.Y. Dec. 13, 2013) ("[P]laintiff[] must do more than assert in a conclusory fashion that statements were or must have been false—[Plaintiff] must allege facts supportive of how and why this is the case.").

*Finally*, Plaintiff's conclusory allegations of fraud or negligence would not meet the heightened requirements of Rule 9(b), which, as explained in the DCRB Defendants' Motion to Dismiss (ECF No. 90 at 12-17), would apply because his proposed Section 14(a) allegations sound in fraud. *SafeNet, Inc.*, 645 F. Supp. 2d at 239-40. Plaintiff does not allege any involvement by Gordon or Gu in connection with the challenged statements. (Proposed Compl. ¶ 15; *see also* SEC Compl. ¶¶ 25, 54.) Plaintiff likewise does not allege any specific connection to Anderson, and Plaintiff's suggestion that Anderson should have known of the alleged misstatements due to his role at DCRB is plainly insufficient under any pleadings standard. (Mot. 15-17); *In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 513 (S.D.N.Y. 2019) (generalized allegations that directors should have known of fraud were insufficient to allege a Section 14(a) violation). "Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Lipow* v. *Net1 UEPS Technologies, Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) (quotation omitted). Conspicuously, Plaintiff argues that customers "had told Hyzon" that they would not purchase vehicles during 2021, but Plaintiff makes no allegation that this information was communicated to DCRB or that it otherwise was reasonably accessible by Anderson. (Mot. 16; *see also* DCRB Opp. at 7-8.) As to Knight, Plaintiff similarly relies on Knight's role "[a]s Hyzon's CEO" to generically assert that his "responsibilities included advancing Hyzon's customer and supplier relationships alongside Hyzon's sales and

operational employees." (Proposed Compl. ¶ 124; *see also* SEC Compl. ¶ 25.) While claiming that Knight had "information that contradicted [unspecified] statements made in the investor presentation," Plaintiff does not identify any actual contradictory information—the allegation that Coca-Cola "had not indicated that it intended to purchase [vehicles] from Hyzon" is fully consistent with the characterization of the relationship with Coca-Cola as involving "advanced discussions," and Plaintiff acknowledges that there had been introductory meetings between Hyzon and Coca-Cola. (Proposed Compl. ¶¶ 123, 482.) Accordingly, none of these allegations justify amendment.

> **B.     The Proposed "Scheme Liability" Allegations Against Hyzon and Knight Do Not Justify Leave To Amend.**

Plaintiff seeks to supplement his Rule 10b-5(a) and (c) "scheme liability" claim with allegations concerning (1) Hyzon's financial restatements; (2) the FrieslandCampina vehicle; and (3) Knight's stock pledge. In the Decision, the Court already rejected Plaintiff's allegations concerning the financial restatements in the scheme liability context, finding that the alleged acts were not "inherently deceptive." (Decision at 45.) Plaintiff's proposed amendments do nothing to cure this defect. (Mot. at 18-20.) Likewise, Plaintiff's proposed amendments concerning the FrieslandCampina vehicle and Knight's stock pledge fail to allege an inherently deceptive act that could support Plaintiff's claim, along with myriad other fatal flaws including lack of standing, loss causation, and scienter.

> **1.     Financial Restatements.**

Plaintiff seeks to revisit his argument that certain events connected to Hyzon's 2021 financial restatements can support scheme liability, claiming that "Hyzon executives and employees took extraordinary measures in 2021 to allow Hyzon to claim it delivered vehicles and recognized revenue." (Mot. 19-20.) The Court properly rejected Plaintiff's argument, finding that

-16-

"[t]he crux of Plaintiff's scheme liability claim is that Defendants misled investors through the information provided regarding the state of their sales pipeline . . . and their ability to fulfill customer orders" (Decision at 46)—*i.e.*, through misstatements, not deceptive actions.  Plaintiff therefore "failed to adequately plead a claim for 'scheme liability' separate from the claim for the alleged misstatements." (*Id.* at 43-46); *Kelly*, 817 F. Supp. at 343-44.

