UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IN RE: HYZON INC. SECURITIES LITIGATION

DECISION AND ORDER
21-CV-6612-MAV

## INTRODUCTION

The reader is presumed to be familiar with the factual and procedural background of this case as set forth in the Court's orders of July 2025 (ECF No. 119; 815 F. Supp. 3d 209) and June 2026 (ECF No. 138). Accordingly, only those facts relevant to the resolution of the instant motions will be addressed here.

In September 2021, Lead Plaintiff Alfred Miller ("Plaintiff") filed this putative class action pursuant to the Securities Exchange Act of 1934 ("Exchange Act") against Defendant Hyzon Inc. f/k/a ("Hyzon"), Hyzon executives, and members of the Board of Directors of the Decarbonization Plus Acquisition Corporation ("DCRB"). Hyzon is the product of the merger of two companies – Hyzon Motors Inc. ("Legacy Hyzon"), and DCRB – in a transaction that was announced in February 2021 and approved by DCRB shareholders in July 2021. Plaintiff brings this action on behalf of himself and (a) all persons or entities who purchased securities of Hyzon during the period from February 9, 2021 to August 17, 2022, inclusive ("Class Period"), as well as (b) all former shareholders of DCRB who held DCRB securities as of June 1, 2021, were entitled to vote with respect to the merger with Legacy Hyzon, and were damaged thereby.

While the instant action was pending in this Court, a different plaintiff – John

Malork – was pursuing similar relief in a putative class action against members of the DCRB Board of Directors for breach of fiduciary duty in Delaware state court in the matter of *Malork v. Anderson, et al.*, No. 2022-0260 (Del. Ch.). On October 21, 2025, the Delaware Court of Chancery entered an order and final judgment approving a settlement agreement Malork reached with the state court defendants (the "Malork Settlement"). *Malork v. Anderson*, No. 2022-0260-PAF, 2025 WL 2978492 (Del.Ch. Oct. 21, 2025). Among other things, the Malork Settlement contains a release which purports to "fully, finally, and forever, release, settle, and discharge the Released Defendant Parties" from claims that overlap with Plaintiff's Section 14(a) claims against the DCRB Defendants in the instant case. *Malork*, 2025 WL 2978492 at *2.

The matter is presently before the Court on Plaintiff's motion to substitute (ECF No. 140), the DCRB Defendants' motion to dismiss Plaintiff's Section 14(a) claims against them from the Fourth Amended Complaint, and Defendant Erik Anderson's motion to join in the DCRB Defendants' motion (ECF No. 152).[1] For the reasons that follow, all three motions are granted.

---

[1] As grouped in the Court's July 2025 order, the "DCRB Defendants" include: Peter Haskopoulous, DCRB's CFO; Robert Tichio, the Chairman of DCRB's Board of Directors; Jennifer Aaker, a member of DCRB's Board of Directors; the other members of the DCRB's Board of Directors; Decarbonization Plus Acquisition Sponsor, LLC ("DCRB Sponsor"), a limited liability company that served as DCRB's sponsor and purchased and held the Founder Shares for the de-SPAC process; Riverstone Investment Group LLC, a limited liability company that founded and controlled DCRB and DCRB Sponsor; and WRG DRB Investors, LLC, an affiliate of Defendant Anderson's, which purchased and held Founder Shares for the benefit of Anderson. *In re Hyzon Motors Inc. Sec. Litig.*, 815 F. Supp. 3d 209, 222 (W.D.N.Y. 2025). The "Hyzon Defendants" include: Hyzon Inc.; Erik Anderson, a director on Hyzon's Board of Directors, who served as President and Chief Executive Officer ("CEO") of DCRB until the July 2021 merger; Craig Knight, the co-founder and Chief Commercial Officer of Legacy Hyzon until the July 2021 merger, then CEO of Hyzon from the merger until August 17, 2022; Mark Gordon, Legacy Hyzon's Chief Financial Officer ("CFO") from August 2020 until the July 2021 merger, then Hyzon's CFO from the merger until August 12, 2022; George Gu, co-founder and CEO of Legacy Hyzon until the July 2021 merger, then Executive Chairman of Hyzon's Board of Directors from the merger until August 17, 2022. *Id.*