Nothing in the SEC's allegations or in Plaintiff's proposed amendments changes that conclusion so as to justify amendment.  Indeed, the purportedly "new" information to which Plaintiff points from the SEC Complaint is practically identical to Plaintiff's prior allegations:  In support of his scheme liability allegation, Plaintiff previously argued that "Hyzon arranged to deliver non-functioning vehicles before the end of [2021]" (ECF No. 96 at 61), and Plaintiff points here to SEC allegations that "a Hyzon employee had 'arranged to deliver FCEVs shortly before the end of 2021'" (Mot. 19 (quoting SEC Compl. ¶ 46)).  Plaintiff previously argued that Hyzon arranged for "customers [] to return the vehicles after year-end to complete necessary work" (ECF No. 96 at 61), and Plaintiff points here to SEC allegations that ""the customers agreed to return the vehicles to Hyzon China's manufacturer after year-end to complete necessary work'" (Mot. 19 (quoting SEC Compl. ¶ 46)).  Plaintiff previously argued that Hyzon "created false books and records" (ECF No. 96 at 61), and Plaintiff points here to SEC allegations that Hyzon "falsified Hyzon's books, records, and accounts" (Mot. 19-20 (citing SEC Compl. ¶ 64)).  Plaintiff's allegations have not materially changed, and the Court's order on these allegations should stand as there is no reason to think that the outcome of a future motion to dismiss would be any different.[6]

---

[6]   Moreover, to the extent Plaintiff seeks to adopt the SEC's allegations that Plaintiff believes are helpful to him, Plaintiff also must grapple with the SEC Complaint's very limited allegations of scienter. (*See supra* at 6-7.)  The SEC's negligence-based allegations with respect to deliveries in China, and the attribution of scienter with respect to European deliveries solely to Holthausen, significantly undercuts Plaintiff's claims. *In re DNTW Chartered Accts. Sec. Litig.*, 172 F. Supp.

2.       FrieslandCampina Vehicle.

Plaintiff alleges that "Hyzon staged a misleading video" in which Hyzon "rigged the [FrieslandCampina] truck to run on a limited electric battery," and "show[ed] the operation of the [vehicle] with the statement that it was powered by hydrogen." (Mot. 18; Proposed Compl. ¶ 138.) But Plaintiff's new proposed allegation shares the same deficiency as the scheme liability allegations that the Court dismissed:  Plaintiff has not pled "'inherently deceptive' practices independent of the alleged misstatements that Defendants made." (Decision at 46); *see also In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 190-91 (W.D.N.Y. 2022).  In his Motion, Plaintiff has forgone any challenge to the July 13, 2021 press release included in the SEC Complaint (¶¶ 28-29), and instead focuses on the related video in an apparent attempt to skirt the issue (Mot. 18), but this approach does not cure the fundamental flaw with Plaintiff's claim.  The video is alleged to be misleading because it was accompanied by a "statement that [the vehicle] was powered by hydrogen." (Proposed Compl. ¶ 138; *see also id.* ¶¶ 373-77 (describing Hyzon's July 13, 2021 press release and related social media posts).)   In addition, Hyzon's social media post circulating the video contained a link to the press release. (Ex. B; Oswell Decl. ¶ 1; *see supra* at 4.)[7]  Therefore, "[t]he core misconduct alleged is in fact a misstatement," and Plaintiff does not allege "an inherently deceptive act that is distinct from the alleged misstatement." (Decision at 45 (quoting *SEC* v. *KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006); *Kelly*, 817 F. Supp. at 343-44).)

---

3d 675, 690-91 (S.D.N.Y. 2016) (SEC order asserting negligence did not establish scienter).

[7]       Contrary to Plaintiff's claim that the vehicle had been "rigged" to run on electricity (Mot. 18), hydrogen vehicles typically include batteries and are capable of driving short distances on battery power in the ordinary course. (*See, e.g.*, Proposed Compl. ¶ 62 (alleging that Defendants "rebrand[ed] Horizon's electric vehicle operation as Hyzon"), ¶ 370 (referencing cost savings on batteries included in Hyzon vehicles).)

Even putting aside the failure to meet the core requirement for a claim based in scheme liability, Plaintiff's proposed allegation concerning the FrieslandCampina vehicle suffers from multiple additional flaws, including the threshold issue of standing.  Plaintiff lacks standing to challenge the video, because the video and the related July 13, 2021 press release allegedly were published by Legacy Hyzon on July 13, 2021, before the merger, when Plaintiff was not a shareholder of Legacy Hyzon.  (Proposed Compl. ¶¶ 17, 138.)  While the Court found that it was unnecessary to reach the issue of whether the purchaser-seller rule applies in the scheme liability context (Decision at 44 n.3), Plaintiff offers no basis to apply the requirement to SEC Rule 10b-5(b) but not to Rule 10b-5(a) and (c), all of which have been promulgated pursuant to Section 10(b).[8]  Plaintiff also would not be able to plead scienter concerning the amendment with respect to any individual Hyzon Defendant (*see supra* at 7 (alleging that Holthausen and the Hyzon Europe team were responsible for the FrieslandCampina press release and video))— a consideration that weighs heavily against undertaking the burden of amendment and additional motion to dismiss briefing, given Hyzon's pending dissolution (*see supra* at 3 n.1).