## MOTION TO SUBSTITUTE

In July 2026, counsel for Plaintiff filed a motion to substitute Lead Plaintiff Alfred Miller's son, Morris, for Lead Plaintiff. ECF No. 140. With the motion, counsel submitted a declaration from Morris, indicating that "on June 25, 2026, the Clerk of the Probate Court of Bexar County, Texas issued Letters of Guardianship certifying [him] as the Guardian of the Person and Estate of Alfred Miller through October 23, 2027." ECF No. 140-2 ¶ 4. The motion to substitute is unopposed. *See* ECF No. 153 (response from the Hyzon Defendants indicating they do not oppose the motion).

Rule 25(b) of the Federal Rules of Civil Procedure provides that "[i]f a party becomes incompetent, the court may, on motion, permit the action to be continued by or against the party's representative." Fed. R. Civ. P. 25(b). As relevant here, "incompetence is defined under the law of the litigant's domicile." *Burmaster v. Pfizer Inc.*, No. 17CV1290V, 2018 WL 5779133, at *2 (W.D.N.Y. Apr. 23, 2018), *report and recommendation adopted*, No. 17-CV-1290, 2018 WL 5777032 (W.D.N.Y. Nov. 2, 2018); *see also* Fed. R. Civ. P. 17(b).

In light of the Texas court's finding that Lead Plaintiff Alfred Miller "is a totally incapacitated person, without capacity to care for himself," its consequent appointment of Morris Miller as permanent guardian with full authority of Alfred Miller to "protect, bring lawsuit(s) to protect, defend, or prosecute to recover any claims Alfred Miller might have," and Morris Miller's commitment to "actively managing and vigorously pursuing this case on behalf of [his] father and the putative class," the Court concludes that it is appropriate to substitute Morris Miller, in his

capacity as the legal guardian of Alfred Miller, for Alfred Miller as the Lead Plaintiff in this matter. Plaintiff's motion to substitute (ECF No. 140) is therefore granted. *See* Fed. R. Civ. P. 17(a) (providing that legal guardians "may sue in their own names without joining the person for whose benefit the action is brought").

**MOTION TO JOIN**

Defendant Erik Anderson has moved to join the DCRB Defendants' motion to dismiss, noting that he was also one of the "Released Defendant Parties" and "Settling Defendants" under the Malork Settlement. ECF No. 152. A review of the Malork court's final order reveals that Anderson was, in fact, listed among the "Settling Defendants." *See Malork*, 2025 WL 2978492 at *1. Accordingly, the Court finds good cause to allow Anderson to join the motion to dismiss, and his motion is granted.

**MOTION TO DISMISS**

With their motion to dismiss, Defendants have submitted a full copy of the "Malork Settlement" and several other documents from the Delaware state court case. ECF No. 151-1 to 151-10; 161-1.[2] In pertinent part, the Malork Settlement provides as follows:

---

[2] As exhibits to their motion, the DCRB Defendants have submitted a declaration in support by counsel and – among other things – a copy of the settlement agreement from the Malork Delaware state court action (ECF No. 151-1); a copy of Plaintiff's objections to the settlement, submitted to the Delaware Court of Chancery (ECF No. 151-6); a copy of the transcript of the Court of Chancery's Telephonic Bench Ruling on the Motion to Approve the Proposed Settlement (ECF No. 151-7); and a copy of the Order and Final Judgment in the Delaware state court action. The Court cannot locate reference to the Delaware state court action or the settlement thereof in Plaintiff's Fourth Amended complaint. ECF No. 141. However, Plaintiff has not objected to the Court's reference to the material submitted, and the Second Circuit has "often held that material that is a matter of public record may be considered in a motion to dismiss." *Byrd v. City of New York*, No. 04-1396-CV, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (summary order) (collecting cases); *see also Freedom Holdings, Inc. v. Spitzer*, 363 F.3d 149, 152 (2d Cir. 2004). Accordingly, the Court takes judicial notice of the submitted documents. *See Karabas v. TC Heartland LLC*, 770 F. Supp. 3d 454, 464 (E.D.N.Y. 2025) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see generally* Fed. R. 201(b)(2) ("[t]he court may

> NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED, by Plaintiff, for himself and on behalf of the Class, and the Settling Defendants, subject to the approval of the Court and pursuant to Court of Chancery Rule 23, for the good and valuable consideration set forth herein, that the Released Plaintiff's Claims and Released Defendants' Claims shall be completely, fully, finally, and forever compromised, settled, released, discharged, extinguished, and dismissed with prejudice and without costs (except as provided herein) and are fully, finally, and forever compromised, settled, released, discharged, extinguished, and dismissed with prejudice and without costs (except as provided herein) as to the Released Defendant Parties and the Released Plaintiff Parties, in the manner and upon the terms and conditions set forth herein.
>
> . . . .
>
> [I(1)](b) "Class" means a non-opt-out class for settlement purposes only consisting of all Persons who held shares of Decarb Class A common stock as of the Redemption Deadline, either of record or beneficially, and who did not redeem all of their shares, including their heirs, successors-in-interest, successors, transferees, and assigns, but excluding the Excluded Persons [who consist primarily of the DCRB Defendants].
>
> . . . .
>
> [I(1)](ee) "Settlement Amount" means a total of $8,800,000 in cash.

ECF No. 151-1 at 11–12.

The DCRB Defendants argue that Plaintiff's claim against them in the present case under Section 14(a) of the Securities Exchange Act of 1934 must be dismissed because "the Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to honor the [Delaware] Court of Chancery's judgment approving" the Malork Settlement and releasing the claims against the DCRB Defendants. ECF No. 150 at 5–6.[3] Plaintiff

judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[3] Page numbers referenced in this decision refer to the pagination generated by the Court's CM/ECF electronic filing system and located in the top right-hand corner of each page.

agrees that "the critical elements of this Action's Section 14(a) claims and the [Malork] Action's breach of fiduciary focus . . . are all virtually the same." ECF No. 155 at 10. However, Plaintiff maintains that the DCRB Defendants' motion to dismiss the claims against them in this action should be denied because the Malork Settlement did not satisfy the minimum requirements of due process. ECF No. 155 at 6–7.

## I. Legal Standard

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to test . . . the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Dismissal under this rule is appropriate "when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000) (citations omitted).

## II. Due Process and the Full Faith and Credit Act (28 U.S.C. § 1738)

As the Supreme Court has explained,

> The Full Faith and Credit Act mandates that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The Act

> thus directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state. Federal courts may not "employ their own rules . . . in determining the effect of state judgments," but must "accept the rules chosen by the State from which the judgment is taken."

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–482 (1982)). In other words, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the States from which the judgments emerged would do so." *Kremer*, 456 U.S. at 483.

As pertinent to the instant case, though the Full Faith and Credit Act seems to conflict with Section 27 of the Exchange Act (15 U.S.C. § 78aa(a)), which confers exclusive jurisdiction upon federal courts for suits brought to enforce the Exchange Act, the Supreme Court has found that, in the end, the two acts "do not propose an either-or proposition." *Matsushita,* 516 U.S. at 385. Rather, the two acts "can be reconciled by reading [28 U.S.C.] § 1738 to mandate full faith and credit of state court judgments incorporating global settlements, provided the rendering court had jurisdiction over the underlying suit itself, and by reading [15 U.S.C. §§ 78aa] to prohibit state courts from exercising jurisdiction over suits arising under the Exchange Act." *Id.* (citation omitted).

Nevertheless, in order for the state court judgment to have preclusive effect, the party against whom it is asserted must have had a "full and fair opportunity" to litigate its claims. *Kremer*, 456 U.S. at 480. That is, the state proceedings must "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due

Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Id.* at 481.

## III. Claim Preclusion

The DCRB Defendants' argue in their reply brief that the Court need not reach the merits of Plaintiff's due process challenges to the terms of the settlement agreement because 28 U.S.C. § 1738 forecloses relitigating the arguments Plaintiff raised or could have raised in Delaware. ECF No. 160 at 7–10. In that regard, Defendants note that Plaintiff "was an objector who personally appeared and 'made a serious argument' 'substantially similar' to the arguments raised before this Court, and had the opportunity to appeal to the Delaware Supreme Court and then petition the United States Supreme Court for *certiorari*." *Id.* at 7–8. Thus, Defendants maintain that because Plaintiff had a "full and fair opportunity" to litigate his arguments against the Malork Settlement, the Delaware Court of Chancery's final order approving the settlement met minimum due process requirements, and precludes this Court from relitigating the same claims. *Id.* at 9 (citing *Kremer*, 456 U.S. at 485).