---

[8]    During the Motion to Dismiss hearing, Plaintiff's counsel noted dicta from *In re CarLotz, Inc. Sec. Litig.* that applying *Frutarom* "in the scheme-liability context makes even less sense than applying it in the misstatement context." 2024 WL 3924708, at *2 n.3 (S.D.N.Y. Aug. 23, 2024) ("*CarLotz III*"); May 21, 2025 Hr'g Tr. 49:9-15.  But Judge Subramanian, in fact, dismissed plaintiff's scheme liability claims in *CarLotz III* and his commentary on *Frutarom* has never been adopted by another court. *CarLotz III*, 2024 WL 3924708, at *6.  There is good reason to expect that it will not be: courts have repeatedly applied the purchaser-seller rule to limit standing with respect to misstatements in the SPAC context on the basis of *Frutarom's* "bright-line rule." *See In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1185 (9th Cir. 2024) (noting that even if the *Frutarom* "bright-line rule" is "arbitrary" in some cases, it is necessary to avoid an "endless case-by-case analysis"); *Kusnier* v. *Virgin Galactic Holdings, Inc.*, 2023 WL 8750398, at *9 (E.D.N.Y. Dec. 19, 2023) (similar).

3.      Knight's Stock Pledge.

Plaintiff seeks to add allegations that Hyzon's April 22, 2022 proxy statement did not disclose that Knight had pledged certain of his Hyzon shares as security for a personal loan. (Mot. 18-19.)   But Plaintiff fails to explain how this apparently tacked on allegation is at all relevant to his claims—the April 22, 2022 proxy statement, a standard annual meeting notice, is not the subject of any other allegations.   Nor does Plaintiff explain how the alleged failure to disclose the pledge could possibly have caused a loss to shareholders during the class period.   *Sec. & Exch. Comm'n* v. *Honig*, 2021 WL 276155, at *8 (S.D.N.Y. Jan. 27, 2021) ("[T]he mere fact that [a] disclosure was required by the SEC does not make it 'material per se' for securities fraud purposes.").   Plaintiff concedes that the stock purchases that Knight allegedly undertook in connection with the pledge were "unsuccessful" at influencing Hyzon's stock price.   (Mot. 19; Proposed Compl. ¶ 181.)   And the market did not learn of the pledge until more than one year after the class period, when the pledge was first disclosed in the SEC Complaint in September 2023. (Proposed Compl. ¶¶ 524, 539.)   Moreover, the core of Plaintiff's proposed new allegation—that Mr. Knight *purchased* additional Hyzon shares—contradicts Plaintiff's claims that Mr. Knight acted with scienter or was trying to create a false impression of Hyzon's business prospects to deceive Hyzon shareholders.   In response to a future motion to dismiss, Plaintiff will have to contend with this contradiction in addition to the fact that this proposed new allegation lacks any plausible basis for materiality or loss causation, *In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022), let alone that the circumstances surrounding the alleged omission constituted an inherently deceptive act.   Indeed, the alleged deception hinged on, rather than was "independent from[,] any alleged . . . omission."   *Kodak*, 632 F. Supp. 3d at 190-91.

-20-

## II.    UNDUE DELAY, PREJUDICE, AND MULTIPLE PREVIOUS AMENDMENTS FURTHER SUPPORT DENYING LEAVE TO AMEND.

Although futility alone is a sufficient basis to deny the Motion, (1) Plaintiff's undue delay in adding certain allegations; (2) the prejudice that would result to the Hyzon Defendants from yet another round of motion to dismiss briefing; and (3) Plaintiff's four previous opportunities to plead his claims—particularly when considered in combination—confirm that denial is appropriate.