After a review of the parties' submissions, the Court concludes that under 28 U.S.C. § 1738, the order approving the Malork Settlement is entitled to full faith and credit in this Court and Plaintiff is precluded from litigating his Section 14(a) claims.

### A. Delaware Law on Claim Preclusion (res judicata)

The Second Circuit has summarized Delaware law on claim preclusion as follows:

> In Delaware, a claim is barred by res judicata [i.e., claim preclusion] if: (1) the court that adjudicated the prior action had jurisdiction to do so; (2) the parties to the subsequent action are the same as (or privies to those in) the prior action; (3) the causes of action in both cases are the same or the subsequent action arises from the same transaction that formed the basis of the prior action; (4) the merits in the prior action were decided adversely to the contentions of the plaintiff; and (5) the prior action was final.

*AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003) (citing *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del.Ch. 1980)); *see also LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193 (Del. 2009).

Further, under Delaware law, "claim preclusion applies not only to those claims that were raised and decided in earlier litigation, but also to claims that could have been raised and decided." *Whittington v. Dragon Grp., L.L.C.*, Civil Action No. 2291-VCP, 2011 WL 1457455, at *6 (Del. Ch. Apr. 15, 2011). "[I]n addition to showing that the same transaction formed the basis for both the present and former suits, the defendant must show that the plaintiff neglected or failed to assert claims which in fairness should have been asserted in the first action." *LaPoint*, 970 A.2d at 193–94 (internal quotation marks and citation omitted).

**B. Plaintiff's Claims Would Be Precluded under Delaware Law**

Plaintiff's Section 14(a) claims would be precluded under Delaware law. First, the Delaware Court of Chancery had jurisdiction to approve the Malork Settlement because the complaint presented two state law breach of fiduciary duty claims against the defendants in the case, the directors and controlling stockholders of DCRB. ECF No. 151-3 at ¶¶ 108–24. Second, as noted above, the DCRB Defendants, as well as Defendant Anderson, are the same as the Defendants in the *Malork* action, and like

the class in the *Malork* action, Plaintiff here is a former shareholder of DCRB eligible to vote on its merger with Legacy Hyzon. *See, supra* at p. 1–3. Third, Plaintiff acknowledges that "the critical elements" of his "Section 14(a) claims and the [Malork] Action's breach of fiduciary focus . . . are all virtually the same." ECF No. 155 at 10. Fourth, because the critical elements are the same, affording full faith and credit to the Malork Settlement would deprive Plaintiff of the opportunity to litigate his Section 14(a) claims. *Id.* Lastly, it does not appear that the Malork Settlement was appealed to the Delaware Supreme Court, and is therefore final. *See John E. Malork v. Erik Anderson, et al.*, 2022-0260 (Del. Ch.).

Moreover, Plaintiff neglected or failed to assert his due process right to opt out of the settlement agreement, which in fairness should have been asserted in the Malork action. *LaPoint*, 970 A.2d at 193–94. Plaintiff formally objected to the Malork Settlement under Rule 23(f) of the Delaware Court of Chancery Rules, and appeared at oral argument before the Court of Chancery on the Malork plaintiff's motion to approve the proposed settlement, certify the class, and award attorney's fees. ECF Nos. 151-2, 151-6. Both in his papers and at argument before the Court of Chancery, Plaintiff argued that the settlement was not fair and reasonable (ECF No. 151-6 at 28–31), that the Malork plaintiff failed to demonstrate typicality or adequacy to represent the class (*Id.* at 31–32), and that the notice of potential settlement provided to absent class members was deficient (*Id.* at 32–34). In rendering its decision approving the settlement, the Court of Chancery directly addressed the substantive merits of Plaintiff's objections, and explained its reasons for overruling each of them.