*First*, much of the information that Plaintiff now seeks to incorporate from the SEC Complaint has long been available to Plaintiff from other sources.  The relevant information concerning the FrieslandCampina vehicle was included in Hyzon's Special Committee disclosure in March 2023, three months prior to the filing of the TAC, which explained that the vehicle had not been operating on hydrogen at the time of the July 13, 2021 press release.  (*See supra* at 4-5.) Likewise, as described above, Plaintiff's revised scheme liability allegations related to Hyzon's financial restatements do not materially add to the information that was available to Plaintiff from the March 2023 Special Committee disclosure.  (*See supra* at 5.)  Plaintiff could have added his "scheme liability" and Section 14(a) allegations to earlier versions of the complaint if Plaintiff desired additional opportunities to iterate on those claims, which were added for the first time in the TAC nearly two years after this case was filed.  *Nat'l Credit Union*, 898 F.3d at 257-58 ("[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.").

Plaintiff asserts that there was no undue delay, claiming that it was reasonable to decline to request leave to amend after the SEC filed its complaint in September 2023, and because Plaintiff acted promptly after the Court issued the Decision on July 14, 2025.  (Mot. 4, 9.)  But the question is why Plaintiff did not incorporate this information into the TAC when Plaintiff filed the

TAC in June 2023.  Plaintiff offers no good answer.  *Gonzalez* v. *City of Rochester*, 2020 WL 5032026, at *3 (W.D.N.Y. Aug. 26, 2020) ("Where there has been excessive delay before seeking to serve the amended complaint, leave to do should be denied absent a convincing explanation for the delay.").

*Second*, the Hyzon Defendants would be significantly prejudiced by a further amendment and the expense of a third round of motion to dismiss briefing.  *Fid. Info. Servs., Inc.* v. *Debtdomain GLMS Pte Ltd.*, 2011 WL 3665138, at *3 (S.D.N.Y. Aug. 11, 2011) (denying leave to amend where "defendants would likely still expend significant additional resources exploring [the] new causes of action").  While Plaintiff points out that in the typical case the expense of litigation does not amount to prejudice (Mot. 7), the issue has particular relevance in this case due to Hyzon's dissolution (*see supra* at 3 n.1) and a finite pool of insurance money on which the individual Hyzon Defendants are relying for the payment of legal fees and from which class members also likely would benefit in any future resolution of the action.  Particularly given the ancillary nature Plaintiff's proposed amendments, prejudice weighs strongly against amendment.

*Finally*, Plaintiff has had more than ample opportunity to plead and to attempt to refine his claims, including after seeing Hyzon's motion to dismiss the FAC.  (*See supra* at 8); *Silverman* v. *3D Total Sols., Inc.*, 2020 WL 1285049, at *10 (S.D.N.Y. Mar. 18, 2020) ("[L]eave to amend should be denied" where a previous motion to dismiss "pointed out the defects in the original complaint"); *Clark* v. *Kitt*, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) (similar), *aff'd*, 619 F. App'x 34 (2d Cir. 2015).  While Plaintiff complains that he has not received discovery (Mot. 6 n.2), that is fully consistent with the discovery stay imposed by the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B).  Indeed, Plaintiff has benefited from more than typical information as a result of

the parallel *Malork* action in the Delaware Court of Chancery and Hyzon's Special Committee disclosure.

"Three bites at the apple is enough."  *Salinger v. Projectavision, Inc.,* 972 F. Supp. 222, 236 (S.D.N.Y. 1997).  Plaintiff already has had four bites.  He should not receive a fifth.  *De Jesus* v. *Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (affirming denial of leave to file fifth amendment where plaintiff had "ample prior opportunity to allege a claim").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend the TAC should be denied.

Dated:    Palo Alto, California          Respectfully submitted,
          August 29, 2025

                                         */s/ Laura Kabler Oswell*
                                         Laura Kabler Oswell (*pro hac vice*)
                                         SULLIVAN & CROMWELL LLP
                                         550 Hamilton Avenue
                                         Palo Alto, California  94301
                                         Tel.:  (650) 461-5600
                                         Fax:  (650) 461-5700
                                         oswelll@sullcrom.com

                                         Jacob M. Croke
                                         Christopher A. Graham (*pro hac vice*)
                                         SULLIVAN & CROMWELL LLP
                                         125 Broad Street
                                         New York, New York  10004
                                         Tel.:  (212) 558-4000
                                         Fax:  (212) 558-3588
                                         crokej@sullcrom.com
                                         grahamch@sullcrom.com

                                         *Counsel for Defendants Hyzon Motors Inc.,*
                                         *Erik Anderson, Craig Knight, Mark Gordon,*
                                         *and George Gu*

-23-