ECF No. 151-7 at 10–29. Further, though Plaintiff did not raise the issue before the Court of Chancery, objectors have prevailed in challenges to non-opt-out clauses in class action settlement agreements under Delaware state law. *See, e.g., In re Celera Corp. S'holder Litig.*, 59 A.3d 418 (Del. 2012) (finding the Court of Chancery abused its discretion when it denied the motion of the largest shareholder to opt out).

Accordingly, the Court finds that the conditions for precluding Plaintiff's Section 14(a) claims under Delaware law are satisfied.

**C. The Malork Proceedings Satisfied Due Process Requirements**

Plaintiff maintains that his Section 14(a) claims should not be dismissed because the Malork Settlement did not satisfy minimum due process requirements. Specifically, he argues the settlement deprived class members "of their constitutional right to opt out of or request exclusion from a forced settlement regime." ECF No. 155 at 6–7. Additionally, Plaintiff argues that the notice of the settlement was deficient because it failed to inform the absent class members of Plaintiff's Section 14(a) claims in the present case, and the possibility of recovery in this litigation. The Court finds Plaintiff's arguments to be unpersuasive.

*i. Delaware's Process*

"As a general proposition, Delaware law favors the voluntary settlement of contested issues . . . . However, the settlement of a class action is unique in that, '[b]ecause of the fiduciary character of a class action, the [C]ourt [of Chancery] must participate in the consummation of a settlement to the extent of determining its intrinsic fairness.'" *Nottingham Partners v. Dana*, 564 A.2d 1089, 1102 (Del. 1989)

(quoting *Rome v. Archer*, 197 A.2d 49, 53 (Del 1964)). A decision from the Court of Chancery concisely describes that process:

> Typically, the Court considers whether to approve a settlement in steps. First, it determines whether it can certify the putative class under [Delaware Court of Chancery] Rules 23(a) and 23(b). If the Court certifies a class, it next examines whether the notice of the settlement that the parties provided to the class was sufficient to satisfy the requirements of due process. If it finds that notice was adequate, it moves on to considering whether the settlement terms fall within a range of reasonableness. If they do, then the Court will approve the settlement.

*In re AMC Ent. Holdings, Inc. S'holder Litig.*, No. 2023-0215-MTZ, 2023 WL 5165606, at *4 (Del. Ch. Aug. 11, 2023), *aff'd sub nom. In re AMC Ent. Holdings, Inc.*, 319 A.3d 310 (Del. 2024).

Although Delaware law does not require that the parties be given an opportunity to have a trial on the issues presented, "the approval of a class action settlement does require more than a cursory scrutiny of the issues presented by the Court of Chancery." *Nottingham Partners*, 564 A.2d at 1102. Indeed, "*in every class action settlement*, the Court of Chancery is required to make an explicit determination on the record of the propriety of the class action according to the requisites of Rule 23(a) and (b)." *Prezant v. De Angelis*, 636 A.2d 915, 925 (Del. 1994) (emphasis in the original). Further, the Delaware Court of Chancery Rules provide that "[a]ny class member may object to the proposed dismissal or settlement of a class action." Del. Ch. Ct. R. 23(f)(4)(A). Objectors dissatisfied with the Court of Chancery's decision may appeal that decision to the Supreme Court of Delaware. *See, e.g., In re Philadelphia Stock Exch., Inc.*, 945 A.2d 1123, 1139 (Del. 2008) (considering an

appeal of the Court of Chancery's rejection of "the objectors' multitudinous procedural and substantive challenges.").

*ii. Opt-out Rights*

As Plaintiff points out, the United States Supreme Court and the Second Circuit have held that in class actions such as the present case, in which claims for money damages (i.e., "choses in action") predominate, due process requires that absent class members be given the opportunity to remove themselves from the class. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class . . . ."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362–63 (2011) (noting the Court's holding in *Shutts* that the "absence of notice and opt out violates due process" where a federal class action is predominantly for money damages); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) ("[a]bsent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages.").

Delaware law, too, recognizes that even when a class is certified under Del. C. of Ch. R. 23(b)(1) or 23(b)(2) "circumstances may arise where discretionary opt-out rights should be granted, such as where the class representative does not adequately represent the interests of particular class members, triggering due process concerns." *Celera*, 59 A.3d at 435. In considering whether to grant a discretionary opt-out, the Delaware Supreme Court has directed the Court of Chancery to balance "'whether the perceived need for these additional . . . protections . . . outweighs the costs and

potential undermining of unitary adjudication or settlement.'" *Iszo Capital LP v. Brandenburg et al.*, 2026 WL 2689902, at *3 (Del. Sept. 14, 2026) (quoting *Celera*, 59 A.3d at 434–35). In other words, the Delaware Supreme Court has recognized that under certain circumstances, due process requires providing class members the opportunity to opt out of the class, regardless of the Rule 23 provision under which it is certified.

Yet Plaintiff does not appear to have requested his removal from the class subject to the terms of the Malork Settlement in either his written objections submitted to the Court of Chancery, or at oral argument. Neither does it appear that Plaintiff appealed the Court of Chancery's judgment to the Delaware Supreme Court. In short, Plaintiff had the opportunity to request his removal from the class subject to the Malork Settlement, but failed to do so. Under such circumstances, where Plaintiff had the opportunity to participate as an active objector to the Malork Settlement and could have but did not seek to remove himself from the class, the Court declines to find that the state proceedings failed to satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. *See Kremer,* 456 U.S. at 481.

*iii. Notice*

By contrast, Plaintiff did raise his arguments regarding the adequacy of notice before the Court of Chancery, arguing there – as here – that the notice was deficient because it failed to explain why the settlement amount is reasonable, notify the class members of present litigation in federal court, or inform class members that the

potential recovery in the federal action could be greater than recovery under the Malork Settlement. ECF No. 151-6 at 33. In declining to find the notice deficient, the Court of Chancery found that "it would have been better to have included in the notice itself a bit more information about the strengths and weaknesses of the claims," but that the inclusion of contact information for class counsel and reference to a dedicated website where the information could be found was sufficient. ECF No. 151-7 at 17. The Court of Chancery also found that the notice was not required to include information about the present federal case because the status of Plaintiff's Section 14(a) claims at that time was uncertain. *Id.* at 18 (distinguishing *In re Lendingclub Securities Litigation*, 282 F. Supp. 3d 1171 (N.D. Cal. 2017)).

On a different due process issue raised in the class action settlement context, the Second Circuit has stated that "[i]t would not be a denial of due process to give full faith and credit to the class action court's ruling on [the due process issue] unless that ruling was made in the absence of an adversarial presentation of the claim . . . ." *Wolfert ex rel. Est. of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 172 (2d Cir. 2006). Here, as stated, Plaintiff appeared before the Court of Chancery and objected on notice grounds, and the Court of Chancery directly addressed those arguments in its decision approving the class settlement. Accordingly, the Court finds that because there was an adversarial presentation of the notice issue in the Malork proceeding, it is not a denial of due process to give full faith and credit to the Court of Chancery's ruling.

For the foregoing reasons, the Court finds that under the Full Faith and Credit

Act, the Delaware Court of Chancery's approval of the Malork Settlement must be given the same preclusive effect that it would be given in the courts of Delaware, and Plaintiff's Section 14(a) claims against the DCRB Defendants must be dismissed.

## CONCLUSION

For the foregoing reasons, it is hereby,

ORDERED that Plaintiff's motion to substitute (ECF No. 153) is GRANTED, and the Clerk of Court is directed to substitute Morris Miller, in his capacity as the legal guardian of Alfred Miller, for Lead Plaintiff Alfred Miller; and it is further

ORDERED that Defendant Erik Anderson's motion (ECF No. 152) to join the DCRB Defendants' motion to dismiss is GRANTED; and it is further

ORDERED that the DCRB Defendants' motion to dismiss (ECF No. 149) is GRANTED, and Plaintiff's Section 14(a) claims against the DCRB Defendants and Defendant Anderson be dismissed; and it is further

ORDERED that Plaintiff shall contact the chambers of United States Magistrate Judge Mark Pedersen to initiate the scheduling of a pretrial conference under Rule 16 of the Federal Rules of Civil Procedure for the remaining claims.

SO ORDERED.

Dated: November 24, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge